**TIMOTHY R. O'REILLY, ESQ.**
Nevada Bar No. 8866
**DICELLO LEVITT, LLP**
325 South Maryland Pkwy
Las Vegas, Nevada 89101
Telephone: (702) 382-2500
Email: toreilly@dicellolevitt.com

*Attorneys for Plaintiffs*

# UNITED STATES DISTRICT COURT
## DISTRICT OF NEVADA

| | |
|---|---|
| JOHN DOE 319304, an individual, *et. al.*,<br><br>Plaintiffs,<br><br>vs.<br><br>LAURA RICH, Director of the NEVADA DEPARTMENT OF HEALTH AND HUMAN SERVICES, in her official capacity; MARLA McDADE WILLIAMS, Administrator of the NEVADA DIVISION OF CHILD AND FAMILY SERVICES, in her official capacity; CLARK COUNTY, NEVADA, a political subdivision of the State of Nevada; KEVIN SCHILLER, County Manager for CLARK COUNTY, NEVADA, in his official capacity; MICHAEL NAFT, in his official capacity; MARILYN KIRKPATRICK, in her official capacity; APRIL BECKER, in her official capacity; WILLIAM McCURDY II, in his official capacity; RICHARD SEGERBLOM, in his official capacity; JUSTIN JONES, in his official capacity, JAMES GIBSON, in his official capacity; DOUGLAS COUNTY, NEVADA, a political subdivision of the State of Nevada; JENNIFER DAVIDSON, County Manager for DOUGLAS COUNTY, NEVADA, in her official capacity; MARK | Case No.:<br><br>## COMPLAINT FOR DAMAGES<br><br>1. **Right to be Secure in Persons/ Unreasonable Seizure – Violation of Fourth Amendment (42 U.S.C. § 1983)**<br>2. **Claim for Supervisory Liability/ Failure to Protect (42 U.S.C. § 1983)**<br>3. **Municipal Liability-Ratification – *Monell v. Dept. of Social Services of the City of New York*, 436 U.S. 658 (1978) (42 U.S.C. § 1983)**<br>4. **Municipal Liability- Inadequate Training - *Monell* – (42 U.S.C. § 1983)**<br>5. **Unconstitutional Custom, Practice, or Policy – *Monell* (42 U.S.C. §1983)**<br>6. **Substantive Due Process - Fourteenth Amendment (42 U.S.C. § 1983)**<br>7. **Equal Protection - Fourteenth Amendment (42 U.S.C. § 1983)**<br>8. **Eighth Amendment - Cruel and Unusual Punishment (42 U.S.C § 1983)**<br>9. **Failure To Provide Medical Care / Denial Of Medical Care – Violation of Fourth Amendment (42 U.S.C. § 1983)**<br><br>**Supplemental State Claims: Claims arising from NRS §11.215: Sexual Assault, Sexual Battery, Intentional Infliction of Emotional** |

1

COMPLAINT

GARDNER, in his official capacity; NATHAN TOLBERT, in his official capacity; BRUCE BURGESS, in his official capacity, as Superintendent of Caliente Youth Center; CANDITA STRONG, in her official capacity, as Superintendent of Nevada Youth Training Center; PATRICK MENDEZ, in his official capacity as Superintendent of Summit View Youth Center; Not Yet Fully Identified OFFICER PRICE, an individual; Not Yet Fully Identified OFFICER TIBBITS, an individual; Not Yet Fully Identified OFFICER BERNSTEIN, an individual; Not Yet Fully Identified OFFICER NICHOLSON, an individual; Not Yet Fully Identified OFFICER HOSS, an individual; Not Yet Fully Identified OFFICER NELSON, an individual; Not Yet Fully Identified OFFICER TAYLOR, an individual; Not Yet Fully Identified; OFFICER BEAR, an individual; Not Yet Fully Identified OFFICER DONAHUE, an individual; Not Yet Fully Identified OFFICER MOORE, an individual; Not Yet Fully Identified OFFICER OSBORNE, an individual; Not Yet Fully Identified OFFICER SMITH, an individual; Not Yet Fully Identified OFFICER TERESA, an individual; Not Yet Fully Identified OFFICER JERRY, an individual; Not Yet Fully Identified OFFICER SAWYER, an individual; Not Yet Fully Identified OFFICER MICKEY, an individual; Not Yet Fully Identified OFFICER RILEY, an individual; Not Yet Fully Identified OFFICER SMITH, an individual; Not Yet Fully Identified OFFICER BOMBGONNER, an individual; Not Yet Fully Identified OFFICER JENKINS, an individual; Not Yet Fully Identified OFFICER MCGRORY, an individual; Not Yet Fully Identified OFFICER SCHUABB, an individual; Not Yet Fully Identified OFFICER SCHMITTY, an individual; Not Yet Fully Identified OFFICER LUCHASEE, an individual; Not Yet Fully Identified OFFICER GHOUL, an individual; Not Yet Fully

**Distress, Negligence, Negligent Hiring Training & Supervision, Negligent Infliction of Emotional Distress, Constructive Fraud & Declaratory Relief**

**<u>DEMAND FOR JURY TRIAL</u>**

2

COMPLAINT

Identified OFFICER MANZ, an individual; Not Yet Fully Identified OFFICER BENTLEY, an individual; Not Yet Fully Identified OFFICER BARNETT, an individual; Not Yet Fully Identified OFFICER BROOKS, an individual; Not Yet Fully Identified OFFICER RIPTOE, an individual; Not Yet Fully Identified OFFICER SINNER, an individual; Not Yet Fully Identified OFFICER HERRING, an individual; Not Yet Fully Identified OFFICER FRANCIS, an individual; Not Yet Fully Identified OFFICER ROBINSON, an individual; Not Yet Fully Identified OFFICER BRADLEY, an individual; Not Yet Fully Identified OFFICER YOUNG, an individual; Not Yet Fully Identified OFFICER BURTON, an individual; Not Yet Fully Identified OFFICER CLARK, an individual; Not Yet Fully Identified OFFICER GOODSON, an individual; Not Yet Fully Identified OFFICER OLSON, an individual; Not Yet Fully Identified OFFICER LUCASSI, an individual; Not Yet Fully Identified OFFICER LAFLAIR, an individual; Not Yet Fully Identified OFFICER SCAMBINO, an individual; and DOES 1-500,

Defendants.

Plaintiffs, JOHN DOE 319304,[1] *et. al*., (Plaintiffs as more fully identified in <u>Exhibit A</u> attached hereto and incorporated herein by reference) (collectively hereinafter "PLAINTIFFS"), by and through their counsel, TIMOTHY R. O'REILLY, ESQ., of the law firm of DICELLO LEVITT, hereby brings the following claims against the Defendants above-named (hereinafter collectively "DEFENDANTS") and allege:

/ / /

---

[1] Pursuant to *Doe v. Kamehameha Schs./Bernice Pauahi Bishop Est.*, 596 F.3d 1036, 1042 (9th Cir. 2010), and *Does I thru XXIII v. Advanced Textile Corp.*, 214 F.3d 1058 (9th Cir. 2000), contemporaneous with filing of this Complaint, Plaintiffs file their *ex parte* motion for leave of court to file under pseudonyms.

COMPLAINT

**GENERAL ALLEGATIONS AS TO THE PARTIES**

1. This action arises from pervasive, repeated, and egregious acts of sexual abuse committed by officers, agents and/or employees of the State of Nevada and its political subdivisions against children confined in state-operated and county-operated juvenile detention and correctional facilities, including the Caliente Youth Center ("CYC"), the Nevada Youth Training Center ("NYTC"), the Summit View Youth Center ("SVYC"), the China Spring Youth Camp, and the Clark County Juvenile Detention Center (collectively, "Nevada Juvenile Detention Facilities" or "NJDF"). These children, some with cognitive, emotional, or developmental vulnerabilities, were held in state or county custody pursuant to court orders. They were entirely dependent on state and county officials for their safety, care, and rehabilitation when they were subjected to a sustained pattern of sexual exploitation by adults acting under color of law, while clothed with the authority of the State of Nevada and its political subdivisions.

2. PLAINTIFFS allege that Defendants, and each of them, knowingly and unlawfully violated a nondelegable duty to protect youth in their custody from harm. Defendants failed to implement and enforce basic constitutional safeguards against custodial sexual abuse, resulting in widespread violations of PLAINTIFFS' rights under the United States and Nevada Constitutions. In addition, Defendants violated numerous state statutory and regulatory mandates, including Nevada Revised Statutes ("NRS") §§ 200.366, 200.508, 201.230, 432B.220, and related provisions, which impose mandatory duties on custodial officers and state and county employees to prevent, report, and intervene in cases of sexual misconduct involving children in state custody.

3. The abuse at NJDF was not a matter of isolated misconduct by a few rogue employees. Rather, it reflects a longstanding, systemic failure on the part of Nevada state officials and counties to address red flags, properly supervise staff, and create conditions that could prevent such abuse.

COMPLAINT

4.    PLAINTIFFS allege that NJDF staff used their official positions of authority to coerce, manipulate, and silence juvenile detainees, threatening to withhold food, visitation, hygiene products, or to impose solitary confinement unless the minors submitted to sexual abuse. These threats, coupled with the psychological trauma of confinement and some of the victims' cognitive limitations, rendered them incapable of informed resistance. The imbalance of power between adult staff and detained youth created a coercive environment in which consent was impossible, and abuse became normalized.

5.    The failure of state officials to remove known abusers—despite documented complaints, internal reports, and patterns of misconduct—demonstrates not only gross negligence, but deliberate indifference. Supervisors and administrators routinely ignored credible allegations and failed to initiate corrective action, thereby ratifying the misconduct and reinforcing a permissive environment that emboldened further abuse.

6.    Juvenile detainees are afforded rights and protections under the United States Constitution, including the Fourth and Fourteenth Amendments, and parallel due process protections under Article 1, Section 8 of the Nevada Constitution. Moreover, these acts violate Nevada's criminal laws, including NRS § 200.366, which criminalizes sexual assault, NRS § 201.230, which prohibits lewdness with a minor, and NRS § 200.508, which criminalizes child abuse and neglect. Defendants' conduct also contravenes the Prison Rape Elimination Act (PREA), which imposes strict federal standards on juvenile facilities to prevent, detect, and respond to sexual abuse in custody. Yet, NJDF repeatedly violated failed to meet PREA mandates, including its obligation to investigate complaints and provide confidential reporting mechanisms for youth in detention.

7.    The sexual assaults described herein include—without limitation—forced genital touching, groping, digital penetration, oral copulation, exposure to sexually explicit conduct, and

retaliatory sexual contact. These incidents were often accompanied by verbal degradation, intimidation, and psychological coercion. Numerous victims report being physically restrained or threatened with solitary confinement if they refused to comply. These acts were part of a pattern or practice of abuse that occurred with impunity due to lack of oversight, its ineffective grievance system, and its culture of intimidation.

8.     PLAINTIFFS allege that the Defendant State officials, sued in their official capacities, failure to act was not merely negligent—it was intentional and calculated. High-ranking officials were repeatedly placed on notice regarding the risk and occurrence of abuse. In many instances, facility staff actively concealed misconduct by falsifying logs, threatening whistleblowers, and tampering with surveillance systems—further obstructing access to justice for survivors.

9.     The constitutional and statutory violations outlined above are especially heinous given the vulnerability of the minors in custody. Many survivors suffered from developmental disabilities, mental health conditions, or histories of trauma—circumstances that heightened their susceptibility to abuse and silencing. The State's refusal to implement trauma-informed practices, ensure therapeutic care, or train staff in abuse prevention reveals a systemic indifference to the safety of children under its supervision.

10.     These violations constitute actionable torts under Nevada law, including but not limited to negligence, negligent supervision, battery, intentional infliction of emotional distress, and violations of 42 U.S.C. § 1983. Plaintiffs seek to hold the DEFENDANTS, and each of them, and their respective employees accountable for their failure to prevent and their active concealment of sexual abuse, as well as for the lasting psychological harm inflicted on these young victims.

11.     Plaintiffs assert that all acts alleged herein were committed by DEFENDANTS

COMPLAINT

and DOES 1–500, inclusive, who at all relevant times were employees, agents, representatives, or policymakers acting under color of law and within the course and scope of their employment. PLAINTIFFS further allege that each Defendant acted with deliberate indifference, gross negligence, or intent, and that said acts and omissions proximately caused the injuries suffered by PLAINTIFFS.

## PARTIES

12.     PLAINTIFFS were at all times relevant herein minors committed to the custody of the State of Nevada, through its juvenile justice system.

13.     Due to PLAINTIFFS being victims of sexual abuse and harassment, their identities have been protected in this public filing due to the sensitive and personal nature of the allegations.

## A.    DEFENDANTS SUED IN THEIR OFFICIAL CAPACITIES

14.     Defendant LAURA RICH is the current Director of the Nevada DHHS, an office of the Executive Branch of the State of Nevada, and is sued in her official capacity. She was appointed the executive head of the Nevada DHHS by Nevada Governor Joe Lombardo, and is responsible for establishing departmental goals, objectives, and priorities; she approves divisional budgets; and delegates to the division heads such authorities and responsibilities as he deems necessary for the efficient conduct of business of the DHHS, pursuant to NRS § 232.070. DHHS, the office she oversees, is the overarching cabinet-level agency in Nevada responsible for administering a wide range of programs that provide policy direction, oversight, and coordination to several divisions, including the Division of Child and Family Services ("DCFS"), which operates and supervises the state juvenile correctional facilities at issue. She is also responsible for appointing divisional directors, pursuant to NRS § 232.320, including the Administrator of the Nevada Department of Child and Family Services ("DCFS"). Her business address is 505 East King Street, Room 600, Carson City, Nevada 89701-3708.

COMPLAINT

15.     Defendant MARLA McDADE WILLIAMS is the current Administrator of the Nevada Department of Child and Family Services ("DFCS"), and is sued in her official capacity. She is responsible for the administration and oversight of all functions of Nevada DCFS, which oversees and operates the Nevada juvenile detention facilities, including the facilities mentioned herein, and juvenile justice services.  Nevada DCFS is required to adopt regulations for juvenile detention facilities in Nevada, including establishing minimum standards for and oversight of juvenile detention centers and/or facilities, procedures for placement, treatment, and compliance with federal Prison Rape Elimination Act (PREA) standards, and management and oversight of Nevada juvenile detention facilities. Her business address is 4126 Technology Way, 3rd Floor, Carson City, Nevada 89706.

### Superintendents Of Juvenile Detention Facilities

16.     Defendant BRUCE BURGESS is, upon information and belief, the current Superintendent of CALIENTE YOUTH CENTER (CYC) and is sued in his official capacity. He provides leadership, administrative oversight, and operational management for the state-operated juvenile residential facilities, and his key duties include enforcing security and rehabilitation protocols, managing fiscal affairs and staffing, ensuring staff training, and submitting reports to the Nevada DCFS regarding CYC.  His business address is 500 Youth Center Drive, Caliente, Nevada 89008.

17.     Defendant CANDITA STRONG is, upon information and belief, the current Superintendent of NEVADA YOUTH TRAINING CENTER (NYTC) and is sued in her official capacity. She provides leadership and oversight for the NYTC, including managing daily operations, staff hiring, and budgetary planning.  Her key duties include directing care, security, treatment, and education for youth in the NYTC facility, and ensuring compliance with institutional policies and state and federal laws. Her business address is 100 Youth Center Road,

Elko, Nevada 89801-9565.

18.    Defendant PATRICK MENDEZ is, upon information and belief, the current Superintendent of SUMMIT VIEW YOUTH CENTER (SVYC) and is sued in his official capacity.    He provides executive leadership, management of daily operations, safety and rehabilitation programs for SVYC. His key duties include enforcing security protocols (searches and headcounts), overseeing staff, managing budgets, and ensuring compliance with DFCS policies, state, and federal laws. His business address is 5730 Range Rd., Las Vegas, Nevada 8911

**B.    CLARK COUNTY, STATE OF NEVADA DEFENDANTS**

19.    Defendant CLARK COUNTY, STATE OF NEVADA ("CLARK COUNTY"), is a political subdivision of the State of Nevada. NRS § 41.031(1) waives governmental immunity for political subdivisions, making Nevada municipalities, counties, including CLARK COUNTY, and other political subdivisions subject to suit under 42 U.S.C § 1983.

20.    Defendant KEVIN SCHILLER is the current County Manager for CLARK COUNTY, NEVADA, and is sued in his official capacity.  Clark County, Nevada, is, and at all times relevant herein was, a political subdivision of the State of Nevada responsible for the operation, funding, oversight, and management of the Clark County Juvenile Detention Center located at 651 N. Pecos Road, Las Vegas, Nevada 89101, through its Department of Juvenile Justice Services.

21.    Defendants MICHAEL NAFT, MARILYN KIRKPATRICK, APRIL BECKER, WILLIAM MCCURDY II, RICHARD SEGERBLOM, JUSTIN JONES, and JAMES B. GIBSON are the seven current members of the Clark County, Nevada Board of County Commissioners, and are sued in their respective official capacities.  The Board of County Commissioners are responsible for running the County government, including hiring the County Manager, who is responsible for the day-to-day administrative operations of the County

COMPLAINT

government and oversees and operates the Clark County Juvenile Detention Center, through the Clark County Department of Juvenile Services, a public agency governed by the Clark County Board of Commissioners. Their business address is 500 Grand Central Parkway, Las Vegas, Nevada 89106.

**C.      DOUGLAS COUNTY, STATE OF NEVADA DEFENDANTS**

22.      Defendant DOUGLAS COUNTY, STATE OF NEVADA ("DOUGLAS COUNTY") is a political subdivision of the State of Nevada. NRS § 41.031(1) waives governmental immunity for political subdivisions, making Nevada municipalities, counties, including DOUGLAS COUNTY, and other political subdivisions subject to suit under 42 U.S.C § 1983.

23.      Defendant JENIFER DAVIDSON is the County Manager for DOUGLAS COUNTY, NEVADA, and is sued in her official capacity. Douglas County, Nevada, is, and at all times relevant herein was, a political subdivision of the State of Nevada responsible for the operation, funding, oversight, and management of the CHINA SPRINGS YOUTH CAMP (CSYC), and contracted with the Nevada DFCS. Her business address is 1594 Esmerelda Avenue, Minden, Nevada 89423.

24.      Defendants MARK GARDNER and NATHAN TOLBERT are the two current members of the DOUGLAS COUNTY, NEVADA Board of County Commissioners, and are sued in their respective official capacities.  They are the primary governing body responsible for setting policies, managing the budget, and overseeing county departments, including law enforcement, human services, and oversight over the China Springs Youth Camp (CSYC), through the Douglas County, Nevada, Manager's office, handling administration, policy setting, and budgeting. Their business address is 1594 Esmerelda Avenue, Minden, Nevada 89423.

/ / /

COMPLAINT

## D.    INDIVIDUAL STATE-ACTOR DEFENDANTS

25.    The following Defendants are not yet fulling identified and are sued in their personal, individual, and official capacities pursuant to applicable laws and referred to collectively herein as "DEFENDANT OFFICERS" or "THE ABUSERS" as follows: Defendants OFFICER PRICE, an individual; Not Yet Fully Identified OFFICER TIBBITS, an individual; Not Yet Fully Identified OFFICER BERNSTEIN, an individual; Not Yet Fully Identified OFFICER NICHOLSON, an individual; Not Yet Fully Identified OFFICER HOSS, an individual; Not Yet Fully Identified OFFICER NELSON, an individual; Not Yet Fully Identified OFFICER TAYLOR, an individual; Not Yet Fully Identified; OFFICER BEAR, an individual; Not Yet Fully Identified OFFICER DONAHUE, an individual; Not Yet Fully Identified OFFICER MOORE, an individual; Not Yet Fully Identified OFFICER OSBORNE, an individual; Not Yet Fully Identified OFFICER SMITH, an individual; Not Yet Fully Identified OFFICER TERESA, an individual; Not Yet Fully Identified OFFICER JERRY, an individual; Not Yet Fully Identified OFFICER SAWYER, an individual; Not Yet Fully Identified OFFICER MICKEY, an individual; Not Yet Fully Identified OFFICER RILEY, an individual; Not Yet Fully Identified OFFICER SMITH, an individual; Not Yet Fully Identified OFFICER BOMBGONNER, an individual; Not Yet Fully Identified OFFICER JENKINS, an individual; Not Yet Fully Identified OFFICER MCGRORY, an individual; Not Yet Fully Identified OFFICER SCHUABB, an individual; Not Yet Fully Identified OFFICER SCHMITTY, an individual; Not Yet Fully Identified OFFICER LUCHASEE, an individual; Not Yet Fully Identified OFFICER GHOUL, an individual; Not Yet Fully Identified OFFICER MANZ, an individual; Not Yet Fully Identified OFFICER BENTLEY, an individual; Not Yet Fully Identified OFFICER BARNETT, an individual; Not Yet Fully Identified OFFICER BROOKS, an individual; Not Yet Fully Identified OFFICER RIPTOE, an individual; Not Yet Fully Identified OFFICER SINNER, an individual; Not Yet Fully Identified

OFFICER HERRING, an individual; Not Yet Fully Identified OFFICER FRANCIS, an individual; Not Yet Fully Identified OFFICER ROBINSON, an individual; Not Yet Fully Identified OFFICER BRADLEY, an individual; Not Yet Fully Identified OFFICER YOUNG, an individual; Not Yet Fully Identified OFFICER BURTON, an individual; Not Yet Fully Identified OFFICER CLARK, an individual; Not Yet Fully Identified OFFICER GOODSON, an individual; Not Yet Fully Identified OFFICER OLSON, an individual; Not Yet Fully Identified OFFICER LUCASSI, an individual; Not Yet Fully Identified OFFICER LAFLAIR, an individual; Not Yet Fully Identified OFFICER SCAMBINO, an individual. Upon information and belief, each of the DEFENDANT OFFICERS, including DOES 1-100, is and were, at all times relevant hereto, employees, agents, of the State of Nevada, Clark County, Nevada, Douglas County, Nevada, and/or DEFENDANTS, and acting under color of law within the course and scope of their respective duties, and at all times relevant herein, acted with complete authority, ratification of their respective superiors, principals, and are therefore individual state actors within the meaning of 42 U.S.C. § 1983.

26.    Individual Defendants and DOES 1-500 are, and at all times relevant herein, were individuals acting under color of authority and in the course and scope of their employment with DEFENDANTS at the time of the sexual misconduct, including, but not limited to, individuals acting in a supervisory capacity over DEFENDANT OFFICERS, including, but not limited to supervisors, correctional lieutenants, and training officers of the facilities described herein.

27.    The sexual acts alleged by PLAINTIFFS took place within the Nevada Juvenile Detention Facilities by DEFENDANT OFFICERS, named personnel identified as being involved in the conduct and unknown agents, employees and/or servants of DEFENDANTS sued as DOES 1-500 employed by the DEFENDANTS, who were acting within the course and scope of their employment and/or agency with DEFENDANTS at all times referenced herein, and were the

individuals who committed the subject acts to PLAINTIFFS and/or were under their complete control and/or active supervision.

28.    PLAINTIFFS are informed and believe, and on that basis allege, that all DEFENDANTS, including the fictitious Doe Defendants, were at all relevant times acting as actual agents, conspirators, ostensible agents, partners, joint ventures, co-tortfeasors, and employees of all other defendants, and that all acts alleged occurred within the course and scope of the agency, employment, partnership, joint venture, conspiracy, and/or enterprise, and with the express and/or implied permission, knowledge, consent, authorization, and ratification of their co-defendants; However, this allegation is pleaded as an "alternative" theory, wherever not doing so would result in contradiction to other allegations.

29.    The true names of DOES 1-500 are readily unavailable and unknown to PLAINTIFFS, who therefore sue the Doe Defendants by fictitious names. PLAINTIFFS allege that DEFENDANTS and DOES 1-500 were employees and/or agents of DEFENDANTS during the incidents referenced and were responsible in some way for PLAINTIFFS' injuries.

30.    PLAINTIFFS will amend this Complaint to show their true names and capacities when they have been ascertained.

31.    Regarding each constitutional violation and tort referenced, PLAINTIFFS allege that DEFENDANTS are vicariously liable for the actions of their individual employees, which actions were within the scope of employment, because the imposition of vicarious liability (1) will prevent the recurrence of similar tortious conduct by creating an incentive for vigilance by those in a position to guard against the evil to be prevented; (2) would give greater assurance of compensation to the victim; and (3) would spread the loss among the beneficiaries of the enterprise because of the substantial benefits to the community stemming from lawfully exercising power.

32.     All allegations in this Complaint are based on information and belief and/or are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery. PLAINTIFFS bring this Complaint against DEFENDANTS to recover damages suffered by PLAINTIFFS as a result of sexual abuse and other relief available at law and in equity. Whenever allegations in this complaint are contrary or inconsistent, such allegations shall be deemed alternative.

## JURISDICTION AND VENUE

33.     This is a civil action brought pursuant to the Civil Rights Act of 1871, codified at 42 U.S.C. § 1983 ("civil action for deprivation of rights") and pendant state law claims, including sexual assault and sexual battery pursuant to NRS § 11.215, seeking damages against Defendants for committing acts, under color of law, with the intent and purpose of depriving PLAINTIFFS of important rights secured under the United States and Nevada Constitutions and for refusing and/or neglecting to prevent such constitutional deprivations and denials to PLAITNIFFS.

34.     Subject matter jurisdiction is conferred upon this Court by 28 U.S.C. § 1331 ("Federal Question") and § 1343(a) ("Civil Rights").

35.     This Court has supplemental jurisdiction over pendant state law claims pursuant to 28 U.S.C. § 1367, as such claims are so related to the federal claims that they form part of the same case or controversy under Article III of the United States Constitution.

36.     Venue is proper because DEFENDANTS conduct business in the State of Nevada, and the events giving rise to this action occurred within the State of Nevada at facilities operated by DEFENDANTS.

37.     Venue is equally proper because DEFENDANTS, as state agencies, may be sued in any county in which a substantial part of the events or omissions giving rise to the claim occurred, pursuant to NRS § 13.040.

## FACTUAL ALLEGATIONS APPLICABLE TO ALL CLAIMS BY PLAINTIFFS

38.     At all relevant times, PLAINTIFFS were minors involuntarily confined in Nevada's juvenile justice and juvenile justice system pursuant to valid court orders. Their

COMPLAINT

detention was not elective—it was compulsory, complete, and enforced by the authority of the State. As such, DEFENDANTS exercised total control over PLAINTIFFS' physical liberty, daily routines, interpersonal interactions, and access to any outside support. This absolute custodial control imposed both a legal and moral duty on DEFENDANTS to ensure the safety, protection, and dignified treatment of these vulnerable children. That duty extended to preventing foreseeable sexual abuse, coercion, and exploitation by agents acting under color of law.

39.     The circumstances of PLAINTIFFS' confinement rendered them uniquely and acutely vulnerable. As detained minors, PLAINTIFFS were entirely reliant upon DEFENDANTS for basic needs, physical safety, and emotional well-being. This dependency was not incidental; it was the natural consequence of their confinement and a constitutional trigger for heightened protections under the Fourteenth Amendment's substantive due process clause.

40.     DEFENDANTS maintained unchallenged authority over every aspect of PLAINTIFFS' lives. PLAINTIFFS' access to food, education, hygiene, medical care, communication with family, and even the length and conditions of their confinement, were all determined at the sole discretion of DEFENDANTS and their agents. This unilateral power structure created a coercive environment in which resistance was functionally impossible and abuse could flourish with impunity.

41.     DEFENDANTS and DOES 1–500 occupied positions of immense authority, trust, and state-sanctioned control over confined youth. This relationship—rooted in compulsory detention and institutional dominance—created a heightened duty of care under both federal and Nevada law. Rather than uphold this duty, DEFENDANTS leveraged their institutional power to facilitate and conceal acts of sexual abuse, thereby breaching their obligations under constitutional, statutory, and common law.

42.     DEFENDANTS are vicariously liable for the tortious acts and omissions of their employees and agents—including those acts that directly caused the sexual abuse, psychological trauma, and civil rights violations suffered by PLAINTIFFS. These agents acted within the scope of their employment and under the color of authority, making their conduct legally attributable to their public employer. See NRS §§ 41.130; 41.745; 41.0337.

COMPLAINT

43. On information and belief, DEFENDANTS acted negligently, recklessly, and with deliberate indifference in hiring, training, retaining, and supervising individuals with access to vulnerable juvenile detainees. These individuals were empowered by the State to act as custodians and protectors—but instead, used their positions to prey upon confined minors for sexual gratification, with DEFENDANTS turning a blind eye.

44. DEFENDANTS' conduct was not merely negligent; it was systemic and pervasive, and included, but was not limited to:

(a) Failing to implement constitutionally adequate hiring practices, thereby permitting the employment of individuals with histories of misconduct or propensities for abuse;

(b) Permitting unsupervised, unscreened, and unrestricted access to juvenile inmates, enabling sexually abusive contact in violation of NRS §§ 200.366 and 201.230;

(c) Failing to adequately train youth treatment staff, corrections officers, and other employees on how to recognize, prevent, and report sexual violence within a custodial environment;

(d) Ratifying misconduct by tolerating known patterns of abuse, refusing to investigate complaints, and shielding perpetrators from consequences through inaction, deliberate cover-up, or obstructive administrative practices.

45. DEFENDANTS abjectly failed in their most fundamental duty: to supervise and protect confined minors from foreseeable harm, including sexual assault and coercion by staff. Despite known risk factors, repeated warning signs, and prior misconduct complaints, DEFENDANTS failed to take preventative or disciplinary action—thereby facilitating a culture of unchecked abuse.

46. The sexual acts inflicted upon PLAINTIFFS were non-consensual, degrading, and committed solely for the personal gratification and predation of DEFENDANTS' agents and employees. PLAINTIFFS, due to their minor status, legal confinement, and emotional or cognitive vulnerability, were incapable of providing meaningful or lawful consent. These acts constitute a violation of criminal law and a constitutional deprivation of bodily integrity.

47.     On information and belief, DEFENDANTS had actual or constructive knowledge that DOES 1–500 have engaged in prior sexually abusive, harassing, or retaliatory conduct. DEFENDANTS had a clear duty to protect PLAINTIFFS by investigating such conduct, removing dangerous actors, and warning or informing vulnerable inmates. Instead, DEFENDANTS actively concealed or willfully ignored such information—thereby creating and perpetuating a state-created danger and violating their fiduciary and statutory duties under Nevada and federal law.

48.     PLAINTIFFS further allege that the abuse followed a deliberate and repeated pattern of grooming, isolation, and coercion. This grooming was enabled by the structural power imbalance between institutional staff and detained children, and was marked by manipulation, boundary erosion, and threats of punishment. These acts of predatory control and sexual assault violate NRS §§ 200.366 and 201.230, and establish intent, not merely negligence, on the part of individual perpetrators and institutional actors.

49.     DEFENDANTS knowingly allowed this environment of abuse to persist by refusing to timely investigate credible complaints of misconduct. Their institutional indifference—whether motivated by fear of liability, bureaucratic inertia, or a culture of silence—created fertile ground for repeat offenders to avoid detection, discipline, or termination, thereby violating the State's duties under the Prison Rape Elimination Act (PREA) and applicable Nevada regulations.

50.     Even when victims or staff members brought misconduct to light, DEFENDANTS failed to impose appropriate disciplinary consequences due to delayed or obstructed investigations, administrative misconduct, and willful misapplication of internal policies. These failures denied PLAINTIFFS and others access to justice, emboldened abusers, and institutionalized a culture of impunity within Nevada's juvenile justice system.

### COMPLIANCE WITH GRIEVANCE PROCESS

51.     Based upon information and belief, PLAINTIFFS contend there was no formal or informal grievance process relating to the conditions of confinement, in which they could make complaints about the sexual abuse and harassment by DOES 1-500.

52.     Moreover, to the extent there was a process, PLAINTIFFS at all times were unaware of the process, and DEFENDANTS have failed to advise PLAINTIFFS of their rights to complain about the sexual misconduct without fear and/or threat of retaliation or other form of deterrence.

53.     Further, to the extent there was a process, PLAINTIFFS at all times were coerced and threatened not to report the sexual abuse through physical and verbal acts of intimidation, actual and/or constructive retaliation and/or other form of deterrence.

54.     In addition, when certain PLAINTIFFS made complaints of violence and sexual assault, any formal policy and procedure for grievances fell on deaf ears without recourse, formal hearings, resolution efforts, and/or any other manner of redress.

55.     If a formal grievance process had to be commenced under the circumstances, the grievance process at the facilities was "effectively unavailable."

56.     Finally, PLAINTIFFS allege that each of them is no longer in custody and therefore any potential grievance process need not be exhausted prior to filing this lawsuit.

57.     PLAINTIFFS allege that at the time this action was filed, none of the PLAINTIFFS were incarcerated, detained, or otherwise confined in any state-run or custodial institution. Therefore, the exhaustion requirements of the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a), are inapplicable as a matter of law. The plain language of the statute and binding precedent make clear that only those who are "prisoners" at the time of filing are required to exhaust administrative remedies. PLAINTIFFS were not "prisoners" within the meaning of § 1997e(a), and accordingly, no exhaustion requirement applies to any claims raised herein.

58.     Even if the PLRA exhaustion provision were deemed applicable, PLAINTIFFS are excused from exhausting any administrative remedies because such remedies were, in practice and under the totality of the circumstances, effectively unavailable within the meaning of Ross v. Blake, 578 U.S. 632 (2016).

59.     Specifically, based on information and belief, there was no formal or informal grievance process made available to PLAINTIFFS that would permit them to safely or confidentially report incidents of sexual abuse, sexual assault, or harassment committed by

DEFENDANTS and DOES 1–500. No institutional materials, procedures, forms, or guidance were ever provided to PLAINTIFFS indicating how or to whom such conduct could be reported for redress.

60.    To the extent any grievance process may have existed in theory, it was inaccessible and ineffective in practice. PLAINTIFFS were never advised of any rights to file confidential grievances concerning staff misconduct, nor were they assured any protection from retaliation. PLAINTIFFS were kept in a deliberately opaque system in which grievance processes were unknown, withheld, or functionally nonexistent.

61.    Moreover, PLAINTIFFS were routinely subjected to coercion, threats, intimidation, and retaliation—both explicit and implicit—designed to suppress any attempt to report abuse. Staff and agents of DEFENDANTS created an environment of fear in which speaking out would result in punishment, further abuse, or prolonged confinement. In many instances, PLAINTIFFS were led to believe that any report would be futile, would not be believed, or would directly endanger their safety.

62.    In fact, in situations where certain PLAINTIFFS did attempt to make reports or complaints of sexual misconduct, the complaints were ignored, dismissed, or disregarded without investigation, hearing, or redress, further demonstrating that any purported grievance mechanism was a dead end incapable of providing meaningful relief. Accordingly, even if technically available, the grievance process failed to satisfy the standards of availability required under federal law and judicial precedent.

63.    Furthermore, any alleged grievance system was structurally incapable of addressing claims of sexual abuse perpetrated by facility staff. The processes—if they existed— lacked confidentiality, independence, oversight, and the procedural safeguards necessary to handle serious abuse allegations, especially where the accused were in positions of custodial authority over the complainants.

64.    PLAINTIFFS allege that, under these circumstances, administrative remedies were not "available" within the meaning of law, including Ross v. Blake, 578 U.S. 632 (2016),

COMPLAINT

and thus exhaustion is not required. Any process that is (a) unknown, (b) inaccessible due to fear or coercion, or (c) futile due to inaction or bias, does not qualify as an "available" remedy.

65. Accordingly, PLAINTIFFS were under no obligation to exhaust administrative remedies, and any defense or motion to dismiss premised on failure to exhaust must be denied as inapplicable both factually and legally. PLAINTIFFS have satisfied all legal prerequisites for bringing this action.

66. Finally, under Perttu v. Richards, No. 23-1324, slip op. at 5–6 (U.S. June 18, 2025), PLAINTIFFS are entitled to a jury trial on PLRA exhaustion because that issue is intertwined with the merits of a claim that requires a jury trial under the Seventh Amendment.

**LIABILITY FOR ACTS OF OFFICERS**

67. PLAINTIFFS contend that at all times herein described, DEFENDANTS, who committed the sexual acts and/or those who allowed the sexual acts to occur by actions or omissions to act (hereafter, "THE ABUSERS," which include the DEFENDANT OFFICERS) as agents, employees, and/or servants of DEFENDANTS, acted under color of authority when the sexual abuse and misconduct took place. Under 42 U.S.C § 1983, as set forth herein, DEFENDANTS CLARK COUNTY, DOUGLAS COUNTY, and the Defendants sued in their respective official capacities, are liable for sexual abuse, sexual assault, and related torts committed by THE ABUSERS, including the DEFENDANT OFFICERS, within the scope of their employment. See NRS §§ 41.130; 41.745; 41.0337.

68. Defendants CLARK COUNTY, DOUGLAS COUNTY, and the Defendants sued in their respective official capacities are liable for all acts and/or omissions to act by THE ABUSERS in their course and scope of employment given to THE ABUSERS, as on-duty officers and/or employees committed these acts and misused their authority by sexually abusing PLAINTIFFS, whom they had detained in DEFENDANTS' facilities.

**INDIVIDUAL PLAINTIFF ALLEGATIONS**

69. The individualized factual allegations of each Plaintiff are as follows:

///

///

A.      **John Doe 319304:**

i.      Plaintiff John Doe 319304 is a male, born on January 28, 1989, who was sexually abused between the ages of 14 and 15, in or around 2004, while confined within the Nevada Juvenile Justice System at the Nevada Youth Training Center ("NYTC") in Elko, Nevada. At the time of the abuse, Plaintiff was a minor child entrusted to the custody, care, and supervision of the State of Nevada and its agents, employees, and contractors.

ii.      Plaintiff was committed to mandatory physical confinement at the Nevada Youth Training Center ("NYTC") in Elko, Nevada, where he was placed under the complete custody, dominion, and control of Defendants and DOES 1-500. These Defendants held positions of extraordinary power, trust, and authority over Plaintiff—a vulnerable, confined child with no ability to leave, resist, or seek outside help. Defendants exploited this absolute power imbalance to sexually abuse and harass Plaintiff under color of authority on behalf of DEFENDANTS, and each of them.

iii.      While Plaintiff was confined at the Nevada Youth Training Center ("NYTC") in Elko, Nevada, between the ages of 14 and 15, in or around 2004, he was subjected to egregious and predatory sexual abuse on at least 9 separate occasions, over a period of approximately 1 year. Plaintiff was escorted to a storage room outside of the cottage with another inmate. Once they were alone the Abuser forced the Plaintiff to masturbate the penis of the other inmate. The Abuser then exposed his genitals and forced the Plaintiff to perform oral copulation on him. Plaintiff was again escorted into the storage room and forced to kiss the Abuser. The Abuser would masturbate himself while fondling the Plaintiff's body and masturbating the Plaintiff's penis. There was no ejaculation. The Abuser also attempted to penetrate the Plaintiff, but was not successful.  The incidents happened approximately 9 times in the same manner. Plaintiff was threatened with more time or to be sent to a more secure facility if he said anything about the abuse. Abuser would bring in tobacco products, alcohol in the form of Listerine and outside food to keep the plaintiff quiet.

COMPLAINT

iv.     Out of fear of retaliation, punishment, extended confinement, and further abuse, Plaintiff did not report—or was unable to meaningfully report—the sexual misconduct, knowing and believing that any complaints would be unanswered, dismissed, ignored, and buried without investigation or redress, thereby allowing the sexual misconduct to continue unabated. Plaintiff was systematically and repeatedly sexually abused in what was supposed to be a "safe haven" environment—an environment exclusively created, funded, staffed, maintained, and controlled by DEFENDANTS, and each of them. DEFENDANTS had a mandatory, non-delegable duty to protect this child from the very harm they facilitated, enabled, and concealed.

v.     As a direct and proximate result of the sexual abuse perpetrated against him, Plaintiff has suffered and continues to suffer severe, ongoing, and persistent mental, emotional, psychological, and physical injuries, including, but not limited to: anxiety; depression; feelings of helplessness and hopelessness; insomnia and sleep disturbances including nightmares; questioning of sexual identity; profoundly lowered self-esteem; moodiness and emotional dysregulation; difficulty forming and maintaining meaningful interpersonal and intimate relationships; pervasive loss of trust and control issues with persons in positions of authority; flashbacks, intrusive thoughts, and hypervigilance; chronic stress; nervousness; fear; deep embarrassment and shame; and a devastating loss of enjoyment of life, among other injuries.

B.     **Jane Doe 330406:**

i.     Plaintiff Jane Doe 330406 is a female, born on June 14, 1990, who was sexually abused between the ages of 13 and 14, in or around 2003, while confined within the Nevada Juvenile Justice System at the Caliente Youth Center ("CYC") in Caliente, Nevada. At the time of the abuse, Plaintiff was a minor child entrusted to the custody, care, and supervision of the State of Nevada and its agents, employees, and contractors.

ii.     Plaintiff was committed to mandatory physical confinement. She was placed under the complete custody, dominion, and control of Defendants and DOES 1-500. These Defendants held positions of extraordinary power, trust, and authority over

COMPLAINT

Plaintiff, a vulnerable, confined child with no ability to leave, resist, or seek outside help. Defendants exploited this absolute power imbalance to sexually abuse and harass Plaintiff under color of authority on behalf of DEFENDANTS, and each of them.

iii.     While Plaintiff was confined, she was subjected to egregious and predatory sexual abuse on at least 5+, over a period of approximately 1-2 months. While in the recreational area, the abuser fondled and groped Plaintiff's buttocks from over her clothing and her breasts from under her clothing. On other occurrences, while playing sports, Plaintiff recalls the Abuser smacking Plaintiff's buttocks. Abuser threatened to extend her time if she spoke about the abuse.

iv.     Out of fear of retaliation, punishment, extended confinement, and further abuse, Plaintiff did not report—or was unable to meaningfully report—the sexual misconduct, knowing and believing that any complaints would be unanswered, dismissed, ignored, and buried without investigation or redress, thereby allowing the sexual misconduct to continue unabated. Plaintiff was systematically and repeatedly sexually abused in what was supposed to be a "safe haven" environment—an environment exclusively created, funded, staffed, maintained, and controlled by DEFENDANTS, and each of them. DEFENDANTS had a mandatory, non-delegable duty to protect this child from the very harm they facilitated, enabled, and concealed.

v.     As a direct and proximate result of the sexual abuse perpetrated against her, Plaintiff has suffered and continues to suffer severe, ongoing, and persistent mental, emotional, psychological, and physical injuries, including, but not limited to: anxiety; depression; feelings of helplessness and hopelessness; insomnia and sleep disturbances including nightmares; questioning of sexual identity; profoundly lowered self-esteem; moodiness and emotional dysregulation; difficulty forming and maintaining meaningful interpersonal and intimate relationships; pervasive loss of trust and control issues with persons in positions of authority; flashbacks, intrusive thoughts, and hypervigilance; chronic stress; nervousness; fear; deep embarrassment and shame; and a devastating loss of enjoyment of life, among other injuries.

23

COMPLAINT

C.    **John Doe 330404:**

i.    Plaintiff John Doe 330404 is a male, born on March 31, 1992, who was sexually abused at just 16 years old, in or around 2009, while confined within the Nevada Juvenile Justice System at the Summit View Youth Center ("SVYC") in North Las Vegas, Nevada. At the time of the abuse, Plaintiff was a minor child entrusted to the custody, care, and supervision of the State of Nevada and its agents, employees, and contractors.

ii.    Plaintiff was committed to mandatory physical confinement at the Summit View Youth Center ("SVYC") in North Las Vegas, Nevada, where he was placed under the complete custody, dominion, and control of Defendants and DOES 1-500. These Defendants held positions of extraordinary power, trust, and authority over Plaintiff, a vulnerable, confined child with no ability to leave, resist, or seek outside help. Defendants exploited this absolute power imbalance to sexually abuse and harass Plaintiff under color of authority on behalf of DEFENDANTS, and each of them.

iii.    On one occasion, Abuser was doing a search on Plaintiff's cell when Abuser approached Plaintiff and proceeded to take Plaintiff's penis out of his pants. Abuser performed oral copulation on Plaintiff until ejaculation occurred. Abuser ingested Plaintiff's seminal fluid. Abuser then left Plaintiff's cell. The abuser further exploited Plaintiff by offering outside snacks and candy.

iv.    Out of fear of retaliation, punishment, extended confinement, and further abuse, Plaintiff did not report—or was unable to meaningfully report—the sexual misconduct, knowing and believing that any complaints would be unanswered, dismissed, ignored, and buried without investigation or redress, thereby allowing the sexual misconduct to continue unabated. Plaintiff was systematically and repeatedly sexually abused in what was supposed to be a "safe haven" environment—an environment exclusively created, funded, staffed, maintained, and controlled by DEFENDANTS, and each of them. DEFENDANTS had a mandatory, non-delegable duty to protect this child from the very harm they facilitated, enabled, and concealed.

COMPLAINT

v.      As a direct and proximate result of the sexual abuse perpetrated against him, Plaintiff has suffered and continues to suffer severe, ongoing, and persistent mental, emotional, psychological, and physical injuries, including, but not limited to: anxiety; depression; feelings of helplessness and hopelessness; insomnia and sleep disturbances including nightmares; questioning of sexual identity; profoundly lowered self-esteem; moodiness and emotional dysregulation; difficulty forming and maintaining meaningful interpersonal and intimate relationships; pervasive loss of trust and control issues with persons in positions of authority; flashbacks, intrusive thoughts, and hypervigilance; chronic stress; nervousness; fear; deep embarrassment and shame; and a devastating loss of enjoyment of life, among other injuries.

D.      **John Doe 330790:**

i.      Plaintiff John Doe 330790 is a male, born on February 11, 1999, who was sexually abused at just 14 years old, in or around 2014, while confined within the Nevada Juvenile Justice System at the Caliente Youth Center ("CYC") in Caliente, Nevada. At the time of the abuse, Plaintiff was a minor child entrusted to the custody, care, and supervision of the State of Nevada and its agents, employees, and contractors.

ii.      Plaintiff was committed to mandatory physical confinement where he was placed under the complete custody, dominion, and control of Defendants and DOES 1-500. These Defendants held positions of extraordinary power, trust, and authority over Plaintiff—a vulnerable, confined child with no ability to leave, resist, or seek outside help. Defendants exploited this absolute power imbalance to sexually abuse and harass Plaintiff under color of authority on behalf of DEFENDANTS, and each of them.

iii.      While Plaintiff was confined he was subjected to egregious and predatory sexual abuse on at least 2 separate occasions by OFFICER PRICE and others. The Plaintiff encountered the abuser in his assigned housing unit. The abuser was on duty and approached the Plaintiff in his room. Once they were alone, he restrained the Plaintiff against the wall using his body weight. He then forced his hands inside of his pants and fondled his bare penis with his ungloved hand. This would occur 2 x in the same manner.

He was threatened with more time should he say anything about the abuse happening. He was also given outside food as a reward for being quiet.

iv.     Out of fear of retaliation, punishment, extended confinement, and further abuse, Plaintiff did not report—or was unable to meaningfully report—the sexual misconduct, knowing and believing that any complaints would be unanswered, dismissed, ignored, and buried without investigation or redress, thereby allowing the sexual misconduct to continue unabated. Plaintiff was systematically and repeatedly sexually abused in what was supposed to be a "safe haven" environment—an environment exclusively created, funded, staffed, maintained, and controlled by DEFENDANTS, and each of them. DEFENDANTS had a mandatory, non-delegable duty to protect this child from the very harm they facilitated, enabled, and concealed.

v.     As a direct and proximate result of the sexual abuse perpetrated against him, Plaintiff has suffered and continues to suffer severe, ongoing, and persistent mental, emotional, psychological, and physical injuries, including, but not limited to: anxiety; depression; feelings of helplessness and hopelessness; insomnia and sleep disturbances including nightmares; questioning of sexual identity; profoundly lowered self-esteem; moodiness and emotional dysregulation; difficulty forming and maintaining meaningful interpersonal and intimate relationships; pervasive loss of trust and control issues with persons in positions of authority; flashbacks, intrusive thoughts, and hypervigilance; chronic stress; nervousness; fear; deep embarrassment and shame; and a devastating loss of enjoyment of life, among other injuries.

E.     **John Doe 323080:**

i.     Plaintiff John Doe 323080 is a male, born on November 07, 1988, who was sexually abused between the ages of 15 and 17, in or around 2003, while confined within the Nevada Juvenile Justice System at the Summit View Youth Center ("SVYC") in North Las Vegas, Nevada. At the time of the abuse, Plaintiff was a minor child entrusted to the custody, care, and supervision of the State of Nevada and its agents, employees, and contractors.

COMPLAINT

ii.     Plaintiff was committed to mandatory physical confinement at the Summit View Youth Center ("SVYC") in North Las Vegas, Nevada, where he was placed under the complete custody, dominion, and control of Defendants and DOES 1-500. These Defendants held positions of extraordinary power, trust, and authority over Plaintiff, a vulnerable, confined child with no ability to leave, resist, or seek outside help. Defendants exploited this absolute power imbalance to sexually abuse and harass Plaintiff under color of authority on behalf of DEFENDANTS, and each of them.

iii.     While Plaintiff was confined on at least three separate instances, the Plaintiff and the Abuser, "Ms Goldburt," were in front of his room when she forcefully reached into the Plaintiff's bottoms and fondled his genitals. Abuser 1 made comments sexualizing the Plaintiff at the time of the abuse as well, stating his genitals were "nice and big" and that she was "attracted to black guys."  A second abuser, "Ms. Clark" on at least two separate instances was escorted to his cell by Abuser 2 where she forcefully reached into his bottoms and fondled his genitals. A third abuser, "Ms. Lamby," on a separate occasion entered the Plaintiff's room and reached into his bottoms and forcefully fondled his genitals. Abuser 3 told the Plaintiff that his genitals were a "nice size" at the time of the abuse.

iv.     Out of fear of retaliation, punishment, extended confinement, and further abuse, Plaintiff did not report—or was unable to meaningfully report—the sexual misconduct, knowing and believing that any complaints would be unanswered, dismissed, ignored, and buried without investigation or redress, thereby allowing the sexual misconduct to continue unabated. Plaintiff was systematically and repeatedly sexually abused in what was supposed to be a "safe haven" environment—an environment exclusively created, funded, staffed, maintained, and controlled by DEFENDANTS, and each of them. DEFENDANTS had a mandatory, non-delegable duty to protect this child from the very harm they facilitated, enabled, and concealed.

v.     As a direct and proximate result of the sexual abuse perpetrated against him, Plaintiff has suffered and continues to suffer severe, ongoing, and persistent mental,

emotional, psychological, and physical injuries, including, but not limited to: anxiety; depression; feelings of helplessness and hopelessness; insomnia and sleep disturbances including nightmares; questioning of sexual identity; profoundly lowered self-esteem; moodiness and emotional dysregulation; difficulty forming and maintaining meaningful interpersonal and intimate relationships; pervasive loss of trust and control issues with persons in positions of authority; flashbacks, intrusive thoughts, and hypervigilance; chronic stress; nervousness; fear; deep embarrassment and shame; and a devastating loss of enjoyment of life, among other injuries.

F.    **John Doe 319627:**

i.    Plaintiff John Doe 319627 is a male, born on May 27, 1998, who was sexually abused at just 17 years old, in or around 2015, while confined within the Nevada Juvenile Justice System at the Nevada Youth Training Center ("NYTC") in Elko, Nevada. At the time of the abuse, Plaintiff was a minor child entrusted to the custody, care, and supervision of the State of Nevada and its agents, employees, and contractors.

ii.    Plaintiff was committed to mandatory physical confinement at the Nevada Youth Training Center ("NYTC") in Elko, Nevada, where he was placed under the complete custody, dominion, and control of Defendants and DOES 1-500. These Defendants held positions of extraordinary power, trust, and authority over Plaintiff, a vulnerable, confined child with no ability to leave, resist, or seek outside help. Defendants exploited this absolute power imbalance to sexually abuse and harass Plaintiff under color of authority on behalf of DEFENDANTS, and each of them.

iii.    While Plaintiff was confined, he was subjected to egregious and predatory sexual abuse on at least 3 separate occasions.  The Plaintiff was in the bathroom when he was approached by the Abuser. The Abuser approached him from behind and backed him up against the wall. He then touched the plaintiff's butt before reaching around and masturbating the Plaintiff's bare penis with his ungloved hand. The Plaintiff did ejaculate. This would happen 2 times in the same manner.  Plaintiff was threatened with having his FOM (freedom of movement) privileges taken away.

iv.     Out of fear of retaliation, punishment, extended confinement, and further abuse, Plaintiff did not report—or was unable to meaningfully report—the sexual misconduct, knowing and believing that any complaints would be unanswered, dismissed, ignored, and buried without investigation or redress, thereby allowing the sexual misconduct to continue unabated. Plaintiff was systematically and repeatedly sexually abused in what was supposed to be a "safe haven" environment—an environment exclusively created, funded, staffed, maintained, and controlled by DEFENDANTS, and each of them. DEFENDANTS had a mandatory, non-delegable duty to protect this child from the very harm they facilitated, enabled, and concealed.

v.     As a direct and proximate result of the sexual abuse perpetrated against him, Plaintiff has suffered and continues to suffer severe, ongoing, and persistent mental, emotional, psychological, and physical injuries, including, but not limited to: anxiety; depression; feelings of helplessness and hopelessness; insomnia and sleep disturbances including nightmares; questioning of sexual identity; profoundly lowered self-esteem; moodiness and emotional dysregulation; difficulty forming and maintaining meaningful interpersonal and intimate relationships; pervasive loss of trust and control issues with persons in positions of authority; flashbacks, intrusive thoughts, and hypervigilance; chronic stress; nervousness; fear; deep embarrassment and shame; and a devastating loss of enjoyment of life, among other injuries.

G.     **John Doe 329951:**

i.     Plaintiff John Doe 329951 is a male, born on August 29, 1992, who was sexually abused at just 15 years old, in or around 2007, while confined within the Nevada Juvenile Justice System at the Caliente Youth Center ("CYC") in Caliente, Nevada. At the time of the abuse, Plaintiff was a minor child entrusted to the custody, care, and supervision of the State of Nevada and its agents, employees, and contractors.

ii.     Plaintiff was committed to mandatory physical confinement at the Caliente Youth Center ("CYC") in Caliente, Nevada, where he was placed under the complete custody, dominion, and control of Defendants and DOES 1-500. These Defendants held

COMPLAINT

positions of extraordinary power, trust, and authority over Plaintiff—a vulnerable, confined child with no ability to leave, resist, or seek outside help. Defendants exploited this absolute power imbalance to sexually abuse and harass Plaintiff under color of authority on behalf of DEFENDANTS, and each of them.

iii.     While Plaintiff was confined, he was subjected to egregious and predatory sexual abuse on at least 8 separate occasions.  Plaintiff was on the football team and was required to get a physical exam in order to be on the team. Abuser was the nurse in charge of doing the physical exams. Abuser had Plaintiff take his pants off to conduct the exam. Abuser began to grope Plaintiff's penis with gloves on and started to move his hands back towards Plaintiff's anus. Abuser did not digitally penetrate Plaintiff's anus, but did fondle the outside of his anus and his buttocks. The sexual abuse lasted approximately 10-15 minutes each time. Abuser threatened Plaintiff that if he were to tell anyone about the sexual abuse, he would make Plaintiff stay at the facility longer and he would not be able to see his family.

iv.     Out of fear of retaliation, punishment, extended confinement, and further abuse, Plaintiff did not report—or was unable to meaningfully report—the sexual misconduct, knowing and believing that any complaints would be unanswered, dismissed, ignored, and buried without investigation or redress, thereby allowing the sexual misconduct to continue unabated. Plaintiff was systematically and repeatedly sexually abused in what was supposed to be a "safe haven" environment—an environment exclusively created, funded, staffed, maintained, and controlled by DEFENDANTS, and each of them. DEFENDANTS had a mandatory, non-delegable duty to protect this child from the very harm they facilitated, enabled, and concealed.

v.     As a direct and proximate result of the sexual abuse perpetrated against him, Plaintiff has suffered and continues to suffer severe, ongoing, and persistent mental, emotional, psychological, and physical injuries, including, but not limited to: anxiety; depression; feelings of helplessness and hopelessness; insomnia and sleep disturbances including nightmares; questioning of sexual identity; profoundly lowered self-esteem;

COMPLAINT

moodiness and emotional dysregulation; difficulty forming and maintaining meaningful interpersonal and intimate relationships; pervasive loss of trust and control issues with persons in positions of authority; flashbacks, intrusive thoughts, and hypervigilance; chronic stress; nervousness; fear; deep embarrassment and shame; and a devastating loss of enjoyment of life, among other injuries.

H.     **John Doe 324913:**

i.      Plaintiff John Doe 324913 is a male, born on January 08, 1993, who was sexually abused at just 16 years old, in or around 2010, while confined within the Nevada Juvenile Justice System at the Caliente Youth Center ("CYC") in Caliente, Nevada. At the time of the abuse, Plaintiff was a minor child entrusted to the custody, care, and supervision of the State of Nevada and its agents, employees, and contractors.

ii.     Plaintiff was committed to mandatory physical confinement at the Caliente Youth Center ("CYC") in Caliente, Nevada, where he was placed under the complete custody, dominion, and control of Defendants and DOES 1-500. These Defendants held positions of extraordinary power, trust, and authority over Plaintiff—a vulnerable, confined child with no ability to leave, resist, or seek outside help. Defendants exploited this absolute power imbalance to sexually abuse and harass Plaintiff under color of authority on behalf of DEFENDANTS, and each of them.

iii.    While Plaintiff was confined where he was subjected to egregious and predatory sexual abuse on at least 2 separate occasions, over a period of approximately 2 separate times. Under the guise of a pretext search, the Abuser began stroking the client's penis without any gloves for approximately 1 minute. This happened two separate times. The abuser threatened to extend the client's time at the facility if he ever told anyone. To show the client that he did have this power over him, he did drop the client's level, which did lead to him getting extra time at the facility. The client reported that he originally was only supposed to spend about 6 months at the facility prior to this happening.

iv.     Out of fear of retaliation, punishment, extended confinement, and further abuse, Plaintiff did not report—or was unable to meaningfully report—the sexual

31

COMPLAINT

misconduct, knowing and believing that any complaints would be unanswered, dismissed, ignored, and buried without investigation or redress, thereby allowing the sexual misconduct to continue unabated. Plaintiff was systematically and repeatedly sexually abused in what was supposed to be a "safe haven" environment—an environment exclusively created, funded, staffed, maintained, and controlled by DEFENDANTS, and each of them. DEFENDANTS had a mandatory, non-delegable duty to protect this child from the very harm they facilitated, enabled, and concealed.

v.      As a direct and proximate result of the sexual abuse perpetrated against him, Plaintiff has suffered and continues to suffer severe, ongoing, and persistent mental, emotional, psychological, and physical injuries, including, but not limited to: anxiety; depression; feelings of helplessness and hopelessness; insomnia and sleep disturbances including nightmares; questioning of sexual identity; profoundly lowered self-esteem; moodiness and emotional dysregulation; difficulty forming and maintaining meaningful interpersonal and intimate relationships; pervasive loss of trust and control issues with persons in positions of authority; flashbacks, intrusive thoughts, and hypervigilance; chronic stress; nervousness; fear; deep embarrassment and shame; and a devastating loss of enjoyment of life, among other injuries.

I.      **Jane Doe 330093:**

i.      Plaintiff Jane Doe 330093 is a female, born on August 26, 1990, who was sexually abused at just 15 years old, in or around 2006, while confined within the Nevada Juvenile Justice System at the Caliente Youth Center ("CYC") in Caliente, Nevada. At the time of the abuse, Plaintiff was a minor child entrusted to the custody, care, and supervision of the State of Nevada and its agents, employees, and contractors.

ii.      Plaintiff was committed to mandatory physical confinement at the Caliente Youth Center ("CYC") in Caliente, Nevada, where she was placed under the complete custody, dominion, and control of Defendants and DOES 1-500. These Defendants held positions of extraordinary power, trust, and authority over Plaintiff—a vulnerable, confined child with no ability to leave, resist, or seek outside help. Defendants exploited

32

COMPLAINT

this absolute power imbalance to sexually abuse and harass Plaintiff under color of authority on behalf of DEFENDANTS, and each of them.

iii.    While Plaintiff was confined at the Caliente Youth Center ("CYC") in Caliente, Nevada, at just 15 years old, in or around 2006, she was subjected to egregious and predatory sexual abuse on at least 10-15 times, While on kitchen duty, Abuser Amber would bring her into the freezer and fridge area. Here, she would kiss Plaintiff and would grope Plaintiff's genitals and breasts. Amber would reach into Plaintiff's clothing and would masturbate and digitally penetrate her. In addition, Amber grabbed Plaintiff's hand and placed Plaintiff's hand on her own vagina, forcing Plaintiff to masturbate her. This occurred similarly on multiple occasions.

The abuse also occurred in the shower area. In between the shower stalls, Amber would expose her unclothed body to Plaintiff.  The abuse also occurred once in the back hall area. Here, Amber pulled down Plaintiff's pants and performed oral copulation on her. Plaintiff was told not to be a snitch and suggested that something bad would happened in Plaintiff did snitch.

iv.    Out of fear of retaliation, punishment, extended confinement, and further abuse, Plaintiff did not report—or was unable to meaningfully report—the sexual misconduct, knowing and believing that any complaints would be unanswered, dismissed, ignored, and buried without investigation or redress, thereby allowing the sexual misconduct to continue unabated. Plaintiff was systematically and repeatedly sexually abused in what was supposed to be a "safe haven" environment—an environment exclusively created, funded, staffed, maintained, and controlled by DEFENDANTS, and each of them. DEFENDANTS had a mandatory, non-delegable duty to protect this child from the very harm they facilitated, enabled, and concealed.

v.    As a direct and proximate result of the sexual abuse perpetrated against her, Plaintiff has suffered and continues to suffer severe, ongoing, and persistent mental, emotional, psychological, and physical injuries, including, but not limited to: anxiety; depression; feelings of helplessness and hopelessness; insomnia and sleep disturbances

including nightmares; questioning of sexual identity; profoundly lowered self-esteem; moodiness and emotional dysregulation; difficulty forming and maintaining meaningful interpersonal and intimate relationships; pervasive loss of trust and control issues with persons in positions of authority; flashbacks, intrusive thoughts, and hypervigilance; chronic stress; nervousness; fear; deep embarrassment and shame; and a devastating loss of enjoyment of life, among other injuries.

J.      **John Doe 330099:**

i.      Plaintiff John Doe 330099 is a male, born on March 20, 2004, who was sexually abused at just 15 years old, in or around 2019, while confined within the Nevada Juvenile Justice System at the Caliente Youth Center ("CYC") in Caliente, Nevada. At the time of the abuse, Plaintiff was a minor child entrusted to the custody, care, and supervision of the State of Nevada and its agents, employees, and contractors.

ii.      Plaintiff was committed to mandatory physical confinement at the Caliente Youth Center ("CYC") in Caliente, Nevada, where he was placed under the complete custody, dominion, and control of Defendants and DOES 1-500. These Defendants held positions of extraordinary power, trust, and authority over Plaintiff—a vulnerable, confined child with no ability to leave, resist, or seek outside help. Defendants exploited this absolute power imbalance to sexually abuse and harass Plaintiff under color of authority on behalf of DEFENDANTS, and each of them.

iii.      While Plaintiff was confined he was subjected to egregious and predatory sexual abuse on at least 3 separate occasions. OFFICER TIBBITS would enter Plaintiff's cottage and state he needed to conduct a search.  Plaintiff would be pushed against the wall. Officer Tibbits would force his hand down Plaintiff's pants and grope his penis with OFFICER TIBBIT'S gloved hands. On one occasion, Officer Tibbits digitally penetrated Plaintiff's anus. On a separate occasion, Officer Tibbits attempted to digitally penetrate Plaintiff again; however, Plaintiff moved away. As a response, OFFICER TIBBITS then forced Plaintiff to the ground, causing bruising on Plaintiff's hand.  Upon information and belief, the facility knew the abuse was taking place. Plaintiff recalls multiple staff

members in his cottage ignoring Plaintiff's grievances and ensuring the complaints did not make it to supervisors.

iv.      Out of fear of retaliation, punishment, extended confinement, and further abuse, Plaintiff did not report—or was unable to meaningfully report—the sexual misconduct, knowing and believing that any complaints would be unanswered, dismissed, ignored, and buried without investigation or redress, thereby allowing the sexual misconduct to continue unabated. Plaintiff was systematically and repeatedly sexually abused in what was supposed to be a "safe haven" environment—an environment exclusively created, funded, staffed, maintained, and controlled by DEFENDANTS, and each of them. DEFENDANTS had a mandatory, non-delegable duty to protect this child from the very harm they facilitated, enabled, and concealed.

v.      As a direct and proximate result of the sexual abuse perpetrated against him, Plaintiff has suffered and continues to suffer severe, ongoing, and persistent mental, emotional, psychological, and physical injuries, including, but not limited to: anxiety; depression; feelings of helplessness and hopelessness; insomnia and sleep disturbances including nightmares; questioning of sexual identity; profoundly lowered self-esteem; moodiness and emotional dysregulation; difficulty forming and maintaining meaningful interpersonal and intimate relationships; pervasive loss of trust and control issues with persons in positions of authority; flashbacks, intrusive thoughts, and hypervigilance; chronic stress; nervousness; fear; deep embarrassment and shame; and a devastating loss of enjoyment of life, among other injuries.

K.    **John Doe 330706:**

i.      Plaintiff John Doe 330706 is a male, born on October 15, 1989, who was sexually abused at just 15 years old, in or around 2004, while confined within the Nevada Juvenile Justice System at the Caliente Youth Center ("CYC") in Caliente, Nevada. At the time of the abuse, Plaintiff was a minor child entrusted to the custody, care, and supervision of the State of Nevada and its agents, employees, and contractors.

COMPLAINT

ii.       Plaintiff was committed to mandatory physical confinement at the Caliente Youth Center ("CYC") in Caliente, Nevada, where he was placed under the complete custody, dominion, and control of Defendants and DOES 1-500. These Defendants held positions of extraordinary power, trust, and authority over Plaintiff—a vulnerable, confined child with no ability to leave, resist, or seek outside help. Defendants exploited this absolute power imbalance to sexually abuse and harass Plaintiff under color of authority on behalf of DEFENDANTS, and each of them.

iii.       While Plaintiff was confined, he was subjected to egregious and predatory sexual abuse on at least 3 separate occasions. Prior to the first instance of abuse, the Plaintiff recalls becoming friendly with another resident, Tyler. The Plaintiff states that Abuser 1 would target Tyler, and he disclosed the physical and sexual abuse he endured to the Plaintiff and another resident, Brandon. The Plaintiff recalls Tyler warning him and Brandon, stating that Abuser 1 pulled him out of a classroom and choked him for no apparent reason.  The Plaintiff was escorted to a room within cottage C by Abuser 1 and was instructed to remove all his clothing. Abuser 1 closed and locked the door while the Plaintiff pleaded to be let out of the room. Abuser 1 told the Plaintiff, "You'll be able to leave when you stop yelling." After a significant time, the Plaintiff was given his clothing back and was allowed to leave. After some time, the Plaintiff was escorted to this same room again by Abuser 1 and was instructed to remove his bottoms. The Plaintiff states Abuser 1 stared at his genitals as he stood there. The following two times the Plaintiff went to this room, he was escorted with Tyler and Brandon. Abuser 1 began sexually abusing Tyler and then instructed the Plaintiff and Brandon to perform oral copulation on him. The Plaintiff and Brandon complied, taking turns performing oral copulation, until Abuser 1 ejaculated in their mouths. The Plaintiff believes he was targeted by Abuser 1 due to his friendship with Tyler. A second Abuser found  Plaintiff in the woodshop and was pulled to the side by the computers by Abuser 2. The Plaintiff states Abuser 2 reached into his bottoms and aggressively squeezed his genitals, to inflict pain. The Plaintiff recalls

COMPLAINT

another resident, Martinez, being sexually abused by Abuser 2 during walks in the nearby mountain area. Plaintiff was threatened that they can increase the length of his sentence.

iv.     Out of fear of retaliation, punishment, extended confinement, and further abuse, Plaintiff did not report—or was unable to meaningfully report—the sexual misconduct, knowing and believing that any complaints would be unanswered, dismissed, ignored, and buried without investigation or redress, thereby allowing the sexual misconduct to continue unabated. Plaintiff was systematically and repeatedly sexually abused in what was supposed to be a "safe haven" environment—an environment exclusively created, funded, staffed, maintained, and controlled by DEFENDANTS, and each of them. DEFENDANTS had a mandatory, non-delegable duty to protect this child from the very harm they facilitated, enabled, and concealed.

v.     As a direct and proximate result of the sexual abuse perpetrated against him, Plaintiff has suffered and continues to suffer severe, ongoing, and persistent mental, emotional, psychological, and physical injuries, including, but not limited to: anxiety; depression; feelings of helplessness and hopelessness; insomnia and sleep disturbances including nightmares; questioning of sexual identity; profoundly lowered self-esteem; moodiness and emotional dysregulation; difficulty forming and maintaining meaningful interpersonal and intimate relationships; pervasive loss of trust and control issues with persons in positions of authority; flashbacks, intrusive thoughts, and hypervigilance; chronic stress; nervousness; fear; deep embarrassment and shame; and a devastating loss of enjoyment of life, among other injuries.

L.     **Jane Doe 330902:**

i.     Plaintiff Jane Doe 330902 is a female, born on November 20, 1988, who was sexually abused at just 16 years old, in or around 2005-2006, while confined within the Nevada Juvenile Justice System at the Caliente Youth Center ("CYC") in Caliente, Nevada. At the time of the abuse, Plaintiff was a minor child entrusted to the custody, care, and supervision of the State of Nevada and its agents, employees, and contractors.

COMPLAINT

ii.    Plaintiff was committed to mandatory physical confinement at the Caliente Youth Center ("CYC") in Caliente, Nevada, where she was placed under the complete custody, dominion, and control of Defendants and DOES 1-500. These Defendants held positions of extraordinary power, trust, and authority over Plaintiff—a vulnerable, confined child with no ability to leave, resist, or seek outside help. Defendants exploited this absolute power imbalance to sexually abuse and harass Plaintiff under color of authority on behalf of DEFENDANTS, and each of them.

iii.    While Plaintiff was confined she was subjected to egregious and predatory sexual abuse on at least 5 separate occasions.  Abuser would send Plaintiff back to her room during recreation or exercise time. Abuser would follow Plaintiff to her cell then proceed to grope Plaintiff's breasts while forcing her to grope his genitals. The groping would begin over the clothing then Abuser would progress to underneath the clothing. On one occasion, Abuser forced his hands into Plaintiff's pants and digitally penetrated Plaintiff's vagina. During every occasion of abuse, Abuser would force Plaintiff to perform oral copulation on him until ejaculation occurred and would perform oral copulation on Plaintiff. Abuser would force Plaintiff to ingest the seminal fluid. Plaintiff recalls Abuser on one occasion choking her with hands around throat while he spoke vulgarly to her. On two occasions, Abuser raped Plaintiff, vaginally penetrating her with his penis and did not wear a condom on either occasion. One of the instances of rape occurred in the bathroom of Plaintiff's room, at which time Abuser forced Plaintiff to shower after penetration occurred out of fear that he had ejaculated inside of Plaintiff. Abuser wore gloves on the first two occasions of abuse along with the final occasion. Abuser told Plaintiff that no one would believe her due to her history of behavioral issues. Abuser choked Plaintiff with his hands around her throat on one occasion. The abuser further exploited Plaintiff by offering inducements: Abuser offered Plaintiff cigarettes, extra phone calls, and additional visiting time.

iv.    Out of fear of retaliation, punishment, extended confinement, and further abuse, Plaintiff did not report—or was unable to meaningfully report—the sexual

COMPLAINT

misconduct, knowing and believing that any complaints would be unanswered, dismissed, ignored, and buried without investigation or redress, thereby allowing the sexual misconduct to continue unabated. Plaintiff was systematically and repeatedly sexually abused in what was supposed to be a "safe haven" environment—an environment exclusively created, funded, staffed, maintained, and controlled by DEFENDANTS, and each of them. DEFENDANTS had a mandatory, non-delegable duty to protect this child from the very harm they facilitated, enabled, and concealed.

v.      As a direct and proximate result of the sexual abuse perpetrated against her, Plaintiff has suffered and continues to suffer severe, ongoing, and persistent mental, emotional, psychological, and physical injuries, including, but not limited to: anxiety; depression; feelings of helplessness and hopelessness; insomnia and sleep disturbances including nightmares; questioning of sexual identity; profoundly lowered self-esteem; moodiness and emotional dysregulation; difficulty forming and maintaining meaningful interpersonal and intimate relationships; pervasive loss of trust and control issues with persons in positions of authority; flashbacks, intrusive thoughts, and hypervigilance; chronic stress; nervousness; fear; deep embarrassment and shame; and a devastating loss of enjoyment of life, among other injuries.

M.      **John Doe 323978:**

i.      Plaintiff John Doe 323978 is a male, born on December 07, 1988, who was sexually abused at just 16 years old, in or around 2004, while confined within the Nevada Juvenile Justice System at the Nevada Youth Training Center ("NYTC") in Elko, Nevada. At the time of the abuse, Plaintiff was a minor child entrusted to the custody, care, and supervision of the State of Nevada and its agents, employees, and contractors.

ii.      Plaintiff was committed to mandatory physical confinement at the Nevada Youth Training Center ("NYTC") in Elko, Nevada, where he was placed under the complete custody, dominion, and control of Defendants and DOES 1-500. These Defendants held positions of extraordinary power, trust, and authority over Plaintiff—a vulnerable, confined child with no ability to leave, resist, or seek outside help. Defendants

exploited this absolute power imbalance to sexually abuse and harass Plaintiff under color of authority on behalf of DEFENDANTS, and each of them.

iii.    While Plaintiff was confined he was subjected to egregious and predatory sexual abuse on at least 3 occasions.  While he was sleeping in his bed, he was woken up to Abuser masturbating him underneath his clothing and without gloves to the point of ejaculation.  Plaintiff reported that this always happened in the middle of the night during shift change. Abuser threatened to take away Plaintiff's home passes and to extend his time at the facility if he told anyone. Abuser attempted to bribe Plaintiff by telling him that he could come on fun trips, like facility camping/fishing trips. Plaintiff rejected this because Abuser told Plaintiff that he wanted to perform oral copulation on Plaintiff while on these trips.  Abuser restrained Plaintiff against the bed.  Abuser threatened to extend Plaintiff's time at the facility and to withhold Plaintiff's home visits if he reported the abuse.

iv.    Out of fear of retaliation, punishment, extended confinement, and further abuse, Plaintiff did not report—or was unable to meaningfully report—the sexual misconduct, knowing and believing that any complaints would be unanswered, dismissed, ignored, and buried without investigation or redress, thereby allowing the sexual misconduct to continue unabated. Plaintiff was systematically and repeatedly sexually abused in what was supposed to be a "safe haven" environment—an environment exclusively created, funded, staffed, maintained, and controlled by DEFENDANTS, and each of them. DEFENDANTS had a mandatory, non-delegable duty to protect this child from the very harm they facilitated, enabled, and concealed.

v.    As a direct and proximate result of the sexual abuse perpetrated against him, Plaintiff has suffered and continues to suffer severe, ongoing, and persistent mental, emotional, psychological, and physical injuries, including, but not limited to: anxiety; depression; feelings of helplessness and hopelessness; insomnia and sleep disturbances including nightmares; questioning of sexual identity; profoundly lowered self-esteem; moodiness and emotional dysregulation; difficulty forming and maintaining meaningful

COMPLAINT

interpersonal and intimate relationships; pervasive loss of trust and control issues with persons in positions of authority; flashbacks, intrusive thoughts, and hypervigilance; chronic stress; nervousness; fear; deep embarrassment and shame; and a devastating loss of enjoyment of life, among other injuries.

N.    **John Doe 330768:**

i.    Plaintiff John Doe 330768 is a male, born on May 11, 1997, who was sexually abused between the ages of 15 and 16, in or around 2012, while confined within the Nevada Juvenile Justice System at the Caliente Youth Center ("CYC") in Caliente, Nevada. At the time of the abuse, Plaintiff was a minor child entrusted to the custody, care, and supervision of the State of Nevada and its agents, employees, and contractors.

ii.    Plaintiff was committed to mandatory physical confinement at the Caliente Youth Center ("CYC") in Caliente, Nevada, where he was placed under the complete custody, dominion, and control of Defendants and DOES 1-500. These Defendants held positions of extraordinary power, trust, and authority over Plaintiff—a vulnerable, confined child with no ability to leave, resist, or seek outside help. Defendants exploited this absolute power imbalance to sexually abuse and harass Plaintiff under color of authority on behalf of DEFENDANTS, and each of them.

iii.    While Plaintiff was confined, he was subjected to egregious and predatory sexual abuse on at least 4 separate occasions.  The Plaintiff encountered the abuser in his assigned housing unit which was the Hamilton Cottage. While in line with other inmates for the restroom/shower, the abuser exposed his genitals and forced the Plaintiff to masturbate him. The Abuser also exposed his genitals and rubbed them on the Plaintiff's backside while waiting in line when the inmates were being moved. He was threatened with physical harm if he were to say anything about the abuse or if he were to become non-compliant.

iv.    Out of fear of retaliation, punishment, extended confinement, and further abuse, Plaintiff did not report—or was unable to meaningfully report—the sexual misconduct, knowing and believing that any complaints would be unanswered, dismissed,

ignored, and buried without investigation or redress, thereby allowing the sexual misconduct to continue unabated. Plaintiff was systematically and repeatedly sexually abused in what was supposed to be a "safe haven" environment—an environment exclusively created, funded, staffed, maintained, and controlled by DEFENDANTS, and each of them. DEFENDANTS had a mandatory, non-delegable duty to protect this child from the very harm they facilitated, enabled, and concealed.

v.    As a direct and proximate result of the sexual abuse perpetrated against him, Plaintiff has suffered and continues to suffer severe, ongoing, and persistent mental, emotional, psychological, and physical injuries, including, but not limited to: anxiety; depression; feelings of helplessness and hopelessness; insomnia and sleep disturbances including nightmares; questioning of sexual identity; profoundly lowered self-esteem; moodiness and emotional dysregulation; difficulty forming and maintaining meaningful interpersonal and intimate relationships; pervasive loss of trust and control issues with persons in positions of authority; flashbacks, intrusive thoughts, and hypervigilance; chronic stress; nervousness; fear; deep embarrassment and shame; and a devastating loss of enjoyment of life, among other injuries.

O.    **John Doe 330025:**

i.    Plaintiff John Doe 330025 is a male, born on August 23, 1992, who was sexually abused at just 16 years old, in or around 2007-2008, while confined within the Nevada Juvenile Justice System at the Nevada Youth Training Center ("NYTC") in Elko, Nevada. At the time of the abuse, Plaintiff was a minor child entrusted to the custody, care, and supervision of the State of Nevada and its agents, employees, and contractors.

ii.    Plaintiff was committed to mandatory physical confinement at the Nevada Youth Training Center ("NYTC") in Elko, Nevada, where he was placed under the complete custody, dominion, and control of Defendants and DOES 1-500. These Defendants held positions of extraordinary power, trust, and authority over Plaintiff—a vulnerable, confined child with no ability to leave, resist, or seek outside help. Defendants

exploited this absolute power imbalance to sexually abuse and harass Plaintiff under color of authority on behalf of DEFENDANTS, and each of them.

iii.    While Plaintiff was confined he was subjected to egregious and predatory sexual abuse about 4-5 times. Plaintiff would volunteer to clean the classrooms to get extra privileges and would be supervised by MISS BERNSTEIN. There were approximately 4-5 instances when he would be cleaning the classroom, and MISS BERNSTEIN would make him perform oral sex on her, and she would perform oral sex on him. The first two times, she physically removed his clothing, and performed oral sex on him first, and then forced him to perform oral sex on her without gloves or a condom. The last few times, he would perform oral sex on her first, then she would perform oral sex on him, without gloves or a condom. Plaintiff would be naked, and MISS BERNSTEIN would have all of her clothes removed, besides her underwear, which she would move to the side when he performed oral sex on her. While Plaintiff would perform oral sex on her, he would digitally penetrate her with his fingers and grab her bare breasts. Plaintiff would ejaculate every time, and he is unsure if MISS BERNSTEIN orgasmed. Plaintiff expressed that when the abuse first happened, MISS BERNSTEIN told him not to tell anyone or he would lose his "title" and freedom of movement. The abuser further exploited Plaintiff by offering inducements where Plaintiff would receive more snacks and treats from MISS BERNSTEIN.

iv.    Out of fear of retaliation, punishment, extended confinement, and further abuse, Plaintiff did not report—or was unable to meaningfully report—the sexual misconduct, knowing and believing that any complaints would be unanswered, dismissed, ignored, and buried without investigation or redress, thereby allowing the sexual misconduct to continue unabated. Plaintiff was systematically and repeatedly sexually abused in what was supposed to be a "safe haven" environment—an environment exclusively created, funded, staffed, maintained, and controlled by DEFENDANTS, and each of them. DEFENDANTS had a mandatory, non-delegable duty to protect this child from the very harm they facilitated, enabled, and concealed.

43

COMPLAINT

v.      As a direct and proximate result of the sexual abuse perpetrated against him, Plaintiff has suffered and continues to suffer severe, ongoing, and persistent mental, emotional, psychological, and physical injuries, including, but not limited to: anxiety; depression; feelings of helplessness and hopelessness; insomnia and sleep disturbances including nightmares; questioning of sexual identity; profoundly lowered self-esteem; moodiness and emotional dysregulation; difficulty forming and maintaining meaningful interpersonal and intimate relationships; pervasive loss of trust and control issues with persons in positions of authority; flashbacks, intrusive thoughts, and hypervigilance; chronic stress; nervousness; fear; deep embarrassment and shame; and a devastating loss of enjoyment of life, among other injuries.

P.      **Jane Doe 330772:**

i.      Plaintiff Jane Doe 330772 is a female, born on September 06, 2001, who was sexually abused between the ages of 16 and 17, in or around 2017-2018, while confined within the Nevada Juvenile Justice System at the Caliente Youth Center ("CYC") in Caliente, Nevada. At the time of the abuse, Plaintiff was a minor child entrusted to the custody, care, and supervision of the State of Nevada and its agents, employees, and contractors.

ii.      Plaintiff was committed to mandatory physical confinement at the Caliente Youth Center ("CYC") in Caliente, Nevada, where she was placed under the complete custody, dominion, and control of Defendants and DOES 1-500. These Defendants held positions of extraordinary power, trust, and authority over Plaintiff—a vulnerable, confined child with no ability to leave, resist, or seek outside help. Defendants exploited this absolute power imbalance to sexually abuse and harass Plaintiff under color of authority on behalf of DEFENDANTS, and each of them.

iii.      While Plaintiff was confined, she was subjected to egregious and predatory sexual abuse two occasions. Plaintiff expressed that the abuser forced Plaintiff to perform oral copulation onto the abuser in the bathroom. The abuser would "smack" Plaintiff's buttocks and "flicked" Plaintiff's nipples. She was threatened to be kept longer at the

COMPLAINT

facility and was further exploited where the abuser offered Plaintiff soaps, lotion, and candy bars.

iv.     Out of fear of retaliation, punishment, extended confinement, and further abuse, Plaintiff did not report—or was unable to meaningfully report—the sexual misconduct, knowing and believing that any complaints would be unanswered, dismissed, ignored, and buried without investigation or redress, thereby allowing the sexual misconduct to continue unabated. Plaintiff was systematically and repeatedly sexually abused in what was supposed to be a "safe haven" environment—an environment exclusively created, funded, staffed, maintained, and controlled by DEFENDANTS, and each of them. DEFENDANTS had a mandatory, non-delegable duty to protect this child from the very harm they facilitated, enabled, and concealed.

v.     As a direct and proximate result of the sexual abuse perpetrated against her, Plaintiff has suffered and continues to suffer severe, ongoing, and persistent mental, emotional, psychological, and physical injuries, including, but not limited to: anxiety; depression; feelings of helplessness and hopelessness; insomnia and sleep disturbances including nightmares; questioning of sexual identity; profoundly lowered self-esteem; moodiness and emotional dysregulation; difficulty forming and maintaining meaningful interpersonal and intimate relationships; pervasive loss of trust and control issues with persons in positions of authority; flashbacks, intrusive thoughts, and hypervigilance; chronic stress; nervousness; fear; deep embarrassment and shame; and a devastating loss of enjoyment of life, among other injuries.

Q.     **John Doe 330545:**

i.     Plaintiff John Doe 330545 is a male, born on May 15, 2003, who was sexually abused at just 17 years old, in or around 2021, while confined within the Nevada Juvenile Justice System at the Nevada Youth Training Center ("NYTC") in Elko, Nevada. At the time of the abuse, Plaintiff was a minor child entrusted to the custody, care, and supervision of the State of Nevada and its agents, employees, and contractors.

COMPLAINT

ii.    Plaintiff was committed to mandatory physical confinement at the Nevada Youth Training Center ("NYTC") in Elko, Nevada, where he was placed under the complete custody, dominion, and control of Defendants and DOES 1-500. These Defendants held positions of extraordinary power, trust, and authority over Plaintiff—a vulnerable, confined child with no ability to leave, resist, or seek outside help. Defendants exploited this absolute power imbalance to sexually abuse and harass Plaintiff under color of authority on behalf of DEFENDANTS, and each of them.

iii.    While Plaintiff was confined he was subjected to egregious and predatory sexual abuse on at least one occasion. Plaintiff was sleeping in the "Pioneer" cottage when MR. NICHOLSON entered. Plaintiff was only wearing underwear when MR. NICHOLSON got on the bed and reached inside them and grabbed Plaintiff's penis. Plaintiff was half asleep and jumped up, and MR. NICHOLSON laughed and left. Throughout the remainder of the stay there, MR. NICHOLSON would make sexual remarks to Plaintiff.

iv.    Out of fear of retaliation, punishment, extended confinement, and further abuse, Plaintiff did not report—or was unable to meaningfully report—the sexual misconduct, knowing and believing that any complaints would be unanswered, dismissed, ignored, and buried without investigation or redress, thereby allowing the sexual misconduct to continue unabated. Plaintiff was systematically and repeatedly sexually abused in what was supposed to be a "safe haven" environment—an environment exclusively created, funded, staffed, maintained, and controlled by DEFENDANTS, and each of them. DEFENDANTS had a mandatory, non-delegable duty to protect this child from the very harm they facilitated, enabled, and concealed.

v.    As a direct and proximate result of the sexual abuse perpetrated against him, Plaintiff has suffered and continues to suffer severe, ongoing, and persistent mental, emotional, psychological, and physical injuries, including, but not limited to: anxiety; depression; feelings of helplessness and hopelessness; insomnia and sleep disturbances including nightmares; questioning of sexual identity; profoundly lowered self-esteem;

COMPLAINT

moodiness and emotional dysregulation; difficulty forming and maintaining meaningful interpersonal and intimate relationships; pervasive loss of trust and control issues with persons in positions of authority; flashbacks, intrusive thoughts, and hypervigilance; chronic stress; nervousness; fear; deep embarrassment and shame; and a devastating loss of enjoyment of life, among other injuries.

R.   **John Doe 327576:**

i.      Plaintiff John Doe 327576 is a male, born on November 10, 1988, who was sexually abused between the ages of 14 and 15, in or around 2002-2003, while confined within the Nevada Juvenile Justice System at the China Spring Youth Camp in Gardnerville, Nevada. At the time of the abuse, Plaintiff was a minor child entrusted to the custody, care, and supervision of the State of Nevada and its agents, employees, and contractors.

ii.      Plaintiff was committed to mandatory physical confinement at the China Spring Youth Camp in Gardnerville, Nevada, where he was placed under the complete custody, dominion, and control of Defendants and DOES 1-500. These Defendants held positions of extraordinary power, trust, and authority over Plaintiff—a vulnerable, confined child with no ability to leave, resist, or seek outside help. Defendants exploited this absolute power imbalance to sexually abuse and harass Plaintiff under color of authority on behalf of DEFENDANTS, and each of them.

iii.      While Plaintiff was confined he was subjected to egregious and predatory sexual abuse on at least 20+.  On multiple occasions, Plaintiff would be strip-searched by MR. HOSS as a punishment, in the bathroom. During strip searches, MR. HOSS would grope and fondle Plaintiff's penis for 30 seconds. MR. HOSS also groped Plaintiff's buttocks. MR. HOSS would say to the Plaintiff, "Your d*** is little," or "it looks like a hot dog." This sexual assault happened in the same manner and location at least 20 times. If Plaintiff did not comply with strip searches, then Plaintiff would be physically abused.

iv.      Out of fear of retaliation, punishment, extended confinement, and further abuse, Plaintiff did not report—or was unable to meaningfully report—the sexual

47

COMPLAINT

misconduct, knowing and believing that any complaints would be unanswered, dismissed, ignored, and buried without investigation or redress, thereby allowing the sexual misconduct to continue unabated. Plaintiff was systematically and repeatedly sexually abused in what was supposed to be a "safe haven" environment—an environment exclusively created, funded, staffed, maintained, and controlled by DEFENDANTS, and each of them. DEFENDANTS had a mandatory, non-delegable duty to protect this child from the very harm they facilitated, enabled, and concealed.

v.      As a direct and proximate result of the sexual abuse perpetrated against him, Plaintiff has suffered and continues to suffer severe, ongoing, and persistent mental, emotional, psychological, and physical injuries, including, but not limited to: anxiety; depression; feelings of helplessness and hopelessness; insomnia and sleep disturbances including nightmares; questioning of sexual identity; profoundly lowered self-esteem; moodiness and emotional dysregulation; difficulty forming and maintaining meaningful interpersonal and intimate relationships; pervasive loss of trust and control issues with persons in positions of authority; flashbacks, intrusive thoughts, and hypervigilance; chronic stress; nervousness; fear; deep embarrassment and shame; and a devastating loss of enjoyment of life, among other injuries.

S.      **John Doe 325951:**

i.      Plaintiff John Doe 325951 is a male, born on December 24, 1994, who was sexually abused between the ages of 15 and 17, in or around 2010-2011, while confined within the Nevada Juvenile Justice System at the Nevada Youth Training Center ("NYTC") in Elko, Nevada. At the time of the abuse, Plaintiff was a minor child entrusted to the custody, care, and supervision of the State of Nevada and its agents, employees, and contractors.

ii.      Plaintiff was committed to mandatory physical confinement at the Nevada Youth Training Center ("NYTC") in Elko, Nevada, where he was placed under the complete custody, dominion, and control of Defendants and DOES 1-500. These Defendants held positions of extraordinary power, trust, and authority over Plaintiff—a

vulnerable, confined child with no ability to leave, resist, or seek outside help. Defendants exploited this absolute power imbalance to sexually abuse and harass Plaintiff under color of authority on behalf of DEFENDANTS, and each of them.

iii.     While Plaintiff was confined he was subjected to egregious and predatory sexual abuse on at least 10 occasions. Plaintiff was in the Forrester cottage, which is where Plaintiff's dorm is. MS. NELSON would take Plaintiff to the utility closet and asked Plaintiff to get undressed and would fondle Plaintiff's penis until he was erect. MS. NELSON would perform oral copulation on Plaintiff's penis. MS. NELSON would take off her shirt and force Plaintiff to fondle her breasts. MS. NELSON would also force Plaintiff to put his hand inside MS. NELSON'S pants and touch her vagina. Plaintiff would get in trouble because he was unable to climax when she tried. MS. NELSON threatened Plaintiff with new charges if Plaintiff ever told anyone. This abuse happened in the same location and manner on over 10 occasions.

iv.     Out of fear of retaliation, punishment, extended confinement, and further abuse, Plaintiff did not report—or was unable to meaningfully report—the sexual misconduct, knowing and believing that any complaints would be unanswered, dismissed, ignored, and buried without investigation or redress, thereby allowing the sexual misconduct to continue unabated. Plaintiff was systematically and repeatedly sexually abused in what was supposed to be a "safe haven" environment—an environment exclusively created, funded, staffed, maintained, and controlled by DEFENDANTS, and each of them. DEFENDANTS had a mandatory, non-delegable duty to protect this child from the very harm they facilitated, enabled, and concealed.

v.      As a direct and proximate result of the sexual abuse perpetrated against him, Plaintiff has suffered and continues to suffer severe, ongoing, and persistent mental, emotional, psychological, and physical injuries, including, but not limited to: anxiety; depression; feelings of helplessness and hopelessness; insomnia and sleep disturbances including nightmares; questioning of sexual identity; profoundly lowered self-esteem; moodiness and emotional dysregulation; difficulty forming and maintaining meaningful

interpersonal and intimate relationships; pervasive loss of trust and control issues with persons in positions of authority; flashbacks, intrusive thoughts, and hypervigilance; chronic stress; nervousness; fear; deep embarrassment and shame; and a devastating loss of enjoyment of life, among other injuries.

Plaintiff has been diagnosed with one or more mental or emotional disorders as a direct result of the sexual abuse suffered at the hands of DEFENDANTS and their agents.

T.   **John Doe 330539:**

i.   Plaintiff John Doe 330539 is a male, born on November 07, 1998, who was sexually abused at just 14 years old, in or around 2014, while confined within the Nevada Juvenile Justice System at the Caliente Youth Center ("CYC") in Caliente, Nevada. At the time of the abuse, Plaintiff was a minor child entrusted to the custody, care, and supervision of the State of Nevada and its agents, employees, and contractors.

ii.   Plaintiff was committed to mandatory physical confinement at the Caliente Youth Center ("CYC") in Caliente, Nevada, where he was placed under the complete custody, dominion, and control of Defendants and DOES 1-500. These Defendants held positions of extraordinary power, trust, and authority over Plaintiff—a vulnerable, confined child with no ability to leave, resist, or seek outside help. Defendants exploited this absolute power imbalance to sexually abuse and harass Plaintiff under color of authority on behalf of DEFENDANTS, and each of them.

iii.   While Plaintiff was confined he was subjected to egregious and predatory sexual abuse on at least 2 separate occasions. Plaintiff was in his cell when Mr. A came in and got on top of him. Mr. A then grabbed Plaintiff's penis outside of his boxers, and Plaintiff pushed him off. After he pushed him off, Mr. A said that he needed to do a search and left Plaintiff's cell. Following, Mr. A went to Plaintiff's cell and told him he needed to do a strip search. He commanded Plaintiff to squat and cough, and told him to spread open his buttocks. Plaintiff refused to spread, and when he refused, Mr. A spread his buttocks himself, told Plaintiff to cough, and then Plaintiff coughed. Neither Plaintiff nor Mr. A said anything, and Mr. A left his cell.

COMPLAINT

iv.    Out of fear of retaliation, punishment, extended confinement, and further abuse, Plaintiff did not report—or was unable to meaningfully report—the sexual misconduct, knowing and believing that any complaints would be unanswered, dismissed, ignored, and buried without investigation or redress, thereby allowing the sexual misconduct to continue unabated. Plaintiff was systematically and repeatedly sexually abused in what was supposed to be a "safe haven" environment—an environment exclusively created, funded, staffed, maintained, and controlled by DEFENDANTS, and each of them. DEFENDANTS had a mandatory, non-delegable duty to protect this child from the very harm they facilitated, enabled, and concealed.

v.    As a direct and proximate result of the sexual abuse perpetrated against him, Plaintiff has suffered and continues to suffer severe, ongoing, and persistent mental, emotional, psychological, and physical injuries, including, but not limited to: anxiety; depression; feelings of helplessness and hopelessness; insomnia and sleep disturbances including nightmares; questioning of sexual identity; profoundly lowered self-esteem; moodiness and emotional dysregulation; difficulty forming and maintaining meaningful interpersonal and intimate relationships; pervasive loss of trust and control issues with persons in positions of authority; flashbacks, intrusive thoughts, and hypervigilance; chronic stress; nervousness; fear; deep embarrassment and shame; and a devastating loss of enjoyment of life, among other injuries.

U.    **Jane Doe 330903:**

i.    Plaintiff Jane Doe 330903 is a female, born on May 25, 1992, who was sexually abused at just 13 years old, in or around 2005, while confined within the Nevada Juvenile Justice System at the Caliente Youth Center ("CYC") in Caliente, Nevada. At the time of the abuse, Plaintiff was a minor child entrusted to the custody, care, and supervision of the State of Nevada and its agents, employees, and contractors.

ii.    Plaintiff was committed to mandatory physical confinement at the Caliente Youth Center ("CYC") in Caliente, Nevada, where she was placed under the complete custody, dominion, and control of Defendants and DOES 1-500. These Defendants held

positions of extraordinary power, trust, and authority over Plaintiff—a vulnerable, confined child with no ability to leave, resist, or seek outside help. Defendants exploited this absolute power imbalance to sexually abuse and harass Plaintiff under color of authority on behalf of DEFENDANTS, and each of them.

iii.     While Plaintiff was confined she was subjected to egregious and predatory sexual abuse on at least 10 separate occasions.  On multiple occasions, Abuser 1 would approach Plaintiff in her room and begin to kiss Plaintiff on the lips. Abuser 1 then started to grope Plaintiffs buttocks and breasts. The sexual abuse progressed to Abuser 1 sticking her hand down Plaintiffs pants and digitally penetrating Plaintiff without gloves on. At no point did Plaintiff orgasm during the sexual abuse. Abuser 1 threatened Plaintiff that if she told anyone about the sexual abuse she would make sure Plaintiff would not go home. Abuser 1 also bribed Plaintiff with more phone time in exchange for the sexual abuse.  On multiple different instances, when Plaintiff would get into trouble at the facility, Abuser 2 would restrain Plaintiff in handcuffs. Abuser 2 would make Plaintiff get up against the wall with her back towards the wall. Abuser 2 began to kiss Plaintiff on the lips. The sexual abuse progressed to Abuser 2 groping Plaintiff's buttocks, breasts, and vagina over Plaintiff's clothing. Abuser 2 would threaten Plaintiff that if she told anyone about the sexual abuse, he would keep her in the facility longer. Plaintiff was threatened that if she told anyone about the sexual abuse, Abuser 2 would make her stay at the facility longer.

iv.     Out of fear of retaliation, punishment, extended confinement, and further abuse, Plaintiff did not report—or was unable to meaningfully report—the sexual misconduct, knowing and believing that any complaints would be unanswered, dismissed, ignored, and buried without investigation or redress, thereby allowing the sexual misconduct to continue unabated. Plaintiff was systematically and repeatedly sexually abused in what was supposed to be a "safe haven" environment—an environment exclusively created, funded, staffed, maintained, and controlled by DEFENDANTS, and each of them. DEFENDANTS had a mandatory, non-delegable duty to protect this child from the very harm they facilitated, enabled, and concealed.

COMPLAINT

v.      As a direct and proximate result of the sexual abuse perpetrated against her, Plaintiff has suffered and continues to suffer severe, ongoing, and persistent mental, emotional, psychological, and physical injuries, including, but not limited to: anxiety; depression; feelings of helplessness and hopelessness; insomnia and sleep disturbances including nightmares; questioning of sexual identity; profoundly lowered self-esteem; moodiness and emotional dysregulation; difficulty forming and maintaining meaningful interpersonal and intimate relationships; pervasive loss of trust and control issues with persons in positions of authority; flashbacks, intrusive thoughts, and hypervigilance; chronic stress; nervousness; fear; deep embarrassment and shame; and a devastating loss of enjoyment of life, among other injuries.  Plaintiff has been diagnosed with one or more mental or emotional disorders as a direct result of the sexual abuse suffered at the hands of DEFENDANTS and their agents.

V.      **Jane Doe 330053:**

i.      Plaintiff Jane Doe 330053 is a female, born on November 21, 1996, who was sexually abused at just 14 years old, in or around 2011, while confined within the Nevada Juvenile Justice System at the Caliente Youth Center ("CYC") in Caliente, Nevada. At the time of the abuse, Plaintiff was a minor child entrusted to the custody, care, and supervision of the State of Nevada and its agents, employees, and contractors.

ii.      Plaintiff was committed to mandatory physical confinement at the Caliente Youth Center ("CYC") in Caliente, Nevada, where she was placed under the complete custody, dominion, and control of Defendants and DOES 1-500. These Defendants held positions of extraordinary power, trust, and authority over Plaintiff—a vulnerable, confined child with no ability to leave, resist, or seek outside help. Defendants exploited this absolute power imbalance to sexually abuse and harass Plaintiff under color of authority on behalf of DEFENDANTS, and each of them.

iii.      While Plaintiff was confined, she was subjected to egregious and predatory sexual abuse on multiple separate occasions. Abuser MR. TAYLOR escorted Plaintiff to "quiet room" while restraining her from behind. Abuser then would throw Plaintiff against

the wall, handcuff Plaintiff, and restrain Plaintiff with his body weight by laying on top of Plaintiff on the ground. Abuser would then grope Plaintiff's thighs, buttocks, breasts, and vagina over her clothing. The Abuser touched Plaintiff's breasts and vagina skin to skin on one occasion.

iv.     Out of fear of retaliation, punishment, extended confinement, and further abuse, Plaintiff did not report—or was unable to meaningfully report—the sexual misconduct, knowing and believing that any complaints would be unanswered, dismissed, ignored, and buried without investigation or redress, thereby allowing the sexual misconduct to continue unabated. Plaintiff was systematically and repeatedly sexually abused in what was supposed to be a "safe haven" environment—an environment exclusively created, funded, staffed, maintained, and controlled by DEFENDANTS, and each of them. DEFENDANTS had a mandatory, non-delegable duty to protect this child from the very harm they facilitated, enabled, and concealed.

v.     As a direct and proximate result of the sexual abuse perpetrated against her, Plaintiff has suffered and continues to suffer severe, ongoing, and persistent mental, emotional, psychological, and physical injuries, including, but not limited to: anxiety; depression; feelings of helplessness and hopelessness; insomnia and sleep disturbances including nightmares; questioning of sexual identity; profoundly lowered self-esteem; moodiness and emotional dysregulation; difficulty forming and maintaining meaningful interpersonal and intimate relationships; pervasive loss of trust and control issues with persons in positions of authority; flashbacks, intrusive thoughts, and hypervigilance; chronic stress; nervousness; fear; deep embarrassment and shame; and a devastating loss of enjoyment of life, among other injuries.

W.     **John Doe 329644:**

i.     Plaintiff John Doe 329644 is a male, born on October 02, 2007, who was sexually abused at just 17 years old, in or around the entire 7 months he was there, while confined within the Nevada Juvenile Justice System at the Nevada Youth Training Center ("NYTC") in Elko, Nevada. At the time of the abuse, Plaintiff was a minor child entrusted

to the custody, care, and supervision of the State of Nevada and its agents, employees, and contractors.

ii.     Plaintiff was committed to mandatory physical confinement at the Nevada Youth Training Center ("NYTC") in Elko, Nevada, where he was placed under the complete custody, dominion, and control of Defendants and DOES 1-500. These Defendants held positions of extraordinary power, trust, and authority over Plaintiff—a vulnerable, confined child with no ability to leave, resist, or seek outside help. Defendants exploited this absolute power imbalance to sexually abuse and harass Plaintiff under color of authority on behalf of DEFENDANTS, and each of them.

iii.    While Plaintiff was confined he was subjected to egregious and predatory sexual abuse on at least 3 times. Abuser 1 came into Men's restroom and came up behind the Plaintiff and grabbed his penis and groped him for about a minute with no gloves. Abuser 2 was bringing Plaintiff to the nurses office, and rubbed his butt with his hand over the Plaintiff's buttock. Abuser 2 also, after the Plaintiff's shower, went over to the Plaintiff and grabbed his hand to pull his hand over to his pants and forced him to touch the Abuser's penis. The Plaintiff yelled, pulled away, and the abuser stopped.

iv.     Out of fear of retaliation, punishment, extended confinement, and further abuse, Plaintiff did not report—or was unable to meaningfully report—the sexual misconduct, knowing and believing that any complaints would be unanswered, dismissed, ignored, and buried without investigation or redress, thereby allowing the sexual misconduct to continue unabated. Plaintiff was systematically and repeatedly sexually abused in what was supposed to be a "safe haven" environment—an environment exclusively created, funded, staffed, maintained, and controlled by DEFENDANTS, and each of them. DEFENDANTS had a mandatory, non-delegable duty to protect this child from the very harm they facilitated, enabled, and concealed.

v.      As a direct and proximate result of the sexual abuse perpetrated against him, Plaintiff has suffered and continues to suffer severe, ongoing, and persistent mental, emotional, psychological, and physical injuries, including, but not limited to: anxiety;

COMPLAINT

depression; feelings of helplessness and hopelessness; insomnia and sleep disturbances including nightmares; questioning of sexual identity; profoundly lowered self-esteem; moodiness and emotional dysregulation; difficulty forming and maintaining meaningful interpersonal and intimate relationships; pervasive loss of trust and control issues with persons in positions of authority; flashbacks, intrusive thoughts, and hypervigilance; chronic stress; nervousness; fear; deep embarrassment and shame; and a devastating loss of enjoyment of life, among other injuries.

X.      **John Doe 330004:**

i.      Plaintiff John Doe 330004 is a male, born on December 07, 2000, who was sexually abused at just 14 years old, in or around 2014, while confined within the Nevada Juvenile Justice System at the Caliente Youth Center ("CYC") in Caliente, Nevada. At the time of the abuse, Plaintiff was a minor child entrusted to the custody, care, and supervision of the State of Nevada and its agents, employees, and contractors.

ii.     Plaintiff was committed to mandatory physical confinement at the Caliente Youth Center ("CYC") in Caliente, Nevada, where he was placed under the complete custody, dominion, and control of Defendants and DOES 1-500. These Defendants held positions of extraordinary power, trust, and authority over Plaintiff—a vulnerable, confined child with no ability to leave, resist, or seek outside help. Defendants exploited this absolute power imbalance to sexually abuse and harass Plaintiff under color of authority on behalf of DEFENDANTS, and each of them.

iii.    While Plaintiff was confined, he was subjected to egregious and predatory sexual abuse on several separate occasions.  On multiple occasions, Plaintiff was in his room in the Lincoln Cottage when MS. BEAR came into his room. Plaintiff had been segregated during the school day due to behavioral issues, so no other residents were in the cottage. MS. BEAR would rub Plaintiff's chest, then perform oral copulation on Plaintiff. MS. BEAR would provide Plaintiff with a condom, then force Plaintiff to vaginally penetrate her with his penis. Plaintiff ejaculated inside the condom on two of the

COMPLAINT

three occasions. Ms. Bear told Plaintiff not to tell anyone about what happened, as no one would believe him.

iv.     Out of fear of retaliation, punishment, extended confinement, and further abuse, Plaintiff did not report—or was unable to meaningfully report—the sexual misconduct, knowing and believing that any complaints would be unanswered, dismissed, ignored, and buried without investigation or redress, thereby allowing the sexual misconduct to continue unabated. Plaintiff was systematically and repeatedly sexually abused in what was supposed to be a "safe haven" environment—an environment exclusively created, funded, staffed, maintained, and controlled by DEFENDANTS, and each of them. DEFENDANTS had a mandatory, non-delegable duty to protect this child from the very harm they facilitated, enabled, and concealed.

v.     As a direct and proximate result of the sexual abuse perpetrated against him, Plaintiff has suffered and continues to suffer severe, ongoing, and persistent mental, emotional, psychological, and physical injuries, including, but not limited to: anxiety; depression; feelings of helplessness and hopelessness; insomnia and sleep disturbances including nightmares; questioning of sexual identity; profoundly lowered self-esteem; moodiness and emotional dysregulation; difficulty forming and maintaining meaningful interpersonal and intimate relationships; pervasive loss of trust and control issues with persons in positions of authority; flashbacks, intrusive thoughts, and hypervigilance; chronic stress; nervousness; fear; deep embarrassment and shame; and a devastating loss of enjoyment of life, among other injuries.

Y.     **Jane Doe 330783:**

i.     Plaintiff Jane Doe 330783 is a female, born on July 03, 1999, who was sexually abused at just 15 years old, in or around 2015, while confined within the Nevada Juvenile Justice System at the Caliente Youth Center ("CYC") in Caliente, Nevada. At the time of the abuse, Plaintiff was a minor child entrusted to the custody, care, and supervision of the State of Nevada and its agents, employees, and contractors.

COMPLAINT

ii.    Plaintiff was committed to mandatory physical confinement at the Caliente Youth Center ("CYC") in Caliente, Nevada, where she was placed under the complete custody, dominion, and control of Defendants and DOES 1-500. These Defendants held positions of extraordinary power, trust, and authority over Plaintiff, a vulnerable, confined child with no ability to leave, resist, or seek outside help. Defendants exploited this absolute power imbalance to sexually abuse and harass Plaintiff under color of authority on behalf of DEFENDANTS, and each of them.

iii.    While Plaintiff was confined, she was subjected to egregious and predatory sexual abuse on at least 24 separate occasions.   The plaintiff encountered the abuser in her assigned housing unit. The Plaintiff would be alone when the Abuser would approach her. She stated she was a quiet and timid girl and felt that was why the Abuser targeted her. The Abuser would expose his genitals and force her to perform oral copulation. This would occur 1x a week for 4 months of her incarceration. She was threatened with privileges being taken away.  A second abuser, OFFICER STEVENS, encountered her in the assigned housing unit. The Plaintiff was walking in line with the other inmates as they were being escorted to a different part of the facility. The Plaintiff walked slowly and was in the back of the line when she was approached by the Abuser. The Abuser began making comments about the Plaintiff's body. She then put her hand under the Plaintiff's shirt, stating her clothing was not sitting right and needed to be adjusted. She proceeded to fondle the Plaintiff's bare breast with an ungloved hand. This would occur every other week for 4 months of her incarceration. She too was threatened with privileges being taken away.

iv.    Out of fear of retaliation, punishment, extended confinement, and further abuse, Plaintiff did not report—or was unable to meaningfully report—the sexual misconduct, knowing and believing that any complaints would be unanswered, dismissed, ignored, and buried without investigation or redress, thereby allowing the sexual misconduct to continue unabated. Plaintiff was systematically and repeatedly sexually abused in what was supposed to be a "safe haven" environment—an environment

COMPLAINT

exclusively created, funded, staffed, maintained, and controlled by DEFENDANTS, and each of them. DEFENDANTS had a mandatory, non-delegable duty to protect this child from the very harm they facilitated, enabled, and concealed.

v.     As a direct and proximate result of the sexual abuse perpetrated against her, Plaintiff has suffered and continues to suffer severe, ongoing, and persistent mental, emotional, psychological, and physical injuries, including, but not limited to: anxiety; depression; feelings of helplessness and hopelessness; insomnia and sleep disturbances including nightmares; questioning of sexual identity; profoundly lowered self-esteem; moodiness and emotional dysregulation; difficulty forming and maintaining meaningful interpersonal and intimate relationships; pervasive loss of trust and control issues with persons in positions of authority; flashbacks, intrusive thoughts, and hypervigilance; chronic stress; nervousness; fear; deep embarrassment and shame; and a devastating loss of enjoyment of life, among other injuries.

Z.     **Jane Doe 330901:**

i.     Plaintiff Jane Doe 330901 is a female, born on July 19, 2000, who was sexually abused at just 17 years old, in or around 2017, while confined within the Nevada Juvenile Justice System at the Caliente Youth Center ("CYC") in Caliente, Nevada. At the time of the abuse, Plaintiff was a minor child entrusted to the custody, care, and supervision of the State of Nevada and its agents, employees, and contractors.

ii.     Plaintiff was committed to mandatory physical confinement at the Caliente Youth Center ("CYC") in Caliente, Nevada, where she was placed under the complete custody, dominion, and control of Defendants and DOES 1-500. These Defendants held positions of extraordinary power, trust, and authority over Plaintiff, a vulnerable, confined child with no ability to leave, resist, or seek outside help. Defendants exploited this absolute power imbalance to sexually abuse and harass Plaintiff under color of authority on behalf of DEFENDANTS, and each of them.

iii.     While Plaintiff was confined, she was subjected to egregious and predatory sexual abuse. Abuser would come into Plaintiff's cottage at night and force her to perform

59

COMPLAINT

oral copulation on him until he would ejaculate. Abuser would perform oral copulation on the plaintiff as well. Abuser threaten by extending her time or he would beat her up.

iv.      Out of fear of retaliation, punishment, extended confinement, and further abuse, Plaintiff did not report—or was unable to meaningfully report—the sexual misconduct, knowing and believing that any complaints would be unanswered, dismissed, ignored, and buried without investigation or redress, thereby allowing the sexual misconduct to continue unabated. Plaintiff was systematically and repeatedly sexually abused in what was supposed to be a "safe haven" environment—an environment exclusively created, funded, staffed, maintained, and controlled by DEFENDANTS, and each of them. DEFENDANTS had a mandatory, non-delegable duty to protect this child from the very harm they facilitated, enabled, and concealed.

v.      As a direct and proximate result of the sexual abuse perpetrated against her, Plaintiff has suffered and continues to suffer severe, ongoing, and persistent mental, emotional, psychological, and physical injuries, including, but not limited to: anxiety; depression; feelings of helplessness and hopelessness; insomnia and sleep disturbances including nightmares; questioning of sexual identity; profoundly lowered self-esteem; moodiness and emotional dysregulation; difficulty forming and maintaining meaningful interpersonal and intimate relationships; pervasive loss of trust and control issues with persons in positions of authority; flashbacks, intrusive thoughts, and hypervigilance; chronic stress; nervousness; fear; deep embarrassment and shame; and a devastating loss of enjoyment of life, among other injuries.

AA.   **John Doe 330336:**

i.      Plaintiff John Doe 330336 is a male, born on October 15, 1992, who was sexually abused starting at age 9 while confined within the Nevada Juvenile Justice System at the Clark County Juvenile Detention Center in Las Vegas, Nevada. At the time of the abuse, Plaintiff was a minor child entrusted to the custody, care, and supervision of the State of Nevada and its agents, employees, and contractors.

COMPLAINT

ii. Plaintiff was committed to mandatory physical confinement at the Clark County Juvenile Detention Center in Las Vegas, Nevada, where he was placed under the complete custody, dominion, and control of Defendants and DOES 1-500. These Defendants held positions of extraordinary power, trust, and authority over Plaintiff—a vulnerable, confined child with no ability to leave, resist, or seek outside help. Defendants exploited this absolute power imbalance to sexually abuse and harass Plaintiff under color of authority on behalf of DEFENDANTS, and each of them.

iii. While Plaintiff was confined he was subjected to egregious and predatory sexual abuse on at least 4-5 occasions.  Plaintiff recalled that the sexual abuse took place in the bathroom, and an unknown room that was isolated where the abuser would force Plaintiff to masturbate the abuser. The abuser then forced Plaintiff to perform oral copulation onto the abuser.  The Abuser also inserted the abuser's hand into Plaintiff's pants and groped Plaintiff's buttocks.  Plaintiff recalled that the abuser was going to hurt Plaintiff if Plaintiff reported the abuse.

iv. Out of fear of retaliation, punishment, extended confinement, and further abuse, Plaintiff did not report—or was unable to meaningfully report—the sexual misconduct, knowing and believing that any complaints would be unanswered, dismissed, ignored, and buried without investigation or redress, thereby allowing the sexual misconduct to continue unabated. Plaintiff was systematically and repeatedly sexually abused in what was supposed to be a "safe haven" environment—an environment exclusively created, funded, staffed, maintained, and controlled by DEFENDANTS, and each of them. DEFENDANTS had a mandatory, non-delegable duty to protect this child from the very harm they facilitated, enabled, and concealed.

v. As a direct and proximate result of the sexual abuse perpetrated against him, Plaintiff has suffered and continues to suffer severe, ongoing, and persistent mental, emotional, psychological, and physical injuries, including, but not limited to: anxiety; depression; feelings of helplessness and hopelessness; insomnia and sleep disturbances including nightmares; questioning of sexual identity; profoundly lowered self-esteem;

moodiness and emotional dysregulation; difficulty forming and maintaining meaningful interpersonal and intimate relationships; pervasive loss of trust and control issues with persons in positions of authority; flashbacks, intrusive thoughts, and hypervigilance; chronic stress; nervousness; fear; deep embarrassment and shame; and a devastating loss of enjoyment of life, among other injuries.

AB.     **John Doe 329172:**

i.        Plaintiff John Doe 329172 is a male, born on October 29, 1989, who was sexually abused at just Nevada Youth training age 13. At Summit View age was 16. years old, in or around Nevada Youth Training in 2002. Summit View abuse in 2005, while confined within the Nevada Juvenile Justice System at the Nevada Youth Training Center ("NYTC") in Elko, Nevada, and the Summit View Youth Center ("SVYC") in North Las Vegas, Nevada. At the time of the abuse, Plaintiff was a minor child entrusted to the custody, care, and supervision of the State of Nevada and its agents, employees, and contractors.

ii.       Plaintiff was committed to mandatory physical confinement at the Nevada Youth Training Center ("NYTC") in Elko, Nevada, and the Summit View Youth Center ("SVYC") in North Las Vegas, Nevada, where he was placed under the complete custody, dominion, and control of Defendants and DOES 1-500. These Defendants held positions of extraordinary power, trust, and authority over Plaintiff, a vulnerable, confined child with no ability to leave, resist, or seek outside help. Defendants exploited this absolute power imbalance to sexually abuse and harass Plaintiff under color of authority on behalf of DEFENDANTS, and each of them.

iii.      While Plaintiff was confined, he was subjected to egregious and predatory sexual abuse. Abuser 1 DONAHUE came by the Plaintiff's cell at night to do a count. Abuser 1 reached out and forcefully fondled and masturbated Plaintiff's penis. The Abuser then removed his own penis and began to masturbate himself. The Abuser threatened the Plaintiff not to disclose, or he would make his stay there, 'hell.' Following, at Summit View, Abuser 2 initiated a sexual relationship with the Plaintiff. The relationship lasted

two months before she was fired. The Plaintiff explained that Abuser 2 made advances toward him, and he responded. Abuser 2 raped the Plaintiff approximately 4 times.

iv.     Out of fear of retaliation, punishment, extended confinement, and further abuse, Plaintiff did not report—or was unable to meaningfully report—the sexual misconduct, knowing and believing that any complaints would be unanswered, dismissed, ignored, and buried without investigation or redress, thereby allowing the sexual misconduct to continue unabated. Plaintiff was systematically and repeatedly sexually abused in what was supposed to be a "safe haven" environment—an environment exclusively created, funded, staffed, maintained, and controlled by DEFENDANTS, and each of them. DEFENDANTS had a mandatory, non-delegable duty to protect this child from the very harm they facilitated, enabled, and concealed.

v.      As a direct and proximate result of the sexual abuse perpetrated against him, Plaintiff has suffered and continues to suffer severe, ongoing, and persistent mental, emotional, psychological, and physical injuries, including, but not limited to: anxiety; depression; feelings of helplessness and hopelessness; insomnia and sleep disturbances including nightmares; questioning of sexual identity; profoundly lowered self-esteem; moodiness and emotional dysregulation; difficulty forming and maintaining meaningful interpersonal and intimate relationships; pervasive loss of trust and control issues with persons in positions of authority; flashbacks, intrusive thoughts, and hypervigilance; chronic stress; nervousness; fear; deep embarrassment and shame; and a devastating loss of enjoyment of life, among other injuries.

AC.     **John Doe 330896:**

i.      Plaintiff John Doe 330896 is a male, born on November 18, 1992, who was sexually abused at just 15 years old, in or around 2007, while confined within the Nevada Juvenile Justice System at the Caliente Youth Center ("CYC") in Caliente, Nevada. At the time of the abuse, Plaintiff was a minor child entrusted to the custody, care, and supervision of the State of Nevada and its agents, employees, and contractors.

COMPLAINT

ii.     Plaintiff was committed to mandatory physical confinement at the Caliente Youth Center ("CYC") in Caliente, Nevada, where he was placed under the complete custody, dominion, and control of Defendants and DOES 1-500. These Defendants held positions of extraordinary power, trust, and authority over Plaintiff—a vulnerable, confined child with no ability to leave, resist, or seek outside help. Defendants exploited this absolute power imbalance to sexually abuse and harass Plaintiff under color of authority on behalf of DEFENDANTS, and each of them.

iii.     While Plaintiff was confined, he was subjected to egregious and predatory sexual abuse on at least 2 occasions within his cell. The Abuser entered into Plaintiff's cell and fondled Plaintiff's penis with Abuser's hand.  The second time, as Plaintiff was getting out of the shower, the Abuser, without gloves, fondled Plaintiff's penis.

iv.     Out of fear of retaliation, punishment, extended confinement, and further abuse, Plaintiff did not report—or was unable to meaningfully report—the sexual misconduct, knowing and believing that any complaints would be unanswered, dismissed, ignored, and buried without investigation or redress, thereby allowing the sexual misconduct to continue unabated. Plaintiff was systematically and repeatedly sexually abused in what was supposed to be a "safe haven" environment—an environment exclusively created, funded, staffed, maintained, and controlled by DEFENDANTS, and each of them. DEFENDANTS had a mandatory, non-delegable duty to protect this child from the very harm they facilitated, enabled, and concealed.

v.     As a direct and proximate result of the sexual abuse perpetrated against him, Plaintiff has suffered and continues to suffer severe, ongoing, and persistent mental, emotional, psychological, and physical injuries, including, but not limited to: anxiety; depression; feelings of helplessness and hopelessness; insomnia and sleep disturbances including nightmares; questioning of sexual identity; profoundly lowered self-esteem; moodiness and emotional dysregulation; difficulty forming and maintaining meaningful interpersonal and intimate relationships; pervasive loss of trust and control issues with persons in positions of authority; flashbacks, intrusive thoughts, and hypervigilance;

COMPLAINT

chronic stress; nervousness; fear; deep embarrassment and shame; and a devastating loss of enjoyment of life, among other injuries.

AD.   **Jane Doe 330856:**

i.      Plaintiff Jane Doe 330856 is a female, born on July 25, 1993, who was sexually abused at just 14 years old, in or around 2007-2008, while confined within the Nevada Juvenile Justice System at the Nevada Youth Training Center ("NYTC") in Elko, Nevada. At the time of the abuse, Plaintiff was a minor child entrusted to the custody, care, and supervision of the State of Nevada and its agents, employees, and contractors.

ii.      Plaintiff was committed to mandatory physical confinement at the Nevada Youth Training Center ("NYTC") in Elko, Nevada, where she was placed under the complete custody, dominion, and control of Defendants and DOES 1-500. These Defendants held positions of extraordinary power, trust, and authority over Plaintiff—a vulnerable, confined child with no ability to leave, resist, or seek outside help. Defendants exploited this absolute power imbalance to sexually abuse and harass Plaintiff under color of authority on behalf of DEFENDANTS, and each of them.

iii.      While Plaintiff was confined she was subjected to egregious and predatory sexual abuse on at least 10+ occasions, over a period of approximately 4 months. On one occasion, Plaintiff was standing in the lunch line when OFFICER MOORE passed by and groped Plaintiff's buttocks over her clothing. On other occasions, Plaintiff would be alone in the dorm when Officer Moore would approach her. He would force Plaintiff to kiss him while he inserted his bare hand inside Plaintiff's pants and proceeded to digitally penetrate her vagina. On one of these occasions, Plaintiff was forced to perform oral copulation on Officer Moore. Officer Moore would tell Plaintiff that she would be able to get released early if she complied with the abuse. On the day of Plaintiff's release, she was in the laundry room when Officer Moore entered. He exposed his penis and began masturbating himself while watching Plaintiff get her clothing. He then approached Plaintiff, lifted up her gown, and vaginally raped Plaintiff to the point of ejaculation. Officer Moore would

bring Plaintiff fast food from McDonald's on several occasions during the period of abuse. Officer Moore told Plaintiff they would both get in trouble if she reported the abuse.

iv.    Out of fear of retaliation, punishment, extended confinement, and further abuse, Plaintiff did not report—or was unable to meaningfully report—the sexual misconduct, knowing and believing that any complaints would be unanswered, dismissed, ignored, and buried without investigation or redress, thereby allowing the sexual misconduct to continue unabated. Plaintiff was systematically and repeatedly sexually abused in what was supposed to be a "safe haven" environment—an environment exclusively created, funded, staffed, maintained, and controlled by DEFENDANTS, and each of them. DEFENDANTS had a mandatory, non-delegable duty to protect this child from the very harm they facilitated, enabled, and concealed.

v.    As a direct and proximate result of the sexual abuse perpetrated against her, Plaintiff has suffered and continues to suffer severe, ongoing, and persistent mental, emotional, psychological, and physical injuries, including, but not limited to: anxiety; depression; feelings of helplessness and hopelessness; insomnia and sleep disturbances including nightmares; questioning of sexual identity; profoundly lowered self-esteem; moodiness and emotional dysregulation; difficulty forming and maintaining meaningful interpersonal and intimate relationships; pervasive loss of trust and control issues with persons in positions of authority; flashbacks, intrusive thoughts, and hypervigilance; chronic stress; nervousness; fear; deep embarrassment and shame; and a devastating loss of enjoyment of life, among other injuries.

AE.    **John Doe 330149:**

i.    Plaintiff John Doe 330149 is a male, born on April 14, 1993, who was sexually abused between the ages of 13 and 14, in or around 2007, while confined within the Nevada Juvenile Justice System at the Caliente Youth Center ("CYC") in Caliente, Nevada. At the time of the abuse, Plaintiff was a minor child entrusted to the custody, care, and supervision of the State of Nevada and its agents, employees, and contractors.

COMPLAINT

ii.      Plaintiff was committed to mandatory physical confinement at the Caliente Youth Center ("CYC") in Caliente, Nevada, where he was placed under the complete custody, dominion, and control of Defendants and DOES 1-500. These Defendants held positions of extraordinary power, trust, and authority over Plaintiff—a vulnerable, confined child with no ability to leave, resist, or seek outside help. Defendants exploited this absolute power imbalance to sexually abuse and harass Plaintiff under color of authority on behalf of DEFENDANTS, and each of them.

iii.      While Plaintiff was confined, he was subjected to egregious and predatory sexual abuse on at least 4 instances. Plaintiff was in his room alone when the Abuser entered and instructed him to undress for a strip search. Abuser instructed Plaintiff to lift his genitals. Abuser then said that he would show Plaintiff what he meant. Abuser approached Plaintiff and lifted his penis and testicles. Abuser then began to rub Plaintiff's penis up and down in a masturbating motion without gloves.  Following, Plaintiff was in his room alone when Abuser entered and instructed Plaintiff to strip and to place his hands against the wall. Abuser then approached Plaintiff and began masturbating Plaintiff without gloves. Abuser began breathing hard and asked Plaintiff if he liked it.  Thereafter Abuser entered Plaintiff's room removed his own pants and removed Plaintiff's clothing. He anally penetrated Plaintiff with his penis, but Plaintiff began loudly screaming because of the pain, and Abuser removed his penis. Three staff members then entered the room and witnessed what was happening. Plaintiff was then held in a restraint by the staff members. Plaintiff told Abuser that he was going to tell everybody what he just did and Abuser slammed Plaintiff against something, which dislocated Plaintiff's shoulder. Abuser told Plaintiff to never say anything again.  Plaintiff reported the physical abuse that caused his dislocated shoulder to his grandma, who reported it to Child Protective Services (CPS). Shortly before CPS came to the facility, Abuser digitally penetrated Plaintiff's anus as a punishment for telling.  Abuser threatened to sodomize Plaintiff if he told anyone about the abuse. He told Plaintiff that he would be unable to walk for a week.  Plaintiff was given extra clothing and extra gifts at Christmas as a bribe.

COMPLAINT

iv.     Out of fear of retaliation, punishment, extended confinement, and further abuse, Plaintiff did not report—or was unable to meaningfully report—the sexual misconduct, knowing and believing that any complaints would be unanswered, dismissed, ignored, and buried without investigation or redress, thereby allowing the sexual misconduct to continue unabated. Plaintiff was systematically and repeatedly sexually abused in what was supposed to be a "safe haven" environment—an environment exclusively created, funded, staffed, maintained, and controlled by DEFENDANTS, and each of them. DEFENDANTS had a mandatory, non-delegable duty to protect this child from the very harm they facilitated, enabled, and concealed.

v.      As a direct and proximate result of the sexual abuse perpetrated against him, Plaintiff has suffered and continues to suffer severe, ongoing, and persistent mental, emotional, psychological, and physical injuries, including, but not limited to: anxiety; depression; feelings of helplessness and hopelessness; insomnia and sleep disturbances including nightmares; questioning of sexual identity; profoundly lowered self-esteem; moodiness and emotional dysregulation; difficulty forming and maintaining meaningful interpersonal and intimate relationships; pervasive loss of trust and control issues with persons in positions of authority; flashbacks, intrusive thoughts, and hypervigilance; chronic stress; nervousness; fear; deep embarrassment and shame; and a devastating loss of enjoyment of life, among other injuries.

AF.     **Jane Doe 330871:**

i.      Plaintiff Jane Doe 330871 is a female, born on July 15, 1992, who was sexually abused between the ages of 13 and 15, in or around 2006, while confined within the Nevada Juvenile Justice System at the Caliente Youth Center ("CYC") in Caliente, Nevada. At the time of the abuse, Plaintiff was a minor child entrusted to the custody, care, and supervision of the State of Nevada and its agents, employees, and contractors.

ii.     Plaintiff was committed to mandatory physical confinement at the Caliente Youth Center ("CYC") in Caliente, Nevada, where she was placed under the complete custody, dominion, and control of Defendants and DOES 1-500. These Defendants held

COMPLAINT

positions of extraordinary power, trust, and authority over Plaintiff—a vulnerable, confined child with no ability to leave, resist, or seek outside help. Defendants exploited this absolute power imbalance to sexually abuse and harass Plaintiff under color of authority on behalf of DEFENDANTS, and each of them.

iii. While Plaintiff was confined, she was subjected to egregious and predatory sexual abuse on at least 10 separate occasions, over a period of approximately 2 years. The Plaintiff encountered the abuser in her assigned housing unit. The Abuser would masturbate himself while simultaneously directing her to remove her clothes. The Abuser would then fondle her bare breasts and vagina with his bare hands. He then proceeded to orally stimulate her nipples while digitally sodomizing her and then raped her. She was also forced to perform oral copulation on the Abuser until ejaculation. On another occasion, on a camping trip, the Plaintiff needed to use the restroom which was just urinating in the woods. The Abuser escorted her to an area to use as a bathroom. Once they were alone, he fondled her breasts and genitals under her clothes, before then exposing his genitals and forcing her to perform oral copulation until he ejaculated. The Abuser would keep the packages she was sent from her mother as punishment if she ever refused the abuse. She was rewarded with oatmeal cookies and sandwiches when she remained compliant.

iv. Out of fear of retaliation, punishment, extended confinement, and further abuse, Plaintiff did not report—or was unable to meaningfully report—the sexual misconduct, knowing and believing that any complaints would be unanswered, dismissed, ignored, and buried without investigation or redress, thereby allowing the sexual misconduct to continue unabated. Plaintiff was systematically and repeatedly sexually abused in what was supposed to be a "safe haven" environment—an environment exclusively created, funded, staffed, maintained, and controlled by DEFENDANTS, and each of them. DEFENDANTS had a mandatory, non-delegable duty to protect this child from the very harm they facilitated, enabled, and concealed.

COMPLAINT

v.       As a direct and proximate result of the sexual abuse perpetrated against her, Plaintiff has suffered and continues to suffer severe, ongoing, and persistent mental, emotional, psychological, and physical injuries, including, but not limited to: anxiety; depression; feelings of helplessness and hopelessness; insomnia and sleep disturbances including nightmares; questioning of sexual identity; profoundly lowered self-esteem; moodiness and emotional dysregulation; difficulty forming and maintaining meaningful interpersonal and intimate relationships; pervasive loss of trust and control issues with persons in positions of authority; flashbacks, intrusive thoughts, and hypervigilance; chronic stress; nervousness; fear; deep embarrassment and shame; and a devastating loss of enjoyment of life, among other injuries.

AG.    **John Doe 323846:**

i.       Plaintiff John Doe 323846 is a male, born on November 11, 1990, who was sexually abused at just 14 years old, in or around 2005, while confined within the Nevada Juvenile Justice System at the Caliente Youth Center ("CYC") in Caliente, Nevada. At the time of the abuse, Plaintiff was a minor child entrusted to the custody, care, and supervision of the State of Nevada and its agents, employees, and contractors.

ii.      Plaintiff was committed to mandatory physical confinement at the Caliente Youth Center ("CYC") in Caliente, Nevada, where he was placed under the complete custody, dominion, and control of Defendants and DOES 1-500. These Defendants held positions of extraordinary power, trust, and authority over Plaintiff—a vulnerable, confined child with no ability to leave, resist, or seek outside help. Defendants exploited this absolute power imbalance to sexually abuse and harass Plaintiff under color of authority on behalf of DEFENDANTS, and each of them.

iii.     While Plaintiff was confined, he was subjected to egregious and predatory sexual abuse on at least 4 occasions, over a period of approximately 2 - 3 months. On one occasion, Plaintiff had just finished showering and was brushing his teeth when MR. TAYLOR entered and approached him. MR. TAYLOR told Plaintiff to hurry up and proceeded to put one hand on Plaintiff's back and grabbed Plaintiff's buttocks with the

other hand. MR. TAYLOR then reached his hand around the front of Plaintiff and began groping Plaintiff's genitals, all under Plaintiff's clothing. Plaintiff questioned what he was doing, and MR. TAYLOR stopped and walked out.  On another occasion, Plaintiff was in his room wearing only boxer shorts when MR. TAYLOR entered and told Plaintiff to clean his room. MR. TAYLOR again put his hand inside Plaintiff's clothing and attempted to digitally penetrate Plaintiff's anus and grope his genitals. Plaintiff was able to back him away so that penetration could not occur.  This abuse would occur in the same manner a total of 4 times, once in the bathroom, in the kitchen, and twice in Plaintiff's cell while Plaintiff was housed in Hamilton Cottage. The abuse stopped due to MR. TAYLOR being transferred to another cottage.

iv.     Out of fear of retaliation, punishment, extended confinement, and further abuse, Plaintiff did not report—or was unable to meaningfully report—the sexual misconduct, knowing and believing that any complaints would be unanswered, dismissed, ignored, and buried without investigation or redress, thereby allowing the sexual misconduct to continue unabated. Plaintiff was systematically and repeatedly sexually abused in what was supposed to be a "safe haven" environment—an environment exclusively created, funded, staffed, maintained, and controlled by DEFENDANTS, and each of them. DEFENDANTS had a mandatory, non-delegable duty to protect this child from the very harm they facilitated, enabled, and concealed.

v.     As a direct and proximate result of the sexual abuse perpetrated against him, Plaintiff has suffered and continues to suffer severe, ongoing, and persistent mental, emotional, psychological, and physical injuries, including, but not limited to: anxiety; depression; feelings of helplessness and hopelessness; insomnia and sleep disturbances including nightmares; questioning of sexual identity; profoundly lowered self-esteem; moodiness and emotional dysregulation; difficulty forming and maintaining meaningful interpersonal and intimate relationships; pervasive loss of trust and control issues with persons in positions of authority; flashbacks, intrusive thoughts, and hypervigilance;

COMPLAINT

chronic stress; nervousness; fear; deep embarrassment and shame; and a devastating loss of enjoyment of life, among other injuries.

AH.    **Jane Doe 330082:**

i.    Plaintiff Jane Doe 330082 is a female, born on October 28, 1991, who was sexually abused at just 16 or 17 years old, in or around 2006 or 2007, while confined within the Nevada Juvenile Justice System at the Caliente Youth Center ("CYC") in Caliente, Nevada. At the time of the abuse, Plaintiff was a minor child entrusted to the custody, care, and supervision of the State of Nevada and its agents, employees, and contractors.

ii.    Plaintiff was committed to mandatory physical confinement at the Caliente Youth Center ("CYC") in Caliente, Nevada, where she was placed under the complete custody, dominion, and control of Defendants and DOES 1-500. These Defendants held positions of extraordinary power, trust, and authority over Plaintiff—a vulnerable, confined child with no ability to leave, resist, or seek outside help. Defendants exploited this absolute power imbalance to sexually abuse and harass Plaintiff under color of authority on behalf of DEFENDANTS, and each of them.

iii.    While Plaintiff was confined, she was subjected to egregious and predatory sexual abuse on at least 3 or 4 times.  When she first arrived at the facility, MR. OSBORNE patted her down and groped her breasts over her clothing.  Another time, Plaintiff was alone with Mr. Osborne, but she does not recall where they were in the facility. He pulled her pants down, and he pulled his own pants down and raped Plaintiff until ejaculation. No gloves or condoms were used. Mr. Osborne threatened Plaintiff, telling her that no one would believe her if she reported the abuse. Plaintiff also reported that she was being individually tutored by Abuser 2. In the classroom area, he exposed his bare penis to Plaintiff. He then forced Plaintiff to masturbate him. He then reached under Plaintiff's clothing, masturbated Plaintiff, and digitally penetrated Plaintiff. He also groped Plaintiff's breasts under her clothing. He never wore gloves during the abuse, and he did not ejaculate. This happened twice in a similar manner.  Plaintiff further reported Abuser 3

72

COMPLAINT

brought her down to the basement area, where they stored Plaintiff's clothes and hygiene products. Here, Abuser reached into Plaintiff's pants and began to masturbate Plaintiff until she digitally penetrated Plaintiff. She then forced Plaintiff to reach into her clothing area and forced Plaintiff to masturbate her.

iv.     Out of fear of retaliation, punishment, extended confinement, and further abuse, Plaintiff did not report—or was unable to meaningfully report—the sexual misconduct, knowing and believing that any complaints would be unanswered, dismissed, ignored, and buried without investigation or redress, thereby allowing the sexual misconduct to continue unabated. Plaintiff was systematically and repeatedly sexually abused in what was supposed to be a "safe haven" environment—an environment exclusively created, funded, staffed, maintained, and controlled by DEFENDANTS, and each of them. DEFENDANTS had a mandatory, non-delegable duty to protect this child from the very harm they facilitated, enabled, and concealed.

v.     As a direct and proximate result of the sexual abuse perpetrated against her, Plaintiff has suffered and continues to suffer severe, ongoing, and persistent mental, emotional, psychological, and physical injuries, including, but not limited to: anxiety; depression; feelings of helplessness and hopelessness; insomnia and sleep disturbances including nightmares; questioning of sexual identity; profoundly lowered self-esteem; moodiness and emotional dysregulation; difficulty forming and maintaining meaningful interpersonal and intimate relationships; pervasive loss of trust and control issues with persons in positions of authority; flashbacks, intrusive thoughts, and hypervigilance; chronic stress; nervousness; fear; deep embarrassment and shame; and a devastating loss of enjoyment of life, among other injuries.

AI.    **John Doe 330409:**

i.     Plaintiff John Doe 330409 is a male, born on August 17, 1991, who was sexually abused between the ages of 17 and 18, in or around 2009 - 2010, while confined within the Nevada Juvenile Justice System at the Caliente Youth Center ("CYC") in Caliente, Nevada. At the time of the abuse, Plaintiff was a minor child entrusted to the

custody, care, and supervision of the State of Nevada and its agents, employees, and contractors.

ii.    Plaintiff was committed to mandatory physical confinement at the Caliente Youth Center ("CYC") in Caliente, Nevada, where he was placed under the complete custody, dominion, and control of Defendants and DOES 1-500. These Defendants held positions of extraordinary power, trust, and authority over Plaintiff—a vulnerable, confined child with no ability to leave, resist, or seek outside help. Defendants exploited this absolute power imbalance to sexually abuse and harass Plaintiff under color of authority on behalf of DEFENDANTS, and each of them.

iii.    While Plaintiff was confined, he was subjected to egregious and predatory sexual abuse on at least 4 - 5 occasions, over a period of approximately 10 months. On one occasion, MR. E came to the doorway of Plaintiff's room and instructed Plaintiff to masturbate himself while MR. E watched. MR. E told Plaintiff he would get into more trouble if he did not comply. On another occasion, MR. E instructed Plaintiff to sit outside his room because he was not allowed to nap during the day. Plaintiff refused and MR. E followed Plaintiff into his room and grabbed Plaintiff's genitals with his bare hand.  On a few occasions, Abuser #2 would enter the doorway of Plaintiff's cell and instruct him to masturbate himself while the abuser watched.  Plaintiff was told he would get in more trouble if he did not comply. The abuser further exploited Plaintiff by offering cigarettes.

iv.    Out of fear of retaliation, punishment, extended confinement, and further abuse, Plaintiff did not report—or was unable to meaningfully report—the sexual misconduct, knowing and believing that any complaints would be unanswered, dismissed, ignored, and buried without investigation or redress, thereby allowing the sexual misconduct to continue unabated. Plaintiff was systematically and repeatedly sexually abused in what was supposed to be a "safe haven" environment—an environment exclusively created, funded, staffed, maintained, and controlled by DEFENDANTS, and each of them. DEFENDANTS had a mandatory, non-delegable duty to protect this child from the very harm they facilitated, enabled, and concealed.

COMPLAINT

v.       As a direct and proximate result of the sexual abuse perpetrated against him, Plaintiff has suffered and continues to suffer severe, ongoing, and persistent mental, emotional, psychological, and physical injuries, including, but not limited to: anxiety; depression; feelings of helplessness and hopelessness; insomnia and sleep disturbances including nightmares; questioning of sexual identity; profoundly lowered self-esteem; moodiness and emotional dysregulation; difficulty forming and maintaining meaningful interpersonal and intimate relationships; pervasive loss of trust and control issues with persons in positions of authority; flashbacks, intrusive thoughts, and hypervigilance; chronic stress; nervousness; fear; deep embarrassment and shame; and a devastating loss of enjoyment of life, among other injuries.

AJ.     **John Doe 325618:**

i.       Plaintiff John Doe 325618 is a male, born on January 25, 1999, who was sexually abused at just 16 years old, in or around 2015, while confined within the Nevada Juvenile Justice System at the Nevada Youth Training Center ("NYTC") in Elko, Nevada. At the time of the abuse, Plaintiff was a minor child entrusted to the custody, care, and supervision of the State of Nevada and its agents, employees, and contractors.

ii.      Plaintiff was committed to mandatory physical confinement at the Nevada Youth Training Center ("NYTC") in Elko, Nevada, where he was placed under the complete custody, dominion, and control of Defendants and DOES 1-500. These Defendants held positions of extraordinary power, trust, and authority over Plaintiff—a vulnerable, confined child with no ability to leave, resist, or seek outside help. Defendants exploited this absolute power imbalance to sexually abuse and harass Plaintiff under color of authority on behalf of DEFENDANTS, and each of them.

iii.     While Plaintiff was confined he was subjected to egregious and predatory sexual abuse on at least 2 occasions by Abuser MR. SMITH who pushed Plaintiff against the wall and proceeded to remove Plaintiff's clothing. The abuser began masturbating Plaintiff for approximately 30 seconds to 1 minute. Plaintiff expressed that the Abuser did not utilize gloves. Plaintiff expressed that Plaintiff pushed away from the abuser.

COMPLAINT

Separately, Abuser 2 instructed Plaintiff to strip out of Plaintiff's own clothing and once he was undressed the abuser approached Plaintiff and digitally penetrated Plaintiff's anus without the use of gloves. Plaintiff was threatened with the abuser and staff telling Plaintiff that they would file criminal charges against Plaintiff's family.

iv.   Out of fear of retaliation, punishment, extended confinement, and further abuse, Plaintiff did not report—or was unable to meaningfully report—the sexual misconduct, knowing and believing that any complaints would be unanswered, dismissed, ignored, and buried without investigation or redress, thereby allowing the sexual misconduct to continue unabated. Plaintiff was systematically and repeatedly sexually abused in what was supposed to be a "safe haven" environment—an environment exclusively created, funded, staffed, maintained, and controlled by DEFENDANTS, and each of them. DEFENDANTS had a mandatory, non-delegable duty to protect this child from the very harm they facilitated, enabled, and concealed.

v.   As a direct and proximate result of the sexual abuse perpetrated against him, Plaintiff has suffered and continues to suffer severe, ongoing, and persistent mental, emotional, psychological, and physical injuries, including, but not limited to: anxiety; depression; feelings of helplessness and hopelessness; insomnia and sleep disturbances including nightmares; questioning of sexual identity; profoundly lowered self-esteem; moodiness and emotional dysregulation; difficulty forming and maintaining meaningful interpersonal and intimate relationships; pervasive loss of trust and control issues with persons in positions of authority; flashbacks, intrusive thoughts, and hypervigilance; chronic stress; nervousness; fear; deep embarrassment and shame; and a devastating loss of enjoyment of life, among other injuries.

AK.   **Jane Doe 330731:**

i.   Plaintiff Jane Doe 330731 is a female, born on October 29, 1997, who was sexually abused at just 15 years old, in or around 2013, while confined within the Nevada Juvenile Justice System at the Caliente Youth Center ("CYC") in Caliente, Nevada. At the

time of the abuse, Plaintiff was a minor child entrusted to the custody, care, and supervision of the State of Nevada and its agents, employees, and contractors.

ii.     Plaintiff was committed to mandatory physical confinement at the Caliente Youth Center ("CYC") in Caliente, Nevada, where she was placed under the complete custody, dominion, and control of Defendants and DOES 1-500. These Defendants held positions of extraordinary power, trust, and authority over Plaintiff—a vulnerable, confined child with no ability to leave, resist, or seek outside help. Defendants exploited this absolute power imbalance to sexually abuse and harass Plaintiff under color of authority on behalf of DEFENDANTS, and each of them.

iii.    While Plaintiff was confined she was subjected to egregious and predatory sexual abuse on at least 4 separate occasions by Abuser OFFICER TERESA. The Plaintiff encountered the abuser in her assigned housing unit during incarceration. The Plaintiff was playing softball with other inmates when she injured her ankle and was sent to keep weight off of her foot. The Abuser entered the room with ice and began massaging the Plaintiff's ankle. She then proceeded to massage up her leg until she then forced her ungloved hand inside of the plaintiff's clothes and fondled her bare breast and vagina. After this initial incident, there were 3 more incidents that occurred in the same manner. She was threatened with more time should she say anything or was non-compliant. The Abuser showed the Plaintiff favoritism and was moved up the point/rank system faster than she was supposed to which allowed her to earn extra privileges.

iv.     Out of fear of retaliation, punishment, extended confinement, and further abuse, Plaintiff did not report—or was unable to meaningfully report—the sexual misconduct, knowing and believing that any complaints would be unanswered, dismissed, ignored, and buried without investigation or redress, thereby allowing the sexual misconduct to continue unabated. Plaintiff was systematically and repeatedly sexually abused in what was supposed to be a "safe haven" environment—an environment exclusively created, funded, staffed, maintained, and controlled by DEFENDANTS, and

each of them. DEFENDANTS had a mandatory, non-delegable duty to protect this child from the very harm they facilitated, enabled, and concealed.

v.      As a direct and proximate result of the sexual abuse perpetrated against her, Plaintiff has suffered and continues to suffer severe, ongoing, and persistent mental, emotional, psychological, and physical injuries, including, but not limited to: anxiety; depression; feelings of helplessness and hopelessness; insomnia and sleep disturbances including nightmares; questioning of sexual identity; profoundly lowered self-esteem; moodiness and emotional dysregulation; difficulty forming and maintaining meaningful interpersonal and intimate relationships; pervasive loss of trust and control issues with persons in positions of authority; flashbacks, intrusive thoughts, and hypervigilance; chronic stress; nervousness; fear; deep embarrassment and shame; and a devastating loss of enjoyment of life, among other injuries.

AL.     **John Doe 319309:**

i.      Plaintiff John Doe 319309 is a male, born on February 15, 1999, who was sexually abused between the ages of 15 and 16, in or around 2015, while confined within the Nevada Juvenile Justice System at the Nevada Youth Training Center ("NYTC") in Elko, Nevada. At the time of the abuse, Plaintiff was a minor child entrusted to the custody, care, and supervision of the State of Nevada and its agents, employees, and contractors.

ii.     Plaintiff was committed to mandatory physical confinement at the Nevada Youth Training Center ("NYTC") in Elko, Nevada, where he was placed under the complete custody, dominion, and control of Defendants and DOES 1-500. These Defendants held positions of extraordinary power, trust, and authority over Plaintiff—a vulnerable, confined child with no ability to leave, resist, or seek outside help. Defendants exploited this absolute power imbalance to sexually abuse and harass Plaintiff under color of authority on behalf of DEFENDANTS, and each of them.

iii.    While Plaintiff was confined he was subjected to egregious and predatory sexual abuse on at least 3 separate occasions, over a period of approximately 9 months.

At the time the abuse occurred, the Plaintiff was on suicide watch and was only provided a smock to wear. The Abuser was assigned as the Plaintiff's counselor and regularly met with the Plaintiff to gauge his mental health. The Plaintiff states the Abuser began grooming him and building rapport throughout their meetings. The Abuser then began moving closer to the Plaintiff during their sessions and touching the Plaintiff's shoulders and legs when speaking with him. The abuse progressed to three separate instances of masturbation performed on the Plaintiff.

The Plaintiff states that another resident was abused similarly by the abuser, and they later married. The Plaintiff was moved to a facility in Texas, within Garner County, and the Abuser continued to send him mail and money. The Abuser also wrote a "popular blog" about "falling in love" with the Plaintiff and the other inmate whom she later married.

iv.    Out of fear of retaliation, punishment, extended confinement, and further abuse, Plaintiff did not report—or was unable to meaningfully report—the sexual misconduct, knowing and believing that any complaints would be unanswered, dismissed, ignored, and buried without investigation or redress, thereby allowing the sexual misconduct to continue unabated. Plaintiff was systematically and repeatedly sexually abused in what was supposed to be a "safe haven" environment—an environment exclusively created, funded, staffed, maintained, and controlled by DEFENDANTS, and each of them. DEFENDANTS had a mandatory, non-delegable duty to protect this child from the very harm they facilitated, enabled, and concealed.

v.    As a direct and proximate result of the sexual abuse perpetrated against him, Plaintiff has suffered and continues to suffer severe, ongoing, and persistent mental, emotional, psychological, and physical injuries, including, but not limited to: anxiety; depression; feelings of helplessness and hopelessness; insomnia and sleep disturbances including nightmares; questioning of sexual identity; profoundly lowered self-esteem; moodiness and emotional dysregulation; difficulty forming and maintaining meaningful interpersonal and intimate relationships; pervasive loss of trust and control issues with

COMPLAINT

persons in positions of authority; flashbacks, intrusive thoughts, and hypervigilance; chronic stress; nervousness; fear; deep embarrassment and shame; and a devastating loss of enjoyment of life, among other injuries.

AM.    **Jane Doe 319314:**

i.        Plaintiff Jane Doe 319314 is a female, born on September 22, 1994, who was sexually abused at just 17 years old, in or around 2011, while confined within the Nevada Juvenile Justice System at the Nevada Youth Training Center ("NYTC") in Elko, Nevada. At the time of the abuse, Plaintiff was a minor child entrusted to the custody, care, and supervision of the State of Nevada and its agents, employees, and contractors.

ii.        Plaintiff was committed to mandatory physical confinement at the Nevada Youth Training Center ("NYTC") in Elko, Nevada, where she was placed under the complete custody, dominion, and control of Defendants and DOES 1-500. These Defendants held positions of extraordinary power, trust, and authority over Plaintiff—a vulnerable, confined child with no ability to leave, resist, or seek outside help. Defendants exploited this absolute power imbalance to sexually abuse and harass Plaintiff under color of authority on behalf of DEFENDANTS, and each of them.

iii.        While Plaintiff was confined, she was subjected to egregious and predatory sexual abuse on at least 50 separate occasions, over a period of approximately 3 months.

She was inside a room in the dorms, inside a nearby janitor's closet, when she encountered the Abuser. The Abuser knew there were blind spots to the camera, and began to approach her after spending time previously grooming her. The Abuser touched the Plaintiff's bare breasts and vagina and began fondling her. The Abuser removed his penis from his pants and forced the Plaintiff to perform oral copulation on the Abuser. The abuse would sometimes end when the Abuser ejaculated into her mouth and in other incidents it would progress to rape. The Abuser would penetrate the Plaintiff without a condom on his penis, vaginally. The Plaintiff was laughed at and ridiculed by her peers when she tried to tell others about the abuse happening. The Abuser threatened the Plaintiff and told her, "Things could happen to her and her family."  She stated that the Abuser made direct

threats—claiming her sentence would be extended or that her family could be harmed if she reported anything. The Abuser would occasionally offer small incentives such as extra hygiene items, better food, or extended shower time as incentives for the abuse.

iv.      Out of fear of retaliation, punishment, extended confinement, and further abuse, Plaintiff did not report—or was unable to meaningfully report—the sexual misconduct, knowing and believing that any complaints would be unanswered, dismissed, ignored, and buried without investigation or redress, thereby allowing the sexual misconduct to continue unabated. Plaintiff was systematically and repeatedly sexually abused in what was supposed to be a "safe haven" environment—an environment exclusively created, funded, staffed, maintained, and controlled by DEFENDANTS, and each of them. DEFENDANTS had a mandatory, non-delegable duty to protect this child from the very harm they facilitated, enabled, and concealed.

v.      As a direct and proximate result of the sexual abuse perpetrated against her, Plaintiff has suffered and continues to suffer severe, ongoing, and persistent mental, emotional, psychological, and physical injuries, including, but not limited to: anxiety; depression; feelings of helplessness and hopelessness; insomnia and sleep disturbances including nightmares; questioning of sexual identity; profoundly lowered self-esteem; moodiness and emotional dysregulation; difficulty forming and maintaining meaningful interpersonal and intimate relationships; pervasive loss of trust and control issues with persons in positions of authority; flashbacks, intrusive thoughts, and hypervigilance; chronic stress; nervousness; fear; deep embarrassment and shame; and a devastating loss of enjoyment of life, among other injuries.

AN.   **Jane Doe 319313:**

i.      Plaintiff Jane Doe 319313 is a female, born on [DATE OF BIRTH UNKNOWN], who was sexually abused at just 15 years old, in or around 2015, while confined within the Nevada Juvenile Justice System at the Nevada Youth Training Center ("NYTC") in Elko, Nevada. At the time of the abuse, Plaintiff was a minor child entrusted

COMPLAINT

to the custody, care, and supervision of the State of Nevada and its agents, employees, and contractors.

ii.    Plaintiff was committed to mandatory physical confinement at the Nevada Youth Training Center ("NYTC") in Elko, Nevada, where she was placed under the complete custody, dominion, and control of Defendants and DOES 1-500. These Defendants held positions of extraordinary power, trust, and authority over Plaintiff—a vulnerable, confined child with no ability to leave, resist, or seek outside help. Defendants exploited this absolute power imbalance to sexually abuse and harass Plaintiff under color of authority on behalf of DEFENDANTS, and each of them.

iii.    While Plaintiff was confined, she was subjected to egregious and predatory sexual abuse on at least 2 instances. In the first instance of abuse, the Abuser invited the Plaintiff to his room. The Plaintiff went to the Abuser's room and the Abuser restrained her with his body weight. The Abuser then forcefully inserted his hand into her pants and attempted to masturbate her. The Abuser digitally penetrated the Plaintiff for several minutes. On the second instance of abuse, the Abuser entered the Plaintiff's room and stated he wished to apologize for the earlier abuse. The Plaintiff attempted to move away from the Abuser and he forcefully grabbed her. The Abuser again forced his hand into the Plaintiff's bottoms and fondled her buttocks and digitally penetrated her.

iv.    Out of fear of retaliation, punishment, extended confinement, and further abuse, Plaintiff did not report—or was unable to meaningfully report—the sexual misconduct, knowing and believing that any complaints would be unanswered, dismissed, ignored, and buried without investigation or redress, thereby allowing the sexual misconduct to continue unabated. Plaintiff was systematically and repeatedly sexually abused in what was supposed to be a "safe haven" environment—an environment exclusively created, funded, staffed, maintained, and controlled by DEFENDANTS, and each of them. DEFENDANTS had a mandatory, non-delegable duty to protect this child from the very harm they facilitated, enabled, and concealed.

v.    As a direct and proximate result of the sexual abuse perpetrated against her, Plaintiff has suffered and continues to suffer severe, ongoing, and persistent mental, emotional, psychological, and physical injuries, including, but not limited to: anxiety; depression; feelings of helplessness and hopelessness; insomnia and sleep disturbances including nightmares; questioning of sexual identity; profoundly lowered self-esteem; moodiness and emotional dysregulation; difficulty forming and maintaining meaningful interpersonal and intimate relationships; pervasive loss of trust and control issues with persons in positions of authority; flashbacks, intrusive thoughts, and hypervigilance; chronic stress; nervousness; fear; deep embarrassment and shame; and a devastating loss of enjoyment of life, among other injuries.

AO.    **John Doe 319311:**

i.    Plaintiff John Doe 319311 is a male, born on January 07, 2005, who was sexually abused at just 11/12 years old, in or around 2015, while confined within the Nevada Juvenile Justice System at the Nevada Youth Training Center ("NYTC") in Elko, Nevada. At the time of the abuse, Plaintiff was a minor child entrusted to the custody, care, and supervision of the State of Nevada and its agents, employees, and contractors.

ii.    Plaintiff was committed to mandatory physical confinement at the Nevada Youth Training Center ("NYTC") in Elko, Nevada, where he was placed under the complete custody, dominion, and control of Defendants and DOES 1-500. These Defendants held positions of extraordinary power, trust, and authority over Plaintiff—a vulnerable, confined child with no ability to leave, resist, or seek outside help. Defendants exploited this absolute power imbalance to sexually abuse and harass Plaintiff under color of authority on behalf of DEFENDANTS, and each of them.

iii.    While Plaintiff was confined, he was subjected to egregious and predatory sexual abuse on at least 2 separate occasions.  The Plaintiff developed a friendship with the abuser prior to any abuse happening. The Plaintiff was alone in his room with the Abuser when he grabbed the Plaintiff's genitals over his clothes. The Plaintiff pulled away and asked the Abuser what he was doing. The Abuser responded by apologizing over and

83

COMPLAINT

over again and walking out of the room.  The second incident happened 2 days later. The Plaintiff was in the Abusers room when the Abuser forced his hand inside the Plaintiff's pants and proceeded to manually stimulate him. The Abuser used his body weight to pin the Plaintiff down to the bed.

v.    As a direct and proximate result of the sexual abuse perpetrated against him, Plaintiff has suffered and continues to suffer severe, ongoing, and persistent mental, emotional, psychological, and physical injuries, including, but not limited to: anxiety; depression; feelings of helplessness and hopelessness; insomnia and sleep disturbances including nightmares; questioning of sexual identity; profoundly lowered self-esteem; moodiness and emotional dysregulation; difficulty forming and maintaining meaningful interpersonal and intimate relationships; pervasive loss of trust and control issues with persons in positions of authority; flashbacks, intrusive thoughts, and hypervigilance; chronic stress; nervousness; fear; deep embarrassment and shame; and a devastating loss of enjoyment of life, among other injuries.

AP.    **Jane Doe 319350:**

i.    Plaintiff Jane Doe 319350 is a female, born on December 10, 1991, who was sexually abused between the ages of 14 and 15, in or around 2006, while confined within the Nevada Juvenile Justice System at the Caliente Youth Center ("CYC") in Caliente, Nevada. At the time of the abuse, Plaintiff was a minor child entrusted to the custody, care, and supervision of the State of Nevada and its agents, employees, and contractors.

ii.    Plaintiff was committed to mandatory physical confinement at the Caliente Youth Center ("CYC") in Caliente, Nevada, where she was placed under the complete custody, dominion, and control of Defendants and DOES 1-500. These Defendants held positions of extraordinary power, trust, and authority over Plaintiff—a vulnerable, confined child with no ability to leave, resist, or seek outside help. Defendants exploited this absolute power imbalance to sexually abuse and harass Plaintiff under color of authority on behalf of DEFENDANTS, and each of them.

84

COMPLAINT

iii.     While Plaintiff was confined, she was subjected to egregious and predatory sexual abuse on at least 4-5 separate instances. Prior to the Plaintiff's entrance into this facility, she was a sex worker in Las Vegas. The Plaintiff believes the Abuser knew this about her and targeted her due to this. On the first instance of abuse, the Plaintiff was in her room in Lincoln cottage when the Abuser entered and began whispering "sexual shit" in the Plaintiff's ear, similar to "I know about your hooking." The Abuser then forcefully restrained the Plaintiff onto the ground and inserted his hand into her clothing to fondle her breasts and genitals. The Abuser called other staff to assist him in restraining the Plaintiff, acting as though she had become unruly. The Plaintiff attempted to verbally and physically resist the abuse, but she was handcuffed by the Abuser. This abuse occurred approximately 4-5 times in this facility in a similar manner. The Plaintiff verbally reported this abuse to several staff members and was not believed, stating there was no formal investigation prompted. The Plaintiff began "acting up" by physically assaulting the abuser, resulting in "several" incident reports. The Plaintiff also attempted to escape the facility and then reached out to her case worker and was "drugged" and returned to the facility. The Plaintiff asked for a female staff member on several instances, but was told "we are short staffed."

iv.     Out of fear of retaliation, punishment, extended confinement, and further abuse, Plaintiff did not report—or was unable to meaningfully report—the sexual misconduct, knowing and believing that any complaints would be unanswered, dismissed, ignored, and buried without investigation or redress, thereby allowing the sexual misconduct to continue unabated. Plaintiff was systematically and repeatedly sexually abused in what was supposed to be a "safe haven" environment—an environment exclusively created, funded, staffed, maintained, and controlled by DEFENDANTS, and each of them. DEFENDANTS had a mandatory, non-delegable duty to protect this child from the very harm they facilitated, enabled, and concealed.

v.     As a direct and proximate result of the sexual abuse perpetrated against her, Plaintiff has suffered and continues to suffer severe, ongoing, and persistent mental,

emotional, psychological, and physical injuries, including, but not limited to: anxiety; depression; feelings of helplessness and hopelessness; insomnia and sleep disturbances including nightmares; questioning of sexual identity; profoundly lowered self-esteem; moodiness and emotional dysregulation; difficulty forming and maintaining meaningful interpersonal and intimate relationships; pervasive loss of trust and control issues with persons in positions of authority; flashbacks, intrusive thoughts, and hypervigilance; chronic stress; nervousness; fear; deep embarrassment and shame; and a devastating loss of enjoyment of life, among other injuries.

AQ.    **Jane Doe 319609:**

i.    Plaintiff Jane Doe 319609 is a female, born on October 10, 1999, who was sexually abused at just 13 (Willow Springs Center) and 16 (Caliente Youth Center) years old, in or around 2013 (Willow Springs Center) and 2016 or 2017 (Caliente Youth Center), while confined within the Nevada Juvenile Justice System at the Caliente Youth Center ("CYC") in Caliente, Nevada. At the time of the abuse, Plaintiff was a minor child entrusted to the custody, care, and supervision of the State of Nevada and its agents, employees, and contractors.

ii.    Plaintiff was committed to mandatory physical confinement at the Caliente Youth Center ("CYC") in Caliente, Nevada, where she was placed under the complete custody, dominion, and control of Defendants and DOES 1-500. These Defendants held positions of extraordinary power, trust, and authority over Plaintiff, a vulnerable, confined child with no ability to leave, resist, or seek outside help. Defendants exploited this absolute power imbalance to sexually abuse and harass Plaintiff under color of authority on behalf of DEFENDANTS, and each of them.

iii.    While Plaintiff was confined at the Caliente Youth Center ("CYC") in Caliente, Nevada, at just 13 (Willow Springs Center) and 16 (Caliente Youth Center) years old she was subjected to egregious and predatory sexual abuse on at least 15 instances. On the first instance of abuse, it was around dinnertime, when Abuser 1, MS. JERRY, entered the Plaintiff's room in Grove Hall. Abuser 1 brought bed restraints with her into

the Plaintiff's room and instructed the Plaintiff to strip her clothing and lie face down on the bed. The Plaintiff was told that if she did not comply, her time in this facility would be "difficult" and she would be placed in the "quiet room." The Plaintiff attempted to resist the abuse but then complied, stripping her clothing and laying face down on the bed. Abuser 1 then used the bed restraints to secure the Plaintiff in that position and called "a code without a team" so that no other staff member would enter the Plaintiff's room "for their own safety." Abuser 1 then digitally penetrated the Plaintiff's vagina and fondled her buttocks without the use of gloves. This abuse occurred similarly on 14 separate instances throughout the Plaintiff's 3-4 months at this facility. In each instance, Abuser 1 called "a code without a team" during dinnertime, when fewer staff were on duty. Following, at Caliente Youth Center - Abuser 2, "MR. SAWYER," got the Plaintiff alone in the shower area when the abuser and two additional staff members entered the shower. The Plaintiff was facing the wall and did not see the additional staff member's faces, but recognized Abuser 2's distinct voice. The Plaintiff was physically abused by at least one staff member and pushed against the shower wall. The Plaintiff was restrained with the body weight of Abuser 2 and forcibly raped her. The abuse ended when Abuser 2 ejaculated on the Plaintiff's back and buttocks. The Plaintiff recalls the fondling of her buttocks as well, but is unable to determine if this was Abuser 2 or one of the two additional staff present. The Plaintiff was told by the abuser that she would not be believed and it was not in her best interest to report the abuse she endured.

iv.    Out of fear of retaliation, punishment, extended confinement, and further abuse, Plaintiff did not report—or was unable to meaningfully report—the sexual misconduct, knowing and believing that any complaints would be unanswered, dismissed, ignored, and buried without investigation or redress, thereby allowing the sexual misconduct to continue unabated. Plaintiff was systematically and repeatedly sexually abused in what was supposed to be a "safe haven" environment—an environment exclusively created, funded, staffed, maintained, and controlled by DEFENDANTS, and

COMPLAINT

each of them. DEFENDANTS had a mandatory, non-delegable duty to protect this child from the very harm they facilitated, enabled, and concealed.

v.      As a direct and proximate result of the sexual abuse perpetrated against her, Plaintiff has suffered and continues to suffer severe, ongoing, and persistent mental, emotional, psychological, and physical injuries, including, but not limited to: anxiety; depression; feelings of helplessness and hopelessness; insomnia and sleep disturbances including nightmares; questioning of sexual identity; profoundly lowered self-esteem; moodiness and emotional dysregulation; difficulty forming and maintaining meaningful interpersonal and intimate relationships; pervasive loss of trust and control issues with persons in positions of authority; flashbacks, intrusive thoughts, and hypervigilance; chronic stress; nervousness; fear; deep embarrassment and shame; and a devastating loss of enjoyment of life, among other injuries.

AR.    **Jane Doe 321557:**

i.      Plaintiff Jane Doe 321557 is a female, born on February 15, 1992, who was sexually abused at just 14 years old, in or around 2006, while confined within the Nevada Juvenile Justice System at the Caliente Youth Center ("CYC") in Caliente, Nevada. At the time of the abuse, Plaintiff was a minor child entrusted to the custody, care, and supervision of the State of Nevada and its agents, employees, and contractors.

ii.     Plaintiff was committed to mandatory physical confinement at the Caliente Youth Center ("CYC") in Caliente, Nevada, where she was placed under the complete custody, dominion, and control of Defendants and DOES 1-500. These Defendants held positions of extraordinary power, trust, and authority over Plaintiff—a vulnerable, confined child with no ability to leave, resist, or seek outside help. Defendants exploited this absolute power imbalance to sexually abuse and harass Plaintiff under color of authority on behalf of DEFENDANTS, and each of them.

iii.    While Plaintiff was confined, she was subjected to egregious and predatory sexual abuse.  Prior to the first instance of abuse, the Plaintiff had regular interactions with the Abuser within a group of residents. When the abuse took place, the Plaintiff was in the

88

COMPLAINT

shower area wearing a robe following her shower. The Abuser entered the shower area and opened her robe. The Abuser said, "shh, it'll be okay," and began to fondle the Plaintiff's breasts. The Plaintiff "shoved" the Abuser's hand away and the Abuser attempted to bribe the Plaintiff with reduced time at the facility if she complied with the abuse.

iv.    Out of fear of retaliation, punishment, extended confinement, and further abuse, Plaintiff did not report—or was unable to meaningfully report—the sexual misconduct, knowing and believing that any complaints would be unanswered, dismissed, ignored, and buried without investigation or redress, thereby allowing the sexual misconduct to continue unabated. Plaintiff was systematically and repeatedly sexually abused in what was supposed to be a "safe haven" environment—an environment exclusively created, funded, staffed, maintained, and controlled by DEFENDANTS, and each of them. DEFENDANTS had a mandatory, non-delegable duty to protect this child from the very harm they facilitated, enabled, and concealed.

v.    As a direct and proximate result of the sexual abuse perpetrated against her, Plaintiff has suffered and continues to suffer severe, ongoing, and persistent mental, emotional, psychological, and physical injuries, including, but not limited to: anxiety; depression; feelings of helplessness and hopelessness; insomnia and sleep disturbances including nightmares; questioning of sexual identity; profoundly lowered self-esteem; moodiness and emotional dysregulation; difficulty forming and maintaining meaningful interpersonal and intimate relationships; pervasive loss of trust and control issues with persons in positions of authority; flashbacks, intrusive thoughts, and hypervigilance; chronic stress; nervousness; fear; deep embarrassment and shame; and a devastating loss of enjoyment of life, among other injuries.

AS.    **John Doe 321973:**

i.    Plaintiff John Doe 321973 is a male, born on June 17, 1988, who was sexually abused at just 17 years old, in or around 2005, while confined within the Nevada Juvenile Justice System at the Nevada Youth Training Center ("NYTC") in Elko, Nevada.

COMPLAINT

At the time of the abuse, Plaintiff was a minor child entrusted to the custody, care, and supervision of the State of Nevada and its agents, employees, and contractors.

ii.      Plaintiff was committed to mandatory physical confinement at the Nevada Youth Training Center ("NYTC") in Elko, Nevada, where he was placed under the complete custody, dominion, and control of Defendants and DOES 1-500. These Defendants held positions of extraordinary power, trust, and authority over Plaintiff—a vulnerable, confined child with no ability to leave, resist, or seek outside help. Defendants exploited this absolute power imbalance to sexually abuse and harass Plaintiff under color of authority on behalf of DEFENDANTS, and each of them.

iii.     While Plaintiff was confined he was subjected to egregious and predatory sexual abuse on at least 2 instances of abuse. Plaintiff would ask permission to enter the athletic equipment storage room with other residents. Abuser MR. MICKEY would escort the residents and unlock the door. Plaintiff would be the last resident remaining in the room and would be alone with MR. MICKEY. MR. MICKEY would request that Plaintiff stay in the storage room. MR. MICKEY then proceeded to touch the Plaintiff's bare penis and buttocks, and then masturbated the Plaintiff till point of ejaculation. The Abuser then forced the Plaintiff to masturbate him till point of ejaculation. The Plaintiff and Abuser ejaculated on the floor or on the sports supply. On the second instance of abuse, after masturbating each other, the Abuser attempted to digitally penetrate the Plaintiff's anus. The Abuser put the tip of his fingertips inside the Plaintiff's anus. The Plaintiff resisted, which resulted in the Abuser restraining the Plaintiff up against the wall.  Mr. Mickey would threaten the Plaintiff with additional trouble if he resisted.  The Abuser threatened the Plaintiff by telling him that he would hurt him or have others hurt him if he said something or didn't comply. The abuser further exploited Plaintiff by offering inducements: The Abuser bribed the Plaintiff with tobacco.

iv.      Out of fear of retaliation, punishment, extended confinement, and further abuse, Plaintiff did not report—or was unable to meaningfully report—the sexual misconduct, knowing and believing that any complaints would be unanswered, dismissed,

COMPLAINT

ignored, and buried without investigation or redress, thereby allowing the sexual misconduct to continue unabated. Plaintiff was systematically and repeatedly sexually abused in what was supposed to be a "safe haven" environment—an environment exclusively created, funded, staffed, maintained, and controlled by DEFENDANTS, and each of them. DEFENDANTS had a mandatory, non-delegable duty to protect this child from the very harm they facilitated, enabled, and concealed.

v.    As a direct and proximate result of the sexual abuse perpetrated against him, Plaintiff has suffered and continues to suffer severe, ongoing, and persistent mental, emotional, psychological, and physical injuries, including, but not limited to: anxiety; depression; feelings of helplessness and hopelessness; insomnia and sleep disturbances including nightmares; questioning of sexual identity; profoundly lowered self-esteem; moodiness and emotional dysregulation; difficulty forming and maintaining meaningful interpersonal and intimate relationships; pervasive loss of trust and control issues with persons in positions of authority; flashbacks, intrusive thoughts, and hypervigilance; chronic stress; nervousness; fear; deep embarrassment and shame; and a devastating loss of enjoyment of life, among other injuries.

AT.    **John Doe 323012:**

i.    Plaintiff John Doe 323012 is a male, born on November 06, 1997, who was sexually abused between the ages of 16 and 17, in or around 2013, while confined within the Nevada Juvenile Justice System at the Caliente Youth Center ("CYC") in Caliente, Nevada. At the time of the abuse, Plaintiff was a minor child entrusted to the custody, care, and supervision of the State of Nevada and its agents, employees, and contractors.

ii.    Plaintiff was committed to mandatory physical confinement at the Caliente Youth Center ("CYC") in Caliente, Nevada, where he was placed under the complete custody, dominion, and control of Defendants and DOES 1-500. These Defendants held positions of extraordinary power, trust, and authority over Plaintiff—a vulnerable, confined child with no ability to leave, resist, or seek outside help. Defendants exploited

COMPLAINT

this absolute power imbalance to sexually abuse and harass Plaintiff under color of authority on behalf of DEFENDANTS, and each of them.

iii.     While Plaintiff was confined, he was subjected to egregious and predatory sexual abuse on at least 6 separate occasions. The Plaintiff was abused similarly on three separate instances by Abuser 1, MR. PRICE, within the dayroom of the facility. The Plaintiff did not have to attend class like the other residents, leaving him within the cottage during school hours. Abuser 1 approached the Plaintiff in the day room and demanded the Plaintiff "re-pay" him for misbehaving. The Plaintiff was instructed and forced to perform oral copulation on the abuser until the point of ejaculation, on the floor. The Plaintiff states that Abuser 1 would force his head to continue moving if he attempted to resist. The Plaintiff was threatened with extended time in the facility if he disclosed the abuse. Plaintiff was abused similarly on three instances by Abuser 2, all within his room. Abuser 2 would enter the Plaintiff's room and instruct the Plaintiff to masturbate him. Plaintiff attempted to resist, but was threatened with extended time in the facility and was physically forced to masturbate Abuser 2 until the point of ejaculation, on the floor.  The Plaintiff filled out several anonymous grievances with a request to speak to "higher staff." The Plaintiff believes Abuser 1 and Abuser 2 were removing his grievances. The Plaintiff then included his name on the grievances, leading Abuser 1 and Abuser 2 to retaliate. The Plaintiff believes the Abusers caused him to be removed from "every program" and lose his opportunities for parole.

iv.     Out of fear of retaliation, punishment, extended confinement, and further abuse, Plaintiff did not report—or was unable to meaningfully report—the sexual misconduct, knowing and believing that any complaints would be unanswered, dismissed, ignored, and buried without investigation or redress, thereby allowing the sexual misconduct to continue unabated. Plaintiff was systematically and repeatedly sexually abused in what was supposed to be a "safe haven" environment—an environment exclusively created, funded, staffed, maintained, and controlled by DEFENDANTS, and

COMPLAINT

each of them. DEFENDANTS had a mandatory, non-delegable duty to protect this child from the very harm they facilitated, enabled, and concealed.

v. As a direct and proximate result of the sexual abuse perpetrated against him, Plaintiff has suffered and continues to suffer severe, ongoing, and persistent mental, emotional, psychological, and physical injuries, including, but not limited to: anxiety; depression; feelings of helplessness and hopelessness; insomnia and sleep disturbances including nightmares; questioning of sexual identity; profoundly lowered self-esteem; moodiness and emotional dysregulation; difficulty forming and maintaining meaningful interpersonal and intimate relationships; pervasive loss of trust and control issues with persons in positions of authority; flashbacks, intrusive thoughts, and hypervigilance; chronic stress; nervousness; fear; deep embarrassment and shame; and a devastating loss of enjoyment of life, among other injuries.

AU. **Jane Doe 323096:**

i. Plaintiff Jane Doe 323096 is a female, born on September 21, 1995, who was sexually abused at just 16 years old, in or around 2013, while confined within the Nevada Juvenile Justice System at the Caliente Youth Center ("CYC") in Caliente, Nevada. At the time of the abuse, Plaintiff was a minor child entrusted to the custody, care, and supervision of the State of Nevada and its agents, employees, and contractors.

ii. Plaintiff was committed to mandatory physical confinement at the Caliente Youth Center ("CYC") in Caliente, Nevada, where she was placed under the complete custody, dominion, and control of Defendants and DOES 1-500. These Defendants held positions of extraordinary power, trust, and authority over Plaintiff—a vulnerable, confined child with no ability to leave, resist, or seek outside help. Defendants exploited this absolute power imbalance to sexually abuse and harass Plaintiff under color of authority on behalf of DEFENDANTS, and each of them.

iii. While Plaintiff was confined she was subjected to egregious and predatory sexual abuse on at least 3 separate occasions by the Art Teacher. The incidents of abuse took place in the abuser's classroom during the afternoon. The abuser would instruct the

93

COMPLAINT

Plaintiff to remove her shirt. The abuser would grope the Plaintiff's breasts and draw the Plaintiff's nude body. The Plaintiff recalls another resident being present during one of the incidents. The abuser instructed the other female resident to remove her shirt and drew her as well. The abuser would bribe the Plaintiff and other resident with time out of class, snacks, and computer time. The abuser threatened to get the Plaintiff in trouble if the Plaintiff did not comply with the abuse or if the Plaintiff disclosed the abuse.

iv.    Out of fear of retaliation, punishment, extended confinement, and further abuse, Plaintiff did not report—or was unable to meaningfully report—the sexual misconduct, knowing and believing that any complaints would be unanswered, dismissed, ignored, and buried without investigation or redress, thereby allowing the sexual misconduct to continue unabated. Plaintiff was systematically and repeatedly sexually abused in what was supposed to be a "safe haven" environment—an environment exclusively created, funded, staffed, maintained, and controlled by DEFENDANTS, and each of them. DEFENDANTS had a mandatory, non-delegable duty to protect this child from the very harm they facilitated, enabled, and concealed.

v.    As a direct and proximate result of the sexual abuse perpetrated against her, Plaintiff has suffered and continues to suffer severe, ongoing, and persistent mental, emotional, psychological, and physical injuries, including, but not limited to: anxiety; depression; feelings of helplessness and hopelessness; insomnia and sleep disturbances including nightmares; questioning of sexual identity; profoundly lowered self-esteem; moodiness and emotional dysregulation; difficulty forming and maintaining meaningful interpersonal and intimate relationships; pervasive loss of trust and control issues with persons in positions of authority; flashbacks, intrusive thoughts, and hypervigilance; chronic stress; nervousness; fear; deep embarrassment and shame; and a devastating loss of enjoyment of life, among other injuries.

AV.    John Doe 324051:

i.    Plaintiff John Doe 324051 is a male, born on October 13, 2004, who was sexually abused between the ages of 15 and 16, in or around 2020/2021, while confined

94

COMPLAINT

within the Nevada Juvenile Justice System at the China Spring Youth Camp in Gardnerville, Nevada, and the Nevada Youth Training Center ("NYTC") in Elko, Nevada. At the time of the abuse, Plaintiff was a minor child entrusted to the custody, care, and supervision of the State of Nevada and its agents, employees, and contractors.

ii.     Plaintiff was committed to mandatory physical confinement at the China Spring Youth Camp in Gardnerville, Nevada, and the Nevada Youth Training Center ("NYTC") in Elko, Nevada, where he was placed under the complete custody, dominion, and control of Defendants and DOES 1-500. These Defendants held positions of extraordinary power, trust, and authority over Plaintiff—a vulnerable, confined child with no ability to leave, resist, or seek outside help. Defendants exploited this absolute power imbalance to sexually abuse and harass Plaintiff under color of authority on behalf of DEFENDANTS, and each of them.

iii.     While Plaintiff was confined he was subjected to egregious and predatory sexual abuse on at least one occasion. Plaintiff reported while in an isolation room, the nurse Abuser instructed Plaintiff to remove all of his clothing. The Nurse then proceeded to fondle and masturbate the Plaintiff's penis with both hands while one hand remained ungloved, to the point of ejaculation. Plaintiff was threatened not to speak about the abuse.

iv.     Out of fear of retaliation, punishment, extended confinement, and further abuse, Plaintiff did not report—or was unable to meaningfully report—the sexual misconduct, knowing and believing that any complaints would be unanswered, dismissed, ignored, and buried without investigation or redress, thereby allowing the sexual misconduct to continue unabated. Plaintiff was systematically and repeatedly sexually abused in what was supposed to be a "safe haven" environment—an environment exclusively created, funded, staffed, maintained, and controlled by DEFENDANTS, and each of them. DEFENDANTS had a mandatory, non-delegable duty to protect this child from the very harm they facilitated, enabled, and concealed.

v.     As a direct and proximate result of the sexual abuse perpetrated against him, Plaintiff has suffered and continues to suffer severe, ongoing, and persistent mental,

emotional, psychological, and physical injuries, including, but not limited to: anxiety; depression; feelings of helplessness and hopelessness; insomnia and sleep disturbances including nightmares; questioning of sexual identity; profoundly lowered self-esteem; moodiness and emotional dysregulation; difficulty forming and maintaining meaningful interpersonal and intimate relationships; pervasive loss of trust and control issues with persons in positions of authority; flashbacks, intrusive thoughts, and hypervigilance; chronic stress; nervousness; fear; deep embarrassment and shame; and a devastating loss of enjoyment of life, among other injuries.

AW.   **John Doe 324578:**

i.      Plaintiff John Doe 324578 is a male, born on November 29, 1992, who was sexually abused at just 16 years old, in or around 2008, while confined within the Nevada Juvenile Justice System at the Caliente Youth Center ("CYC") in Caliente, Nevada. At the time of the abuse, Plaintiff was a minor child entrusted to the custody, care, and supervision of the State of Nevada and its agents, employees, and contractors.

ii.     Plaintiff was committed to mandatory physical confinement at the Caliente Youth Center ("CYC") in Caliente, Nevada, where he was placed under the complete custody, dominion, and control of Defendants and DOES 1-500. These Defendants held positions of extraordinary power, trust, and authority over Plaintiff—a vulnerable, confined child with no ability to leave, resist, or seek outside help. Defendants exploited this absolute power imbalance to sexually abuse and harass Plaintiff under color of authority on behalf of DEFENDANTS, and each of them.

iii.    While Plaintiff was confined he was subjected to egregious and predatory sexual abuse on at least one occasion.  The Plaintiff encountered the Abuser while showering. The abuser would enter the shower area and search the Plaintiff while he was nude. He would lift and fondle his penis with ungloved hands. He asked to penetrate the Plaintiff but the Plaintiff was being excessively loud during the incident and made the abuser nervous. The Abuser instead grabbed the Plaintiffs hands and forced him to rub the abusers body and genitals.  He was threatened to have family visits and phone privileges

COMPLAINT

revoked if he told anyone. The Plaintiff recalls spending more time in confinement as he would not go along with the abuse.

iv.    Out of fear of retaliation, punishment, extended confinement, and further abuse, Plaintiff did not report—or was unable to meaningfully report—the sexual misconduct, knowing and believing that any complaints would be unanswered, dismissed, ignored, and buried without investigation or redress, thereby allowing the sexual misconduct to continue unabated. Plaintiff was systematically and repeatedly sexually abused in what was supposed to be a "safe haven" environment—an environment exclusively created, funded, staffed, maintained, and controlled by DEFENDANTS, and each of them. DEFENDANTS had a mandatory, non-delegable duty to protect this child from the very harm they facilitated, enabled, and concealed.

v.    As a direct and proximate result of the sexual abuse perpetrated against him, Plaintiff has suffered and continues to suffer severe, ongoing, and persistent mental, emotional, psychological, and physical injuries, including, but not limited to: anxiety; depression; feelings of helplessness and hopelessness; insomnia and sleep disturbances including nightmares; questioning of sexual identity; profoundly lowered self-esteem; moodiness and emotional dysregulation; difficulty forming and maintaining meaningful interpersonal and intimate relationships; pervasive loss of trust and control issues with persons in positions of authority; flashbacks, intrusive thoughts, and hypervigilance; chronic stress; nervousness; fear; deep embarrassment and shame; and a devastating loss of enjoyment of life, among other injuries.

AX.    **John Doe 324829:**

i.    Plaintiff John Doe 324829 is a male, born on August 25, 1990, who was sexually abused between the ages of 16 years and 17, in or around 2007/2008, while confined within the Nevada Juvenile Justice System at the Nevada Youth Training Center ("NYTC") in Elko, Nevada. At the time of the abuse, Plaintiff was a minor child entrusted to the custody, care, and supervision of the State of Nevada and its agents, employees, and contractors.

COMPLAINT

ii.    Plaintiff was committed to mandatory physical confinement at the Nevada Youth Training Center ("NYTC") in Elko, Nevada, where he was placed under the complete custody, dominion, and control of Defendants and DOES 1-500. These Defendants held positions of extraordinary power, trust, and authority over Plaintiff—a vulnerable, confined child with no ability to leave, resist, or seek outside help. Defendants exploited this absolute power imbalance to sexually abuse and harass Plaintiff under color of authority on behalf of DEFENDANTS, and each of them.

iii.    While Plaintiff was confined he was subjected to egregious and predatory sexual abuse on at least 5+, over a period of approximately 9 months. On multiple occurrences in the dormitory, the abuser approached Plaintiff in his cell, where she would forcefully kiss Plaintiff and proceed to fondle Plaintiff's penis from under his clothing with her bare hands. During another separate occurrence, in Plaintiff's dormitory, the abuser performed oral copulation on Plaintiff's penis. After the abuse, the abuser forced Plaintiff to perform oral sex on the Abuser's vagina.  On one occasion, Plaintiff was escorted out of his dormitory and transferred to the Abuser's home. In the Abuser's bedroom, the Abuser instructed Plaintiff to remove his clothing. The abuser threatened Plaintiff that if he did not comply, his sentence would be extended to the age of 18 years old. Following this, the abuser pulled down her pants and next instructed Plaintiff to penetrate her with his penis. Plaintiff recalls the Abuser did not provide any condoms or protection, as the abuser stated, due to her age, she was no longer able to get pregnant.

iv.    Out of fear of retaliation, punishment, extended confinement, and further abuse, Plaintiff did not report—or was unable to meaningfully report—the sexual misconduct, knowing and believing that any complaints would be unanswered, dismissed, ignored, and buried without investigation or redress, thereby allowing the sexual misconduct to continue unabated. Plaintiff was systematically and repeatedly sexually abused in what was supposed to be a "safe haven" environment—an environment exclusively created, funded, staffed, maintained, and controlled by DEFENDANTS, and

COMPLAINT

each of them. DEFENDANTS had a mandatory, non-delegable duty to protect this child from the very harm they facilitated, enabled, and concealed.

v.       As a direct and proximate result of the sexual abuse perpetrated against him, Plaintiff has suffered and continues to suffer severe, ongoing, and persistent mental, emotional, psychological, and physical injuries, including, but not limited to: anxiety; depression; feelings of helplessness and hopelessness; insomnia and sleep disturbances including nightmares; questioning of sexual identity; profoundly lowered self-esteem; moodiness and emotional dysregulation; difficulty forming and maintaining meaningful interpersonal and intimate relationships; pervasive loss of trust and control issues with persons in positions of authority; flashbacks, intrusive thoughts, and hypervigilance; chronic stress; nervousness; fear; deep embarrassment and shame; and a devastating loss of enjoyment of life, among other injuries.

AY.    **John Doe 324953:**

i.       Plaintiff John Doe 324953 is a male, born on July 19, 1988, who was sexually abused at just 17 years old, in or around 2006, while confined within the Nevada Juvenile Justice System at the Nevada Youth Training Center ("NYTC") in Elko, Nevada. At the time of the abuse, Plaintiff was a minor child entrusted to the custody, care, and supervision of the State of Nevada and its agents, employees, and contractors.

ii.      Plaintiff was committed to mandatory physical confinement at the Nevada Youth Training Center ("NYTC") in Elko, Nevada, where he was placed under the complete custody, dominion, and control of Defendants and DOES 1-500. These Defendants held positions of extraordinary power, trust, and authority over Plaintiff—a vulnerable, confined child with no ability to leave, resist, or seek outside help. Defendants exploited this absolute power imbalance to sexually abuse and harass Plaintiff under color of authority on behalf of DEFENDANTS, and each of them.

iii.     While Plaintiff was confined he was subjected to egregious and predatory sexual abuse on at least 112 occasions, over a period of approximately 7 months. On multiple occasions, Abuser MR. RILEY would escort Plaintiff into the dorm bathroom for

a random search. MR. RILEY would instruct Plaintiff to undress, approach Plaintiff, and proceed to masturbate him with bare hands. MR. RILEY would simultaneously digitally penetrate Plaintiff's rectum. MR. RILEY threatened Plaintiff with a longer residency and physical harm if he reported the abuse.

iv.    Out of fear of retaliation, punishment, extended confinement, and further abuse, Plaintiff did not report—or was unable to meaningfully report—the sexual misconduct, knowing and believing that any complaints would be unanswered, dismissed, ignored, and buried without investigation or redress, thereby allowing the sexual misconduct to continue unabated. Plaintiff was systematically and repeatedly sexually abused in what was supposed to be a "safe haven" environment—an environment exclusively created, funded, staffed, maintained, and controlled by DEFENDANTS, and each of them. DEFENDANTS had a mandatory, non-delegable duty to protect this child from the very harm they facilitated, enabled, and concealed.

v.    As a direct and proximate result of the sexual abuse perpetrated against him, Plaintiff has suffered and continues to suffer severe, ongoing, and persistent mental, emotional, psychological, and physical injuries, including, but not limited to: anxiety; depression; feelings of helplessness and hopelessness; insomnia and sleep disturbances including nightmares; questioning of sexual identity; profoundly lowered self-esteem; moodiness and emotional dysregulation; difficulty forming and maintaining meaningful interpersonal and intimate relationships; pervasive loss of trust and control issues with persons in positions of authority; flashbacks, intrusive thoughts, and hypervigilance; chronic stress; nervousness; fear; deep embarrassment and shame; and a devastating loss of enjoyment of life, among other injuries.

AZ.    **John Doe 325673:**

i.    Plaintiff John Doe 325673 is a male, born on November 15, 1997, who was sexually abused at just 17 years old, in or around 2014, while confined within the Nevada Juvenile Justice System at the Caliente Youth Center ("CYC") in Caliente, Nevada. At the

COMPLAINT

time of the abuse, Plaintiff was a minor child entrusted to the custody, care, and supervision of the State of Nevada and its agents, employees, and contractors.

ii.     Plaintiff was committed to mandatory physical confinement at the Caliente Youth Center ("CYC") in Caliente, Nevada, where he was placed under the complete custody, dominion, and control of Defendants and DOES 1-500. These Defendants held positions of extraordinary power, trust, and authority over Plaintiff—a vulnerable, confined child with no ability to leave, resist, or seek outside help. Defendants exploited this absolute power imbalance to sexually abuse and harass Plaintiff under color of authority on behalf of DEFENDANTS, and each of them.

iii.    While Plaintiff was confined, he was subjected to egregious and predatory sexual abuse. The Plaintiff had met the abuser when he was seeking medical attention for a headache. A few weeks later, the abuser requested that the Plaintiff return for a physical. During the physical, the Plaintiff was instructed to remove his clothing. The Plaintiff's genitals were fondled during the physical for several minutes.

iv.    Out of fear of retaliation, punishment, extended confinement, and further abuse, Plaintiff did not report—or was unable to meaningfully report—the sexual misconduct, knowing and believing that any complaints would be unanswered, dismissed, ignored, and buried without investigation or redress, thereby allowing the sexual misconduct to continue unabated. Plaintiff was systematically and repeatedly sexually abused in what was supposed to be a "safe haven" environment—an environment exclusively created, funded, staffed, maintained, and controlled by DEFENDANTS, and each of them. DEFENDANTS had a mandatory, non-delegable duty to protect this child from the very harm they facilitated, enabled, and concealed.

v.     As a direct and proximate result of the sexual abuse perpetrated against him, Plaintiff has suffered and continues to suffer severe, ongoing, and persistent mental, emotional, psychological, and physical injuries, including, but not limited to: anxiety; depression; feelings of helplessness and hopelessness; insomnia and sleep disturbances including nightmares; questioning of sexual identity; profoundly lowered self-esteem;

COMPLAINT

moodiness and emotional dysregulation; difficulty forming and maintaining meaningful interpersonal and intimate relationships; pervasive loss of trust and control issues with persons in positions of authority; flashbacks, intrusive thoughts, and hypervigilance; chronic stress; nervousness; fear; deep embarrassment and shame; and a devastating loss of enjoyment of life, among other injuries.

BA.    **John Doe 326482:**

i.      Plaintiff John Doe 326482 is a male, born on June 07, 1992, who was sexually abused between the ages of 16 and 17, in or around 2008, while confined within the Nevada Juvenile Justice System at the Nevada Youth Training Center ("NYTC") in Elko, Nevada. At the time of the abuse, Plaintiff was a minor child entrusted to the custody, care, and supervision of the State of Nevada and its agents, employees, and contractors.

ii.     Plaintiff was committed to mandatory physical confinement at the Nevada Youth Training Center ("NYTC") in Elko, Nevada, where he was placed under the complete custody, dominion, and control of Defendants and DOES 1-500. These Defendants held positions of extraordinary power, trust, and authority over Plaintiff—a vulnerable, confined child with no ability to leave, resist, or seek outside help. Defendants exploited this absolute power imbalance to sexually abuse and harass Plaintiff under color of authority on behalf of DEFENDANTS, and each of them.

iii.    While Plaintiff was confined, he was subjected to egregious and predatory sexual abuse on approximately 9 occasions. Each occasion took place within the multipurpose room. The abuser MRS. SMITH would instruct Plaintiff to remove his own clothing, and Plaintiff expressed that Plaintiff did remove Plaintiff's own clothing during occasions of sexual abuse. The abuser performed oral copulation on Plaintiff and forced Plaintiff to vaginally penetrate the abuser with Plaintiff's penis.   The abuser also forced Plaintiff to grope the abuser's breasts both over the abuser's clothing as well as inside of the abuser's shirt, forcing Plaintiff to make skin-to-skin contact with the abuser's breasts. Plaintiff expressed that each occasion of sexual abuse lasted for approximately 20 minutes.

Separate and apart, Abuser 2, MISS BOMBGONNER, removed Plaintiff's clothing in the multipurpose room, as well as instructed Plaintiff to remove Plaintiff's own clothing. The abuser forced Plaintiff to grope the abuser's breasts over the abuser's clothing and forced Plaintiff to perform oral copulation onto the abuser. The abuser also performed oral copulation on Plaintiff and raped him. Each occasion of sexual abuse lasted for approximately 20-30 minutes. Plaintiff expressed that both of the abusers bribed Plaintiff with outside snacks from Smith's Grocery store.

iv.     Out of fear of retaliation, punishment, extended confinement, and further abuse, Plaintiff did not report—or was unable to meaningfully report—the sexual misconduct, knowing and believing that any complaints would be unanswered, dismissed, ignored, and buried without investigation or redress, thereby allowing the sexual misconduct to continue unabated. Plaintiff was systematically and repeatedly sexually abused in what was supposed to be a "safe haven" environment—an environment exclusively created, funded, staffed, maintained, and controlled by DEFENDANTS, and each of them. DEFENDANTS had a mandatory, non-delegable duty to protect this child from the very harm they facilitated, enabled, and concealed.

v.      As a direct and proximate result of the sexual abuse perpetrated against him, Plaintiff has suffered and continues to suffer severe, ongoing, and persistent mental, emotional, psychological, and physical injuries, including, but not limited to: anxiety; depression; feelings of helplessness and hopelessness; insomnia and sleep disturbances including nightmares; questioning of sexual identity; profoundly lowered self-esteem; moodiness and emotional dysregulation; difficulty forming and maintaining meaningful interpersonal and intimate relationships; pervasive loss of trust and control issues with persons in positions of authority; flashbacks, intrusive thoughts, and hypervigilance; chronic stress; nervousness; fear; deep embarrassment and shame; and a devastating loss of enjoyment of life, among other injuries.

///

///

COMPLAINT

BB. **John Doe 326531:**

i. Plaintiff John Doe 326531 is a male, born on January 25, 1989, who was sexually abused at just 15 years old, in or around 2004, while confined within the Nevada Juvenile Justice System at the Caliente Youth Center ("CYC") in Caliente, Nevada. At the time of the abuse, Plaintiff was a minor child entrusted to the custody, care, and supervision of the State of Nevada and its agents, employees, and contractors.

ii. Plaintiff was committed to mandatory physical confinement at the Caliente Youth Center ("CYC") in Caliente, Nevada, where he was placed under the complete custody, dominion, and control of Defendants and DOES 1-500. These Defendants held positions of extraordinary power, trust, and authority over Plaintiff—a vulnerable, confined child with no ability to leave, resist, or seek outside help. Defendants exploited this absolute power imbalance to sexually abuse and harass Plaintiff under color of authority on behalf of DEFENDANTS, and each of them.

iii. While Plaintiff was confined he was subjected to egregious and predatory sexual abuse. Abuser sexually abused Plaintiff while the two of them were alone in their cell. Abuser put his bare hands down Plaintiff's pants and grabbed Plaintiff's penis to see if Plaintiff would be aroused. Abuser threatened Plaintiff not to tell anyone. No gloves were worn during this time. The Plaintiff reported that abuse to a staff and after it was reported, the Abuser retaliated by physically assaulting Plaintiff. Abuser was removed shortly after the physical assault.

iv. Out of fear of retaliation, punishment, extended confinement, and further abuse, Plaintiff did not report—or was unable to meaningfully report—the sexual misconduct, knowing and believing that any complaints would be unanswered, dismissed, ignored, and buried without investigation or redress, thereby allowing the sexual misconduct to continue unabated. Plaintiff was systematically and repeatedly sexually abused in what was supposed to be a "safe haven" environment—an environment exclusively created, funded, staffed, maintained, and controlled by DEFENDANTS, and

COMPLAINT

each of them. DEFENDANTS had a mandatory, non-delegable duty to protect this child from the very harm they facilitated, enabled, and concealed.

v.    As a direct and proximate result of the sexual abuse perpetrated against him, Plaintiff has suffered and continues to suffer severe, ongoing, and persistent mental, emotional, psychological, and physical injuries, including, but not limited to: anxiety; depression; feelings of helplessness and hopelessness; insomnia and sleep disturbances including nightmares; questioning of sexual identity; profoundly lowered self-esteem; moodiness and emotional dysregulation; difficulty forming and maintaining meaningful interpersonal and intimate relationships; pervasive loss of trust and control issues with persons in positions of authority; flashbacks, intrusive thoughts, and hypervigilance; chronic stress; nervousness; fear; deep embarrassment and shame; and a devastating loss of enjoyment of life, among other injuries.

BC.    **John Doe 327053:**

i.    Plaintiff John Doe 327053 is a male, born on June 07, 1991, who was sexually abused at just 15 years old, in or around 2006, while confined within the Nevada Juvenile Justice System at the Nevada Youth Training Center ("NYTC") in Elko, Nevada. At the time of the abuse, Plaintiff was a minor child entrusted to the custody, care, and supervision of the State of Nevada and its agents, employees, and contractors.

ii.    Plaintiff was committed to mandatory physical confinement at the Nevada Youth Training Center ("NYTC") in Elko, Nevada, where he was placed under the complete custody, dominion, and control of Defendants and DOES 1-500. These Defendants held positions of extraordinary power, trust, and authority over Plaintiff, a vulnerable, confined child with no ability to leave, resist, or seek outside help. Defendants exploited this absolute power imbalance to sexually abuse and harass Plaintiff under color of authority on behalf of DEFENDANTS, and each of them.

iii.    While Plaintiff was confined, he was subjected to egregious and predatory sexual abuse.  The Plaintiff was in his dorm room getting dressed after a shower. The abuser entered his room as he was still naked and began making sexual comments about

the Plaintiff's body and looks. He approached the Plaintiff and grabbed his bare penis and began masturbating him.

iv.     Out of fear of retaliation, punishment, extended confinement, and further abuse, Plaintiff did not report—or was unable to meaningfully report—the sexual misconduct, knowing and believing that any complaints would be unanswered, dismissed, ignored, and buried without investigation or redress, thereby allowing the sexual misconduct to continue unabated. Plaintiff was systematically and repeatedly sexually abused in what was supposed to be a "safe haven" environment—an environment exclusively created, funded, staffed, maintained, and controlled by DEFENDANTS, and each of them. DEFENDANTS had a mandatory, non-delegable duty to protect this child from the very harm they facilitated, enabled, and concealed.

v.     As a direct and proximate result of the sexual abuse perpetrated against him, Plaintiff has suffered and continues to suffer severe, ongoing, and persistent mental, emotional, psychological, and physical injuries, including, but not limited to: anxiety; depression; feelings of helplessness and hopelessness; insomnia and sleep disturbances including nightmares; questioning of sexual identity; profoundly lowered self-esteem; moodiness and emotional dysregulation; difficulty forming and maintaining meaningful interpersonal and intimate relationships; pervasive loss of trust and control issues with persons in positions of authority; flashbacks, intrusive thoughts, and hypervigilance; chronic stress; nervousness; fear; deep embarrassment and shame; and a devastating loss of enjoyment of life, among other injuries.

BD.   **John Doe 327328:**

i.     Plaintiff John Doe 327328 is a male, born on June 02, 1991, who was sexually abused between the ages of 2005 and 14, in or around 2005, while confined within the Nevada Juvenile Justice System at the Nevada Youth Training Center ("NYTC") in Elko, Nevada. At the time of the abuse, Plaintiff was a minor child entrusted to the custody, care, and supervision of the State of Nevada and its agents, employees, and contractors.

106

COMPLAINT

ii.      Plaintiff was committed to mandatory physical confinement at the Nevada Youth Training Center ("NYTC") in Elko, Nevada, where he was placed under the complete custody, dominion, and control of Defendants and DOES 1-500. These Defendants held positions of extraordinary power, trust, and authority over Plaintiff, a vulnerable, confined child with no ability to leave, resist, or seek outside help. Defendants exploited this absolute power imbalance to sexually abuse and harass Plaintiff under color of authority on behalf of DEFENDANTS, and each of them.

iii.      While Plaintiff was confined he was subjected to egregious and predatory sexual abuse on at least 2 separate occasions.  The incidents of abuse occurred in the sports room outside of the Forrester cottage. The abuser MS. JENKINS brought the Plaintiff to the room and forced her hand down the Plaintiff's pants. The abuser fondled the Plaintiff's penis for a few moments.  Abuser 2: MR. MCGRORY approached the Plaintiff while the Plaintiff was in the shower area. The abuser 2 digitally penetrated the Plaintiff's anus. This incident of abuse occurred once. The Plaintiff identified another staff member, "MR. SMITH," who would bribe the Plaintiff with chewing tobacco and video games to prevent the Plaintiff from disclosing the abuse. Mr. Smith would also physically assault the Plaintiff, punching him in the stomach multiple times and hitting the Plaintiff in the face. The Plaintiff suffered a black eye due to the physical abuse from Mr. Smith.

iv.      Out of fear of retaliation, punishment, extended confinement, and further abuse, Plaintiff did not report—or was unable to meaningfully report—the sexual misconduct, knowing and believing that any complaints would be unanswered, dismissed, ignored, and buried without investigation or redress, thereby allowing the sexual misconduct to continue unabated. Plaintiff was systematically and repeatedly sexually abused in what was supposed to be a "safe haven" environment—an environment exclusively created, funded, staffed, maintained, and controlled by DEFENDANTS, and each of them. DEFENDANTS had a mandatory, non-delegable duty to protect this child from the very harm they facilitated, enabled, and concealed.

COMPLAINT

v.    As a direct and proximate result of the sexual abuse perpetrated against him, Plaintiff has suffered and continues to suffer severe, ongoing, and persistent mental, emotional, psychological, and physical injuries, including, but not limited to: anxiety; depression; feelings of helplessness and hopelessness; insomnia and sleep disturbances including nightmares; questioning of sexual identity; profoundly lowered self-esteem; moodiness and emotional dysregulation; difficulty forming and maintaining meaningful interpersonal and intimate relationships; pervasive loss of trust and control issues with persons in positions of authority; flashbacks, intrusive thoughts, and hypervigilance; chronic stress; nervousness; fear; deep embarrassment and shame; and a devastating loss of enjoyment of life, among other injuries.

BE.    **John Doe 327700:**

i.    Plaintiff John Doe 327700 is a male, born on May 10, 1988, who was sexually abused at just 17 years old, in or around 2005, while confined within the Nevada Juvenile Justice System at the Nevada Youth Training Center ("NYTC") in Elko, Nevada. At the time of the abuse, Plaintiff was a minor child entrusted to the custody, care, and supervision of the State of Nevada and its agents, employees, and contractors.

ii.    Plaintiff was committed to mandatory physical confinement at the Nevada Youth Training Center ("NYTC") in Elko, Nevada, where he was placed under the complete custody, dominion, and control of Defendants and DOES 1-500. These Defendants held positions of extraordinary power, trust, and authority over Plaintiff—a vulnerable, confined child with no ability to leave, resist, or seek outside help. Defendants exploited this absolute power imbalance to sexually abuse and harass Plaintiff under color of authority on behalf of DEFENDANTS, and each of them.

iii.    While Plaintiff was confined, he was subjected to egregious and predatory sexual abuse on at least 3 separate occasions.  Prior to the first physical incident of sexual abuse, the abuse began by making sexual comments to the Plaintiff. The abuser would whisper in the Plaintiff's ear, calling him things such as "fine" and "cute". During the incidents of abuse, the abuser would bring the Plaintiff to the entrance room or a room to

COMPLAINT

the side of the recreational room. The abuser would instruct the Plaintiff to remove his clothing, claiming he was conducting a strip search. The abuser would grope the Plaintiff's buttocks before digitally penetrating the Plaintiff's anus. The abuser would grab the Plaintiff's arm aggressively during the abuse, causing the Plaintiff to be too fearful to attempt to resist. The abuser would tell the Plaintiff that if he complied with the abuse, the abuser would "take care" of the Plaintiff once he was released from the facility. The abuser would offer to help the Plaintiff financially if he would meet up with the abuser outside of the facility.

iv.    Out of fear of retaliation, punishment, extended confinement, and further abuse, Plaintiff did not report—or was unable to meaningfully report—the sexual misconduct, knowing and believing that any complaints would be unanswered, dismissed, ignored, and buried without investigation or redress, thereby allowing the sexual misconduct to continue unabated. Plaintiff was systematically and repeatedly sexually abused in what was supposed to be a "safe haven" environment—an environment exclusively created, funded, staffed, maintained, and controlled by DEFENDANTS, and each of them. DEFENDANTS had a mandatory, non-delegable duty to protect this child from the very harm they facilitated, enabled, and concealed.

v.    As a direct and proximate result of the sexual abuse perpetrated against him, Plaintiff has suffered and continues to suffer severe, ongoing, and persistent mental, emotional, psychological, and physical injuries, including, but not limited to: anxiety; depression; feelings of helplessness and hopelessness; insomnia and sleep disturbances including nightmares; questioning of sexual identity; profoundly lowered self-esteem; moodiness and emotional dysregulation; difficulty forming and maintaining meaningful interpersonal and intimate relationships; pervasive loss of trust and control issues with persons in positions of authority; flashbacks, intrusive thoughts, and hypervigilance; chronic stress; nervousness; fear; deep embarrassment and shame; and a devastating loss of enjoyment of life, among other injuries.

/ / /

COMPLAINT

BF.   **John Doe 328315:**

i.   Plaintiff John Doe 328315 is a male, born on April 11, 2005, who was sexually abused at just 17 years old, in or around 2022, while confined within the Nevada Juvenile Justice System at the Nevada Youth Training Center ("NYTC") in Elko, Nevada. At the time of the abuse, Plaintiff was a minor child entrusted to the custody, care, and supervision of the State of Nevada and its agents, employees, and contractors.

ii.   Plaintiff was committed to mandatory physical confinement at the Nevada Youth Training Center ("NYTC") in Elko, Nevada, where he was placed under the complete custody, dominion, and control of Defendants and DOES 1-500. These Defendants held positions of extraordinary power, trust, and authority over Plaintiff—a vulnerable, confined child with no ability to leave, resist, or seek outside help. Defendants exploited this absolute power imbalance to sexually abuse and harass Plaintiff under color of authority on behalf of DEFENDANTS, and each of them.

iii.   While Plaintiff was confined, he was subjected to egregious and predatory sexual abuse on at least 2 separate occasions. Prior to the first instance of abuse, the Plaintiff states the Abuser was "flirty" with himself and other residents of the facility. On the first instance of abuse, the Abuser told the Plaintiff she wanted to speak with him and escorted him to the side room where the shoes were held. The Abuser began asking the Plaintiff questions related to his past sexual experiences. The Abuser then instructed the Plaintiff to fondle her breasts. The Plaintiff complied and fondled the abuser's breasts for a few minutes. The second instance occurred similarly. The Plaintiff was escorted to the side room again and was instructed to fondle the abuser's breasts. The Abuser also instructed the Plaintiff to remove his bottoms and she performed oral copulation on him until the point of ejaculation, in her mouth.  The Plaintiff states that between instances of abuse, he was bribed with snacks and candy. When the Plaintiff was released from this facility, the Abuser also gave the Plaintiff a pair of high-value sneakers. The Plaintiff believes other residents were abused similarly due to observing similar behaviors between

the Abuser and other residents, but was not explicitly told about this abuse from another resident.

iv.      Out of fear of retaliation, punishment, extended confinement, and further abuse, Plaintiff did not report—or was unable to meaningfully report—the sexual misconduct, knowing and believing that any complaints would be unanswered, dismissed, ignored, and buried without investigation or redress, thereby allowing the sexual misconduct to continue unabated. Plaintiff was systematically and repeatedly sexually abused in what was supposed to be a "safe haven" environment—an environment exclusively created, funded, staffed, maintained, and controlled by DEFENDANTS, and each of them. DEFENDANTS had a mandatory, non-delegable duty to protect this child from the very harm they facilitated, enabled, and concealed.

v.      As a direct and proximate result of the sexual abuse perpetrated against him, Plaintiff has suffered and continues to suffer severe, ongoing, and persistent mental, emotional, psychological, and physical injuries, including, but not limited to: anxiety; depression; feelings of helplessness and hopelessness; insomnia and sleep disturbances including nightmares; questioning of sexual identity; profoundly lowered self-esteem; moodiness and emotional dysregulation; difficulty forming and maintaining meaningful interpersonal and intimate relationships; pervasive loss of trust and control issues with persons in positions of authority; flashbacks, intrusive thoughts, and hypervigilance; chronic stress; nervousness; fear; deep embarrassment and shame; and a devastating loss of enjoyment of life, among other injuries.

BG.      **John Doe 328319:**

i.      Plaintiff John Doe 328319 is a male, born on December 22, 1988, who was sexually abused at just Nevada Youth age 16.  Caliente age 13. years old, in or around Nevada Youth abuse was in 2004.  At Caliente abuse was in 2001., while confined within the Nevada Juvenile Justice System at the Nevada Youth Training Center ("NYTC") in Elko, Nevada, and the Caliente Youth Center ("CYC") in Caliente, Nevada. At the time

of the abuse, Plaintiff was a minor child entrusted to the custody, care, and supervision of the State of Nevada and its agents, employees, and contractors.

ii.     Plaintiff was committed to mandatory physical confinement at the Nevada Youth Training Center ("NYTC") in Elko, Nevada, and the Caliente Youth Center ("CYC") in Caliente, Nevada, where he was placed under the complete custody, dominion, and control of Defendants and DOES 1-500. These Defendants held positions of extraordinary power, trust, and authority over Plaintiff—a vulnerable, confined child with no ability to leave, resist, or seek outside help. Defendants exploited this absolute power imbalance to sexually abuse and harass Plaintiff under color of authority on behalf of DEFENDANTS, and each of them.

iii.    While Plaintiff was confined, he was subjected to egregious and predatory sexual abuse.  The Plaintiff was exhibiting behaviors in the classroom. Abuser 1 MR. SCHUABB went to the classroom to assist. Abuser 1 escorted the Plaintiff out and pinned him to the floor using his body. The Plaintiff felt the Abuser penetrate his rectum with his finger through his clothing as he yelled out, trying to squirm away. Another guard came to assist. The Plaintiff was handcuffed and returned to his room to calm down. Following, during physical inspection, Abuser 2, MR. SCHMITTY, reached inside the Plaintiff's pants and began fondling and groping his penis, calling him names, taunting and making fun of him. Abuser 2 made a fist with his other hand, waved it in the Plaintiff's face, saying, "You like that, don't you, you fucking sissy?" The Plaintiff feared he was about to be physically assaulted. Abuser 2 continued fondling the Plaintiff in a sexual manner that resembled masturbation. During additional instances, Abuser 2 attempted to force the Plaintiff's head down toward his genitals. When the Plaintiff resisted and refused, Abuser 2 forcibly continued masturbating him, causing an erection. Abuser 2 ridiculed the Plaintiff, calling him a faggot to degrade him. Abuser 2 threatened the Plaintiff, telling him that no one would believe him, that he would never leave the unit, and that he belonged to the Abuser. Threats continued as Abuser 2 told the Plaintiff he'd be denied recreation time and not be permitted to participate in activities. There were 10 instances

112

COMPLAINT

of abuse. Following, at Caliente, when the family came to visit, Abuser 3, MR. LUCHASEE, made a disturbing comment that it was a matter of time before he raped his own sister. The Plaintiff became visibly upset and swung at Abuser 3, prompting Abuser 3 to punch him in the face, slam him to the floor, and choked him with his arm. Abuser 3 then got on the Plaintiff's back and began thrusting his hips in a sexual manner against the Plaintiff's buttocks. The Plaintiff clearly perceived this behavior as sexual in nature. Following this incident, the Plaintiff was then moved to a different cottage. He filed a report, however, his claim was denied.

iv.     Out of fear of retaliation, punishment, extended confinement, and further abuse, Plaintiff did not report—or was unable to meaningfully report—the sexual misconduct, knowing and believing that any complaints would be unanswered, dismissed, ignored, and buried without investigation or redress, thereby allowing the sexual misconduct to continue unabated. Plaintiff was systematically and repeatedly sexually abused in what was supposed to be a "safe haven" environment—an environment exclusively created, funded, staffed, maintained, and controlled by DEFENDANTS, and each of them. DEFENDANTS had a mandatory, non-delegable duty to protect this child from the very harm they facilitated, enabled, and concealed.

v.     As a direct and proximate result of the sexual abuse perpetrated against him, Plaintiff has suffered and continues to suffer severe, ongoing, and persistent mental, emotional, psychological, and physical injuries, including, but not limited to: anxiety; depression; feelings of helplessness and hopelessness; insomnia and sleep disturbances including nightmares; questioning of sexual identity; profoundly lowered self-esteem; moodiness and emotional dysregulation; difficulty forming and maintaining meaningful interpersonal and intimate relationships; pervasive loss of trust and control issues with persons in positions of authority; flashbacks, intrusive thoughts, and hypervigilance; chronic stress; nervousness; fear; deep embarrassment and shame; and a devastating loss of enjoyment of life, among other injuries.

///

113

COMPLAINT

BH.   **John Doe 328380:**

i.      Plaintiff is a male, born on December 23, 1991, who was sexually abused at just 15 years old, in or around 2006, while confined within the Nevada Juvenile Justice System at the Nevada Youth Training Center ("NYTC") in Elko, Nevada. At the time of the abuse, Plaintiff was a minor child entrusted to the custody, care, and supervision of the State of Nevada and its agents, employees, and contractors.

ii.      Plaintiff was committed to mandatory physical confinement at the Nevada Youth Training Center ("NYTC") in Elko, Nevada, where he was placed under the complete custody, dominion, and control of Defendants and DOES 1-500. These Defendants held positions of extraordinary power, trust, and authority over Plaintiff—a vulnerable, confined child with no ability to leave, resist, or seek outside help. Defendants exploited this absolute power imbalance to sexually abuse and harass Plaintiff under color of authority on behalf of DEFENDANTS, and each of them.

iii.      While Plaintiff was confined he was subjected to egregious and predatory sexual abuse on at least 3 separate occasions. The Abuser would bring the Plaintiff to an unoccupied dorm claiming the Plaintiff needed to clean the dorm. Once inside the abuser would instruct the Plaintiff to remove his clothing. The abuser would masturbate the Plaintiff and perform oral copulation until the point of ejaculation. The abuser would threaten the Plaintiff with an extended sentence if he were to disclose the abuse.

iv.      Out of fear of retaliation, punishment, extended confinement, and further abuse, Plaintiff did not report—or was unable to meaningfully report—the sexual misconduct, knowing and believing that any complaints would be unanswered, dismissed, ignored, and buried without investigation or redress, thereby allowing the sexual misconduct to continue unabated. Plaintiff was systematically and repeatedly sexually abused in what was supposed to be a "safe haven" environment—an environment exclusively created, funded, staffed, maintained, and controlled by DEFENDANTS, and each of them. DEFENDANTS had a mandatory, non-delegable duty to protect this child from the very harm they facilitated, enabled, and concealed.

COMPLAINT

v.       As a direct and proximate result of the sexual abuse perpetrated against him, Plaintiff has suffered and continues to suffer severe, ongoing, and persistent mental, emotional, psychological, and physical injuries, including, but not limited to: anxiety; depression; feelings of helplessness and hopelessness; insomnia and sleep disturbances including nightmares; questioning of sexual identity; profoundly lowered self-esteem; moodiness and emotional dysregulation; difficulty forming and maintaining meaningful interpersonal and intimate relationships; pervasive loss of trust and control issues with persons in positions of authority; flashbacks, intrusive thoughts, and hypervigilance; chronic stress; nervousness; fear; deep embarrassment and shame; and a devastating loss of enjoyment of life, among other injuries.

BI.    **John Doe 328383:**

i.       Plaintiff John Doe 328383 is a male, born on June 16, 2001, who was sexually abused between the ages of 14 and 16, in or around 2015, while confined within the Nevada Juvenile Justice System at the Nevada Youth Training Center ("NYTC") in Elko, Nevada. At the time of the abuse, Plaintiff was a minor child entrusted to the custody, care, and supervision of the State of Nevada and its agents, employees, and contractors.

ii.      Plaintiff was committed to mandatory physical confinement at the Nevada Youth Training Center ("NYTC") in Elko, Nevada, where he was placed under the complete custody, dominion, and control of Defendants and DOES 1-500. These Defendants held positions of extraordinary power, trust, and authority over Plaintiff—a vulnerable, confined child with no ability to leave, resist, or seek outside help. Defendants exploited this absolute power imbalance to sexually abuse and harass Plaintiff under color of authority on behalf of DEFENDANTS, and each of them.

iii.     While Plaintiff was confined he was subjected to egregious and predatory sexual abuse on at least 15 separate occasions, over a period of approximately 18 months.

Plaintiff stated he was in the temporary shelter room. He was negative in points for behavior.  The Abuser approached Plaintiff and told him to remove his penis from his

pants. The Abuser fondled his penis and forced Plaintiff to masturbate him in return. The Abuser then forcibly performed oral copulation on Plaintiff until the point of ejaculation. The Abuser digitally penetrated Plaintiff's anus in the last two incidents of abuse. The Abuser did give Plaintiff more points in exchange for the sexual abuse occurring. The abuse occurred in 8 incidents. In Elko, Abuser 2 was his coach and staff member who supervised him. Plaintiff ran track for the facility, and they would go off campus for tournaments or meets. The abuser approached Plaintiff and began kissing his mouth. She fondled his penis underneath his pants and then performed oral copulation until he was erect. Plaintiff was forced to grope Abuser 2's breasts and fondled her vaginally. Plaintiff was forced to penetrate the abuser with his penis. He was not allowed to wear a condom and would ejaculate on her body. The Abuser would bring Plaintiff money, clothes, snacks, food, and would allow general extra privileges in exchange for the abuse. The abuse incidents occurred in 7 incidents.  Plaintiff was verbally intimidated that he would never be allowed to go home if he was noncompliant. The Abuser further exploited Plaintiff by offering inducements such as food, snacks, and clothing.

iv.      Out of fear of retaliation, punishment, extended confinement, and further abuse, Plaintiff did not report—or was unable to meaningfully report—the sexual misconduct, knowing and believing that any complaints would be unanswered, dismissed, ignored, and buried without investigation or redress, thereby allowing the sexual misconduct to continue unabated. Plaintiff was systematically and repeatedly sexually abused in what was supposed to be a "safe haven" environment—an environment exclusively created, funded, staffed, maintained, and controlled by DEFENDANTS, and each of them. DEFENDANTS had a mandatory, non-delegable duty to protect this child from the very harm they facilitated, enabled, and concealed.

v.      As a direct and proximate result of the sexual abuse perpetrated against him, Plaintiff has suffered and continues to suffer severe, ongoing, and persistent mental, emotional, psychological, and physical injuries, including, but not limited to: anxiety; depression; feelings of helplessness and hopelessness; insomnia and sleep disturbances

COMPLAINT

including nightmares; questioning of sexual identity; profoundly lowered self-esteem; moodiness and emotional dysregulation; difficulty forming and maintaining meaningful interpersonal and intimate relationships; pervasive loss of trust and control issues with persons in positions of authority; flashbacks, intrusive thoughts, and hypervigilance; chronic stress; nervousness; fear; deep embarrassment and shame; and a devastating loss of enjoyment of life, among other injuries.

BJ.    **John Doe 328527:**

i.    Plaintiff John Doe 328527 is a male, born on January 22, 1992, who was sexually abused between the ages of 16 and 17, in or around 2008-2009, while confined within the Nevada Juvenile Justice System at the Nevada Youth Training Center ("NYTC") in Elko, Nevada. At the time of the abuse, Plaintiff was a minor child entrusted to the custody, care, and supervision of the State of Nevada and its agents, employees, and contractors.

ii.    Plaintiff was committed to mandatory physical confinement at the Nevada Youth Training Center ("NYTC") in Elko, Nevada, where he was placed under the complete custody, dominion, and control of Defendants and DOES 1-500. These Defendants held positions of extraordinary power, trust, and authority over Plaintiff, a vulnerable, confined child with no ability to leave, resist, or seek outside help. Defendants exploited this absolute power imbalance to sexually abuse and harass Plaintiff under color of authority on behalf of DEFENDANTS, and each of them.

iii.    While Plaintiff was confined, he was subjected to egregious and predatory sexual abuse on at least 140 times, over a period of approximately 14 months. Plaintiff was in the tool shed next to the bird farm in an isolated part of the facility. Plaintiff was making an unauthorized phone call, and Abuser caught Plaintiff in the isolated area and told Plaintiff to remove all his clothing. Abuser began masturbating Plaintiff's penis while Abuser was masturbating himself with his other hand. Abuser would also spread Plaintiff's buttocks open and rub his fingers around his buttocks, but did not penetrate his anus. This went on for more than 10 minutes. Abuser was not wearing any gloves during the abuse.

COMPLAINT

Abuser told Plaintiff that if he didn't comply, he would add more time to Plaintiff's sentence. Abuser threatened the Plaintiff not to tell anyone.

iv.    Out of fear of retaliation, punishment, extended confinement, and further abuse, Plaintiff did not report—or was unable to meaningfully report—the sexual misconduct, knowing and believing that any complaints would be unanswered, dismissed, ignored, and buried without investigation or redress, thereby allowing the sexual misconduct to continue unabated. Plaintiff was systematically and repeatedly sexually abused in what was supposed to be a "safe haven" environment—an environment exclusively created, funded, staffed, maintained, and controlled by DEFENDANTS, and each of them. DEFENDANTS had a mandatory, non-delegable duty to protect this child from the very harm they facilitated, enabled, and concealed.

v.    As a direct and proximate result of the sexual abuse perpetrated against him, Plaintiff has suffered and continues to suffer severe, ongoing, and persistent mental, emotional, psychological, and physical injuries, including, but not limited to: anxiety; depression; feelings of helplessness and hopelessness; insomnia and sleep disturbances including nightmares; questioning of sexual identity; profoundly lowered self-esteem; moodiness and emotional dysregulation; difficulty forming and maintaining meaningful interpersonal and intimate relationships; pervasive loss of trust and control issues with persons in positions of authority; flashbacks, intrusive thoughts, and hypervigilance; chronic stress; nervousness; fear; deep embarrassment and shame; and a devastating loss of enjoyment of life, among other injuries.

BK.    **John Doe 328950:**

i.    Plaintiff is a male, born on July 25, 1992, who was sexually abused at just 15 years old, in or around 2008, while confined within the Nevada Juvenile Justice System at the Nevada Youth Training Center ("NYTC") in Elko, Nevada. At the time of the abuse, Plaintiff was a minor child entrusted to the custody, care, and supervision of the State of Nevada and its agents, employees, and contractors.

COMPLAINT

ii.      Plaintiff was committed to mandatory physical confinement at the Nevada Youth Training Center ("NYTC") in Elko, Nevada, where he was placed under the complete custody, dominion, and control of Defendants and DOES 1-500. These Defendants held positions of extraordinary power, trust, and authority over Plaintiff—a vulnerable, confined child with no ability to leave, resist, or seek outside help. Defendants exploited this absolute power imbalance to sexually abuse and harass Plaintiff under color of authority on behalf of DEFENDANTS, and each of them.

iii.      While Plaintiff was confined, he was subjected to egregious and predatory sexual abuse on at least 8 - 10 occasions, over a period of approximately 2 months. Plaintiff admitted to having anger issues and would always be the last to shower to be kept away from the other kids. On a few occasions, Abuser MR. GHOUL entered the shower area and approached Plaintiff. Plaintiff reported being forced down to perform oral copulation on MR. GHOUL. In return, MR. GHOUL promised Plaintiff movie privileges. Due to Plaintiff's behavior, he was not allowed these privileges at this time. On the last occasion, Plaintiff was forced to perform oral copulation on MR. GHOUL, but MR. GHOUL attempted to sodomize Plaintiff. Plaintiff screamed, and MR. GHOUL grabbed him and slammed Plaintiff to the ground, causing a head injury. MR. GHOUL told Plaintiff that if he said anything to anyone, MR. GHOUL would "kill him in his sleep". Another staff member heard the scream and entered the shower area. Plaintiff was transported to Northeastern Nevada Regional Hospital in Elko and had a CT scan.  Once Plaintiff returned to the facility and was back in his regular unit, he encountered Abuser MS. MANZ. MS. MANZ would take Plaintiff out of his room, explaining to the other staff that she was going to "counsel him". She would take Plaintiff into a shed where she proceeded to fondle Plaintiff's penis until he became erect. Plaintiff was then forced to digitally penetrate Ms. MANZ'S vagina, kiss her, fondle her breasts, and then vaginally penetrate her with Plaintiff's penis. This would last 5-10 minutes. For Plaintiff's compliance, MS. MANZ would allow him freedom of movement, a privilege Plaintiff was not allowed at that time.

COMPLAINT

iv.     Out of fear of retaliation, punishment, extended confinement, and further abuse, Plaintiff did not report—or was unable to meaningfully report—the sexual misconduct, knowing and believing that any complaints would be unanswered, dismissed, ignored, and buried without investigation or redress, thereby allowing the sexual misconduct to continue unabated. Plaintiff was systematically and repeatedly sexually abused in what was supposed to be a "safe haven" environment—an environment exclusively created, funded, staffed, maintained, and controlled by DEFENDANTS, and each of them. DEFENDANTS had a mandatory, non-delegable duty to protect this child from the very harm they facilitated, enabled, and concealed.

v.     As a direct and proximate result of the sexual abuse perpetrated against him, Plaintiff has suffered and continues to suffer severe, ongoing, and persistent mental, emotional, psychological, and physical injuries, including, but not limited to: anxiety; depression; feelings of helplessness and hopelessness; insomnia and sleep disturbances including nightmares; questioning of sexual identity; profoundly lowered self-esteem; moodiness and emotional dysregulation; difficulty forming and maintaining meaningful interpersonal and intimate relationships; pervasive loss of trust and control issues with persons in positions of authority; flashbacks, intrusive thoughts, and hypervigilance; chronic stress; nervousness; fear; deep embarrassment and shame; and a devastating loss of enjoyment of life, among other injuries.

BL.    **John Doe 328960:**

i.     Plaintiff John Doe 328960 is a male, born on October 20, 1989, who was sexually abused between the ages of 12 and 13, in or around 2002, while confined within the Nevada Juvenile Justice System at the Nevada Youth Training Center ("NYTC") in Elko, Nevada. At the time of the abuse, Plaintiff was a minor child entrusted to the custody, care, and supervision of the State of Nevada and its agents, employees, and contractors.

ii.     Plaintiff was committed to mandatory physical confinement at the Nevada Youth Training Center ("NYTC") in Elko, Nevada, where he was placed under the

COMPLAINT

complete custody, dominion, and control of Defendants and DOES 1-500. These Defendants held positions of extraordinary power, trust, and authority over Plaintiff, a vulnerable, confined child with no ability to leave, resist, or seek outside help. Defendants exploited this absolute power imbalance to sexually abuse and harass Plaintiff under color of authority on behalf of DEFENDANTS, and each of them.

iii.     While Plaintiff was confined, he was subjected to egregious and predatory sexual abuse on at least 4 separate occasions, over a period of approximately 7 months. Prior to the first instance of abuse, the Plaintiff was physically abused by the abuser as a form of punishment for not following his direction.  On the first instance of abuse, the Plaintiff had gotten into an altercation with another resident in the kitchen, where they both worked. The Abuser isolated the Plaintiff and began to walk him back to their cottage, but they stopped in the wooded area in front of the Indian cottage. The Abuser instructed the Plaintiff to remove his clothing for a search. When searching the Plaintiff, the abuser fondled his genitals. This occurred similarly on a second instance. On an additional two instances, in the same wooded area, the Plaintiff's anus was digitally penetrated, and the Abuser sodomized him during the "search." The abuser ejaculated in his hand. The Plaintiff was told by the Abuser that he would receive more time and placement in isolation if he reported this abuse.  The Plaintiff was told by the Abuser that he would receive more time and placement in isolation if he reported this abuse.

iv.     Out of fear of retaliation, punishment, extended confinement, and further abuse, Plaintiff did not report—or was unable to meaningfully report—the sexual misconduct, knowing and believing that any complaints would be unanswered, dismissed, ignored, and buried without investigation or redress, thereby allowing the sexual misconduct to continue unabated. Plaintiff was systematically and repeatedly sexually abused in what was supposed to be a "safe haven" environment—an environment exclusively created, funded, staffed, maintained, and controlled by DEFENDANTS, and each of them. DEFENDANTS had a mandatory, non-delegable duty to protect this child from the very harm they facilitated, enabled, and concealed.

COMPLAINT

v.       As a direct and proximate result of the sexual abuse perpetrated against him, Plaintiff has suffered and continues to suffer severe, ongoing, and persistent mental, emotional, psychological, and physical injuries, including, but not limited to: anxiety; depression; feelings of helplessness and hopelessness; insomnia and sleep disturbances including nightmares; questioning of sexual identity; profoundly lowered self-esteem; moodiness and emotional dysregulation; difficulty forming and maintaining meaningful interpersonal and intimate relationships; pervasive loss of trust and control issues with persons in positions of authority; flashbacks, intrusive thoughts, and hypervigilance; chronic stress; nervousness; fear; deep embarrassment and shame; and a devastating loss of enjoyment of life, among other injuries.

BM.    **John Doe 329209:**

i.       Plaintiff John Doe 329209 is a male, born on June 06, 1989, who was sexually abused at just 16 years old, in or around 2006, while confined within the Nevada Juvenile Justice System at the Nevada Youth Training Center ("NYTC") in Elko, Nevada. At the time of the abuse, Plaintiff was a minor child entrusted to the custody, care, and supervision of the State of Nevada and its agents, employees, and contractors.

ii.      Plaintiff was committed to mandatory physical confinement at the Nevada Youth Training Center ("NYTC") in Elko, Nevada, where he was placed under the complete custody, dominion, and control of Defendants and DOES 1-500. These Defendants held positions of extraordinary power, trust, and authority over Plaintiff—a vulnerable, confined child with no ability to leave, resist, or seek outside help. Defendants exploited this absolute power imbalance to sexually abuse and harass Plaintiff under color of authority on behalf of DEFENDANTS, and each of them.

iii.     While Plaintiff was confined, he was subjected to egregious and predatory sexual abuse on at least 10-14 times, over a period of approximately 5-6 months. Plaintiff reported that the abuse primarily happened in Mountaineer unit, which was where Plaintiff was sent when in trouble. Here, the unit was typically empty. Abuser would enter the unit and would force Plaintiff to perform oral copulation on him. The abuse also happened

when Plaintiff was walking to the nurses station alone because he had freedom of movement privileges. He would run into the abuser and would be forced to perform oral copulation on him again. Plaintiff reported that Abuser never put a condom on himself and he ejaculated into a tissue approximately twice. This happened approximately 10-14 times during Plaintiff's stay at the facility. Abuser threatened to beat Plaintiff if he reported the abuse to anyone. If Plaintiff attempted to refuse the abuse, Abuser would begin to hit him until Plaintiff complied.

iv.    Out of fear of retaliation, punishment, extended confinement, and further abuse, Plaintiff did not report—or was unable to meaningfully report—the sexual misconduct, knowing and believing that any complaints would be unanswered, dismissed, ignored, and buried without investigation or redress, thereby allowing the sexual misconduct to continue unabated. Plaintiff was systematically and repeatedly sexually abused in what was supposed to be a "safe haven" environment—an environment exclusively created, funded, staffed, maintained, and controlled by DEFENDANTS, and each of them. DEFENDANTS had a mandatory, non-delegable duty to protect this child from the very harm they facilitated, enabled, and concealed.

v.    As a direct and proximate result of the sexual abuse perpetrated against him, Plaintiff has suffered and continues to suffer severe, ongoing, and persistent mental, emotional, psychological, and physical injuries, including, but not limited to: anxiety; depression; feelings of helplessness and hopelessness; insomnia and sleep disturbances including nightmares; questioning of sexual identity; profoundly lowered self-esteem; moodiness and emotional dysregulation; difficulty forming and maintaining meaningful interpersonal and intimate relationships; pervasive loss of trust and control issues with persons in positions of authority; flashbacks, intrusive thoughts, and hypervigilance; chronic stress; nervousness; fear; deep embarrassment and shame; and a devastating loss of enjoyment of life, among other injuries.

/ / /

/ / /

COMPLAINT

BN.   **John Doe 329522:**

i.       Plaintiff John Doe 329522 is a male, born on January 05, 1988, who was sexually abused between the ages of 17 and 18, in or around 2005-2006, while confined within the Nevada Juvenile Justice System at the Summit View Youth Center ("SVYC") in North Las Vegas, Nevada. At the time of the abuse, Plaintiff was a minor child entrusted to the custody, care, and supervision of the State of Nevada and its agents, employees, and contractors.

ii.      Plaintiff was committed to mandatory physical confinement at the Summit View Youth Center ("SVYC") in North Las Vegas, Nevada, where he was placed under the complete custody, dominion, and control of Defendants and DOES 1-500. These Defendants held positions of extraordinary power, trust, and authority over Plaintiff, a vulnerable, confined child with no ability to leave, resist, or seek outside help. Defendants exploited this absolute power imbalance to sexually abuse and harass Plaintiff under color of authority on behalf of DEFENDANTS, and each of them.

iii.     While Plaintiff was he was subjected to egregious and predatory sexual abuse on at least 16+ occurrences, over a period of approximately 8 months. On several occasions, Plaintiff was instructed to remove his clothing while Abuser MS. BENTLEY undressed herself. Following this, the abuser instructed Plaintiff to penetrate her vagina with his penis. Plaintiff was not provided with any condoms and was threatened not to tell anybody. Additionally, the abuser performed oral copulation on Plaintiff's penis and instructed Plaintiff to perform oral sex on Plaintiff's breast and vagina on separate occurrences. On other separate occasions, the same abuse occurred in the phone room on two occasions, and in the culinary on two other separate occasions. On five occurrences, while in class, Plaintiff was called over to the Abuser's #2 desks. On approximately 5 occurrences behind a file cabinet or the abuser's desk, the abuser instructed Plaintiff to expose his penis and forced Plaintiff to penetrate her vagina with his penis. Plaintiff recalls that on some occurrences, the abuser would wear dresses where she would be able to lift up her dress during the assault. Plaintiff reported on approximately three occurrences in

124

COMPLAINT

which the abuser performed oral copulation on Plaintiff's penis. Following this, the abuser forced Plaintiff to suck on her breast. Thereafter, on one occasion, Plaintiff reported that while working in the culinary department, Abuser YOLANDA called Plaintiff into her office and instructed Plaintiff to expose his penis. Following this, Abuser removed all her clothing, then she instructed Plaintiff to penetrate her vagina with his penis. On the second occurrence in the culinary office, Yolanda removed her bottoms, and the same abuse occurred. Plaintiff also reported Abuser #4 witnessed the assault with Yolanda. The same day, abuser #4 called Plaintiff into her office located within the laundry room, under the guise that she needed Plaintiff's assistance. Abuser #4 proceeded to instruct Plaintiff to take off his pants while she took off her clothing and forced Plaintiff to penetrate her vagina with his penis. Abuser #4 threatened Plaintiff to keep his mouth closed.

iv.     Out of fear of retaliation, punishment, extended confinement, and further abuse, Plaintiff did not report—or was unable to meaningfully report—the sexual misconduct, knowing and believing that any complaints would be unanswered, dismissed, ignored, and buried without investigation or redress, thereby allowing the sexual misconduct to continue unabated. Plaintiff was systematically and repeatedly sexually abused in what was supposed to be a "safe haven" environment—an environment exclusively created, funded, staffed, maintained, and controlled by DEFENDANTS, and each of them. DEFENDANTS had a mandatory, non-delegable duty to protect this child from the very harm they facilitated, enabled, and concealed.

v.     As a direct and proximate result of the sexual abuse perpetrated against him, Plaintiff has suffered and continues to suffer severe, ongoing, and persistent mental, emotional, psychological, and physical injuries, including, but not limited to: anxiety; depression; feelings of helplessness and hopelessness; insomnia and sleep disturbances including nightmares; questioning of sexual identity; profoundly lowered self-esteem; moodiness and emotional dysregulation; difficulty forming and maintaining meaningful interpersonal and intimate relationships; pervasive loss of trust and control issues with persons in positions of authority; flashbacks, intrusive thoughts, and hypervigilance;

chronic stress; nervousness; fear; deep embarrassment and shame; and a devastating loss of enjoyment of life, among other injuries.

BO.    **John Doe 329904:**

i.      Plaintiff John Doe 329904 is a male, born on July 01, 2005, who was sexually abused at just 17 years old, in or around 2022, while confined within the Nevada Juvenile Justice System at the Clark County Juvenile Detention Center in Las Vegas, Nevada. At the time of the abuse, Plaintiff was a minor child entrusted to the custody, care, and supervision of the State of Nevada and its agents, employees, and contractors.

ii.     Plaintiff was committed to mandatory physical confinement at the Clark County Juvenile Detention Center in Las Vegas, Nevada, where he was placed under the complete custody, dominion, and control of Defendants and DOES 1-500. These Defendants held positions of extraordinary power, trust, and authority over Plaintiff—a vulnerable, confined child with no ability to leave, resist, or seek outside help. Defendants exploited this absolute power imbalance to sexually abuse and harass Plaintiff under color of authority on behalf of DEFENDANTS, and each of them.

iii.    While Plaintiff was confined, he was subjected to egregious and predatory sexual abuse on at least 10 separate occasions, over a period of approximately 6 months. On one occasion, Plaintiff's abuser entered Plaintiff's dorm room and forced Plaintiff to strip under guise of a strip search. The abuser told Plaintiff to stand up against the wall while the abuser groped Plaintiff's genitals and started to slightly masturbate Plaintiff's penis. The abuser also put his hands between Plaintiff's buttocks.  Two days later, Plaintiff's abuser came into Plaintiff's dorm for a strip search. Plaintiff's abuser began to grope Plaintiff with his ungloved hand and told Plaintiff to turn around. At this time, the Abuser began to perform oral copulation on Plaintiff and digitally penetrated Plaintiff's rectum. The abuser was masturbating himself and tried to force Plaintiff to perform oral on him, but Plaintiff declined.  On the third instance of abuse, the abuser would come into Plaintiff's dorm and approach Plaintiff, groping Plaintiff's genitals, ungloved. The abuser

then performed oral copulation on Plaintiff. This abuse happened in the same location and manner on an additional 3 occasions. All instances of abuse lasted 5-10 minutes.

iv.    Out of fear of retaliation, punishment, extended confinement, and further abuse, Plaintiff did not report—or was unable to meaningfully report—the sexual misconduct, knowing and believing that any complaints would be unanswered, dismissed, ignored, and buried without investigation or redress, thereby allowing the sexual misconduct to continue unabated. Plaintiff was systematically and repeatedly sexually abused in what was supposed to be a "safe haven" environment—an environment exclusively created, funded, staffed, maintained, and controlled by DEFENDANTS, and each of them. DEFENDANTS had a mandatory, non-delegable duty to protect this child from the very harm they facilitated, enabled, and concealed.

v.    As a direct and proximate result of the sexual abuse perpetrated against him, Plaintiff has suffered and continues to suffer severe, ongoing, and persistent mental, emotional, psychological, and physical injuries, including, but not limited to: anxiety; depression; feelings of helplessness and hopelessness; insomnia and sleep disturbances including nightmares; questioning of sexual identity; profoundly lowered self-esteem; moodiness and emotional dysregulation; difficulty forming and maintaining meaningful interpersonal and intimate relationships; pervasive loss of trust and control issues with persons in positions of authority; flashbacks, intrusive thoughts, and hypervigilance; chronic stress; nervousness; fear; deep embarrassment and shame; and a devastating loss of enjoyment of life, among other injuries.

BP.    **John Doe 329942:**

i.    Plaintiff John Doe 329942 is a male, born on September 17, 1987, who was sexually abused at just 15 years old, in or around 2002, while confined within the Nevada Juvenile Justice System at the Caliente Youth Center ("CYC") in Caliente, Nevada. At the time of the abuse, Plaintiff was a minor child entrusted to the custody, care, and supervision of the State of Nevada and its agents, employees, and contractors.

ii.    Plaintiff was committed to mandatory physical confinement at the Caliente Youth Center ("CYC") in Caliente, Nevada, where he was placed under the complete custody, dominion, and control of Defendants and DOES 1-500. These Defendants held positions of extraordinary power, trust, and authority over Plaintiff, a vulnerable, confined child with no ability to leave, resist, or seek outside help. Defendants exploited this absolute power imbalance to sexually abuse and harass Plaintiff under color of authority on behalf of DEFENDANTS, and each of them.

iii.    While Plaintiff was confined, he was subjected to egregious and predatory sexual abuse on at least 3 occasions. On one occasion, the first day of Plaintiff's detainment, he was being searched by the abuser. The Abuser instructed Plaintiff to strip down and began groping Plaintiff's genitals. The Abuser then took Plaintiff's hand and placed it on Abuser's genitals over his clothing. Following, on two separate occasions, as Plaintiff was being searched after returning from dental appointments, the Abuser instructed Plaintiff to strip down. The Abuser exposed his penis and forced Plaintiff to masturbate him. Plaintiff backed away and was refusing so the Abuser locked him into a side cell for a couple hours. The Abuser would get Plaintiff out and ask Plaintiff if he "changed his mind" about refusing the abuse and would force him again to masturbate him. The Abuser threatened to make Plaintiff's time harder if he reported the abuse.

iv.    Out of fear of retaliation, punishment, extended confinement, and further abuse, Plaintiff did not report—or was unable to meaningfully report—the sexual misconduct, knowing and believing that any complaints would be unanswered, dismissed, ignored, and buried without investigation or redress, thereby allowing the sexual misconduct to continue unabated. Plaintiff was systematically and repeatedly sexually abused in what was supposed to be a "safe haven" environment—an environment exclusively created, funded, staffed, maintained, and controlled by DEFENDANTS, and each of them. DEFENDANTS had a mandatory, non-delegable duty to protect this child from the very harm they facilitated, enabled, and concealed.

COMPLAINT

v.      As a direct and proximate result of the sexual abuse perpetrated against him, Plaintiff has suffered and continues to suffer severe, ongoing, and persistent mental, emotional, psychological, and physical injuries, including, but not limited to: anxiety; depression; feelings of helplessness and hopelessness; insomnia and sleep disturbances including nightmares; questioning of sexual identity; profoundly lowered self-esteem; moodiness and emotional dysregulation; difficulty forming and maintaining meaningful interpersonal and intimate relationships; pervasive loss of trust and control issues with persons in positions of authority; flashbacks, intrusive thoughts, and hypervigilance; chronic stress; nervousness; fear; deep embarrassment and shame; and a devastating loss of enjoyment of life, among other injuries.

BQ.    **John Doe 329953:**

i.      Plaintiff John Doe 329953 is a male, born on February 25, 1993, who was sexually abused at just 14 years old, in or around 2007, while confined within the Nevada Juvenile Justice System at the Caliente Youth Center ("CYC") in Caliente, Nevada. At the time of the abuse, Plaintiff was a minor child entrusted to the custody, care, and supervision of the State of Nevada and its agents, employees, and contractors.

ii.     Plaintiff was committed to mandatory physical confinement at the Caliente Youth Center ("CYC") in Caliente, Nevada, where he was placed under the complete custody, dominion, and control of Defendants and DOES 1-500. These Defendants held positions of extraordinary power, trust, and authority over Plaintiff, a vulnerable, confined child with no ability to leave, resist, or seek outside help. Defendants exploited this absolute power imbalance to sexually abuse and harass Plaintiff under color of authority on behalf of DEFENDANTS, and each of them.

iii.    While Plaintiff was confined, he was subjected to egregious and predatory sexual abuse on at least 3 separate occasions, over a period of approximately 7 months. The plaintiff encountered the abuser MS. BARNETT in his assigned housing unit. The incidents would take place in his cell, the shower area and the gym area. Once the Abuser was able to get the Plaintiff alone, she would force her hands inside of his clothes and

129

COMPLAINT

masturbate his penis. She would then expose her genitals and say "eat my coochie." The Plaintiff was only forced to perform oral during one instance of abuse. The Plaintiff did not ejaculate during any of the abuse.  He was threatened with being sent to a higher security facility if he were to say anything with regards to the abuse.

iv.	Out of fear of retaliation, punishment, extended confinement, and further abuse, Plaintiff did not report—or was unable to meaningfully report—the sexual misconduct, knowing and believing that any complaints would be unanswered, dismissed, ignored, and buried without investigation or redress, thereby allowing the sexual misconduct to continue unabated. Plaintiff was systematically and repeatedly sexually abused in what was supposed to be a "safe haven" environment—an environment exclusively created, funded, staffed, maintained, and controlled by DEFENDANTS, and each of them. DEFENDANTS had a mandatory, non-delegable duty to protect this child from the very harm they facilitated, enabled, and concealed.

v.	As a direct and proximate result of the sexual abuse perpetrated against him, Plaintiff has suffered and continues to suffer severe, ongoing, and persistent mental, emotional, psychological, and physical injuries, including, but not limited to: anxiety; depression; feelings of helplessness and hopelessness; insomnia and sleep disturbances including nightmares; questioning of sexual identity; profoundly lowered self-esteem; moodiness and emotional dysregulation; difficulty forming and maintaining meaningful interpersonal and intimate relationships; pervasive loss of trust and control issues with persons in positions of authority; flashbacks, intrusive thoughts, and hypervigilance; chronic stress; nervousness; fear; deep embarrassment and shame; and a devastating loss of enjoyment of life, among other injuries.

BR.	**Jane Doe 329959:**

i.	Plaintiff Jane Doe 329959 is a female, born on March 17, 1991, who was sexually abused between the ages of 15 and 17, in or around 2006, while confined within the Nevada Juvenile Justice System at the Caliente Youth Center ("CYC") in Caliente,

COMPLAINT

Nevada. At the time of the abuse, Plaintiff was a minor child entrusted to the custody, care, and supervision of the State of Nevada and its agents, employees, and contractors.

ii.      Plaintiff was committed to mandatory physical confinement at the Caliente Youth Center ("CYC") in Caliente, Nevada, where she was placed under the complete custody, dominion, and control of Defendants and DOES 1-500. These Defendants held positions of extraordinary power, trust, and authority over Plaintiff, a vulnerable, confined child with no ability to leave, resist, or seek outside help. Defendants exploited this absolute power imbalance to sexually abuse and harass Plaintiff under color of authority on behalf of DEFENDANTS, and each of them.

iii.     While Plaintiff was confined, she was subjected to egregious and predatory sexual abuse on at least 13+, over a period of approximately 2 years.  Abuser 1 (the female PE teacher) engaged in acts of sexual contact with the Plaintiff in secluded areas of the facility, such as storage closets or the gym or gym closet. The Abuser putting her mouth on the Plaintiff's vagina and sexually touching her breasts. On multiple occasions, the Abuser also inserted her fingers into the Plaintiff's vagina. Also, Abuser 2 (the male counselor) would use his size and body weight to restrain the Plaintiff, lying on top of her and sometimes covering her mouth to muffle her ability to call out, where he engaged in anal sex with the Plaintiff. The Plaintiff reported that these attacks occurred frequently, estimating them to be at least once a week or once every other week for the duration of her stay.

iv.      Out of fear of retaliation, punishment, extended confinement, and further abuse, Plaintiff did not report—or was unable to meaningfully report—the sexual misconduct, knowing and believing that any complaints would be unanswered, dismissed, ignored, and buried without investigation or redress, thereby allowing the sexual misconduct to continue unabated. Plaintiff was systematically and repeatedly sexually abused in what was supposed to be a "safe haven" environment—an environment exclusively created, funded, staffed, maintained, and controlled by DEFENDANTS, and

each of them. DEFENDANTS had a mandatory, non-delegable duty to protect this child from the very harm they facilitated, enabled, and concealed.

v.     As a direct and proximate result of the sexual abuse perpetrated against her, Plaintiff has suffered and continues to suffer severe, ongoing, and persistent mental, emotional, psychological, and physical injuries, including, but not limited to: anxiety; depression; feelings of helplessness and hopelessness; insomnia and sleep disturbances including nightmares; questioning of sexual identity; profoundly lowered self-esteem; moodiness and emotional dysregulation; difficulty forming and maintaining meaningful interpersonal and intimate relationships; pervasive loss of trust and control issues with persons in positions of authority; flashbacks, intrusive thoughts, and hypervigilance; chronic stress; nervousness; fear; deep embarrassment and shame; and a devastating loss of enjoyment of life, among other injuries.

BS.    **Jane Doe 330009:**

i.     Plaintiff Jane Doe 330009 is a female, born on June 13, 1988, who was sexually abused at just 15 years old, in or around 2004, while confined within the Nevada Juvenile Justice System at the Caliente Youth Center ("CYC") in Caliente, Nevada. At the time of the abuse, Plaintiff was a minor child entrusted to the custody, care, and supervision of the State of Nevada and its agents, employees, and contractors.

ii.    Plaintiff was committed to mandatory physical confinement at the Caliente Youth Center ("CYC") in Caliente, Nevada, where she was placed under the complete custody, dominion, and control of Defendants and DOES 1-500. These Defendants held positions of extraordinary power, trust, and authority over Plaintiff, a vulnerable, confined child with no ability to leave, resist, or seek outside help. Defendants exploited this absolute power imbalance to sexually abuse and harass Plaintiff under color of authority on behalf of DEFENDANTS, and each of them.

iii.   While Plaintiff was confined, she was subjected to egregious and predatory sexual abuse on at least one occasion.  Plaintiff was on bed rest due to medical concerns.

COMPLAINT

The Abuser, MS. BROOKS, walked Plaintiff back to her room, where she kissed Plaintiff and digitally penetrated Plaintiff with her bare fingers.

iv.    Out of fear of retaliation, punishment, extended confinement, and further abuse, Plaintiff did not report—or was unable to meaningfully report—the sexual misconduct, knowing and believing that any complaints would be unanswered, dismissed, ignored, and buried without investigation or redress, thereby allowing the sexual misconduct to continue unabated. Plaintiff was systematically and repeatedly sexually abused in what was supposed to be a "safe haven" environment—an environment exclusively created, funded, staffed, maintained, and controlled by DEFENDANTS, and each of them. DEFENDANTS had a mandatory, non-delegable duty to protect this child from the very harm they facilitated, enabled, and concealed.

v.    As a direct and proximate result of the sexual abuse perpetrated against her, Plaintiff has suffered and continues to suffer severe, ongoing, and persistent mental, emotional, psychological, and physical injuries, including, but not limited to: anxiety; depression; feelings of helplessness and hopelessness; insomnia and sleep disturbances including nightmares; questioning of sexual identity; profoundly lowered self-esteem; moodiness and emotional dysregulation; difficulty forming and maintaining meaningful interpersonal and intimate relationships; pervasive loss of trust and control issues with persons in positions of authority; flashbacks, intrusive thoughts, and hypervigilance; chronic stress; nervousness; fear; deep embarrassment and shame; and a devastating loss of enjoyment of life, among other injuries.

BT.    **Jane Doe 330039:**

i.    Plaintiff Jane Doe 330039 is a female, born on August 01, 1990, who was sexually abused at just 15 years old, in or around 2006, while confined within the Nevada Juvenile Justice System at the Nevada Youth Training Center ("NYTC") in Elko, Nevada. At the time of the abuse, Plaintiff was a minor child entrusted to the custody, care, and supervision of the State of Nevada and its agents, employees, and contractors.

COMPLAINT

ii.     Plaintiff was committed to mandatory physical confinement at the Nevada Youth Training Center ("NYTC") in Elko, Nevada, where she was placed under the complete custody, dominion, and control of Defendants and DOES 1-500. These Defendants held positions of extraordinary power, trust, and authority over Plaintiff, a vulnerable, confined child with no ability to leave, resist, or seek outside help. Defendants exploited this absolute power imbalance to sexually abuse and harass Plaintiff under color of authority on behalf of DEFENDANTS, and each of them.

iii.     While Plaintiff was confined, she was subjected to egregious and predatory sexual abuse on at least 2 separate occasions in her assigned housing unit in the dayroom. Once they were alone, the Abuser would make inappropriate comments before forcing his hands inside of her shirt and fondling her bare breast with an ungloved hand.  She was threatened with giving her probation officer a behavioral writeup which would give her more time.  She was also rewarded with extra food and snacks for keeping quiet and being compliant.

iv.     Out of fear of retaliation, punishment, extended confinement, and further abuse, Plaintiff did not report—or was unable to meaningfully report—the sexual misconduct, knowing and believing that any complaints would be unanswered, dismissed, ignored, and buried without investigation or redress, thereby allowing the sexual misconduct to continue unabated. Plaintiff was systematically and repeatedly sexually abused in what was supposed to be a "safe haven" environment—an environment exclusively created, funded, staffed, maintained, and controlled by DEFENDANTS, and each of them. DEFENDANTS had a mandatory, non-delegable duty to protect this child from the very harm they facilitated, enabled, and concealed.

v.     As a direct and proximate result of the sexual abuse perpetrated against her, Plaintiff has suffered and continues to suffer severe, ongoing, and persistent mental, emotional, psychological, and physical injuries, including, but not limited to: anxiety; depression; feelings of helplessness and hopelessness; insomnia and sleep disturbances including nightmares; questioning of sexual identity; profoundly lowered self-esteem;

moodiness and emotional dysregulation; difficulty forming and maintaining meaningful interpersonal and intimate relationships; pervasive loss of trust and control issues with persons in positions of authority; flashbacks, intrusive thoughts, and hypervigilance; chronic stress; nervousness; fear; deep embarrassment and shame; and a devastating loss of enjoyment of life, among other injuries.

BU.    **Jane Doe 330091:**

i.     Plaintiff Jane Doe 330091 is a female, born on July 12, 2002, who was sexually abused at just 17 years old, in or around 2018-2019, while confined within the Nevada Juvenile Justice System at the Caliente Youth Center ("CYC") in Caliente, Nevada. At the time of the abuse, Plaintiff was a minor child entrusted to the custody, care, and supervision of the State of Nevada and its agents, employees, and contractors.

ii.     Plaintiff was committed to mandatory physical confinement at the Caliente Youth Center ("CYC") in Caliente, Nevada, where she was placed under the complete custody, dominion, and control of Defendants and DOES 1-500. These Defendants held positions of extraordinary power, trust, and authority over Plaintiff, a vulnerable, confined child with no ability to leave, resist, or seek outside help. Defendants exploited this absolute power imbalance to sexually abuse and harass Plaintiff under color of authority on behalf of DEFENDANTS, and each of them.

iii.     While Plaintiff was confined, she was subjected to egregious and predatory sexual abuse. Abuser 1 would take the Plaintiff for walks around the campus. The Abuser took Plaintiff behind the library room or behind the bleachers, where he would put his hand under Plaintiff's clothes and fondle Plaintiff's breast and vagina, skin-to-skin with no gloves. The Abuser would pull his pants down and masturbate himself as he fondled Plaintiff's breast and vagina. During these times, the Abuser would ask Plaintiff to touch his penis, but Plaintiff would decline.  Abuser 2 would provide Plaintiff with her psychotropic medication and, during this time, would give Plaintiff an extra pill. Plaintiff would be unable to move from medication intake.  Staff or the Abuser would take Plaintiff back to her cell since she was highly medicated. Once Plaintiff was alone in her cell,

Abuser 2 would walk into her cell and remove Plaintiff's pants and then digitally penetrate Plaintiff's vagina with no gloves, skin-to-skin. The Abuser would then rape Plaintiff with a condom on.  The abuser would put his hand under Plaintiff's shirt and grope Plaintiff's breast, skin-to-skin. Plaintiff is unsure if Abuser would ejaculate during these times since she was highly medicated and could not move or talk. Plaintiff can only fully recall 2 instances of rape, but states that there were times when she would wake up with her pants off, panties on, but bleeding from her vagina.  Both Abusers threatened the Plaintiff with a longer time if she said anything. The abuser further exploited the Plaintiff by offering inducements, including food, snacks, hygiene products, and extra day room time.

iv.     Out of fear of retaliation, punishment, extended confinement, and further abuse, Plaintiff did not report—or was unable to meaningfully report—the sexual misconduct, knowing and believing that any complaints would be unanswered, dismissed, ignored, and buried without investigation or redress, thereby allowing the sexual misconduct to continue unabated. Plaintiff was systematically and repeatedly sexually abused in what was supposed to be a "safe haven" environment—an environment exclusively created, funded, staffed, maintained, and controlled by DEFENDANTS, and each of them. DEFENDANTS had a mandatory, non-delegable duty to protect this child from the very harm they facilitated, enabled, and concealed.

v.     As a direct and proximate result of the sexual abuse perpetrated against her, Plaintiff has suffered and continues to suffer severe, ongoing, and persistent mental, emotional, psychological, and physical injuries, including, but not limited to: anxiety; depression; feelings of helplessness and hopelessness; insomnia and sleep disturbances including nightmares; questioning of sexual identity; profoundly lowered self-esteem; moodiness and emotional dysregulation; difficulty forming and maintaining meaningful interpersonal and intimate relationships; pervasive loss of trust and control issues with persons in positions of authority; flashbacks, intrusive thoughts, and hypervigilance; chronic stress; nervousness; fear; deep embarrassment and shame; and a devastating loss of enjoyment of life, among other injuries.

BV.    **Jane Doe 330162:**

i.      Plaintiff Jane Doe 330162 is a female, born on May 09, 1988, who was sexually abused at just 16 years old, in or around 2004, while confined within the Nevada Juvenile Justice System at the Caliente Youth Center ("CYC") in Caliente, Nevada. At the time of the abuse, Plaintiff was a minor child entrusted to the custody, care, and supervision of the State of Nevada and its agents, employees, and contractors.

ii.     Plaintiff was committed to mandatory physical confinement at the Caliente Youth Center ("CYC") in Caliente, Nevada, where she was placed under the complete custody, dominion, and control of Defendants and DOES 1-500. These Defendants held positions of extraordinary power, trust, and authority over Plaintiff—a vulnerable, confined child with no ability to leave, resist, or seek outside help. Defendants exploited this absolute power imbalance to sexually abuse and harass Plaintiff under color of authority on behalf of DEFENDANTS, and each of them.

iii.    While Plaintiff was confined, she was subjected to egregious and predatory sexual abuse.  Plaintiff was in the library and walking into one of the classroom bathrooms. The Abuser MR. RIPTOE followed Plaintiff into the bathroom. MR. RIPTOE pulled down his pants and showed Plaintiff his penis. Plaintiff backed up to the sink area in shock. MR. RIPTOE, pulled Plaintiff's pants, pulled her up to bathroom counter and then raped Plaintiff's vagina with his penis. Plaintiff cannot recall if MR. RIPTOE ejaculated or wore a condom.

iv.     Out of fear of retaliation, punishment, extended confinement, and further abuse, Plaintiff did not report—or was unable to meaningfully report—the sexual misconduct, knowing and believing that any complaints would be unanswered, dismissed, ignored, and buried without investigation or redress, thereby allowing the sexual misconduct to continue unabated. Plaintiff was systematically and repeatedly sexually abused in what was supposed to be a "safe haven" environment—an environment exclusively created, funded, staffed, maintained, and controlled by DEFENDANTS, and

COMPLAINT

each of them. DEFENDANTS had a mandatory, non-delegable duty to protect this child from the very harm they facilitated, enabled, and concealed.

v.    As a direct and proximate result of the sexual abuse perpetrated against her, Plaintiff has suffered and continues to suffer severe, ongoing, and persistent mental, emotional, psychological, and physical injuries, including, but not limited to: anxiety; depression; feelings of helplessness and hopelessness; insomnia and sleep disturbances including nightmares; questioning of sexual identity; profoundly lowered self-esteem; moodiness and emotional dysregulation; difficulty forming and maintaining meaningful interpersonal and intimate relationships; pervasive loss of trust and control issues with persons in positions of authority; flashbacks, intrusive thoughts, and hypervigilance; chronic stress; nervousness; fear; deep embarrassment and shame; and a devastating loss of enjoyment of life, among other injuries.

BW.    **John Doe 330165:**

i.    Plaintiff John Doe 330165 is a male, born on May 17, 1990, who was sexually abused at just 16 years old, in or around 06/2006 - 02/2007, while confined within the Nevada Juvenile Justice System at the Nevada Youth Training Center ("NYTC") in Elko, Nevada. At the time of the abuse, Plaintiff was a minor child entrusted to the custody, care, and supervision of the State of Nevada and its agents, employees, and contractors.

ii.    Plaintiff was committed to mandatory physical confinement at the Nevada Youth Training Center ("NYTC") in Elko, Nevada, where he was placed under the complete custody, dominion, and control of Defendants and DOES 1-500. These Defendants held positions of extraordinary power, trust, and authority over Plaintiff—a vulnerable, confined child with no ability to leave, resist, or seek outside help. Defendants exploited this absolute power imbalance to sexually abuse and harass Plaintiff under color of authority on behalf of DEFENDANTS, and each of them.

iii.    While Plaintiff was confined he was subjected to egregious and predatory sexual abuse on at least 6 occasions in the Mountaineer dorm, which is where kids were

taken when they got in trouble. On three occasions, the Abuser, MR. SINNERS, would randomly enter Plaintiff's room for a strip search. MR. SINNERS would instruct Plaintiff to spread his buttocks and tell him he wasn't doing it right. MR. SINNERS would then spread Plaintiff's buttocks apart and insert his bare finger inside Plaintiff's anus. He would then grab Plaintiff's testicles and forcefully pull on them. On three separate occasions, Abuser 2, MR. WARMTH, would enter Plaintiff's room for random strip searches and sexually assault Plaintiff in the exact same manner as MR. SINNERS. Both Abusers would threaten Plaintiff with an extended sentence and to take away his home visits.

iv.    Out of fear of retaliation, punishment, extended confinement, and further abuse, Plaintiff did not report—or was unable to meaningfully report—the sexual misconduct, knowing and believing that any complaints would be unanswered, dismissed, ignored, and buried without investigation or redress, thereby allowing the sexual misconduct to continue unabated. Plaintiff was systematically and repeatedly sexually abused in what was supposed to be a "safe haven" environment—an environment exclusively created, funded, staffed, maintained, and controlled by DEFENDANTS, and each of them. DEFENDANTS had a mandatory, non-delegable duty to protect this child from the very harm they facilitated, enabled, and concealed.

v.    As a direct and proximate result of the sexual abuse perpetrated against him, Plaintiff has suffered and continues to suffer severe, ongoing, and persistent mental, emotional, psychological, and physical injuries, including, but not limited to: anxiety; depression; feelings of helplessness and hopelessness; insomnia and sleep disturbances including nightmares; questioning of sexual identity; profoundly lowered self-esteem; moodiness and emotional dysregulation; difficulty forming and maintaining meaningful interpersonal and intimate relationships; pervasive loss of trust and control issues with persons in positions of authority; flashbacks, intrusive thoughts, and hypervigilance; chronic stress; nervousness; fear; deep embarrassment and shame; and a devastating loss of enjoyment of life, among other injuries.

///

139

COMPLAINT

BX.    **John Doe 330169:**

i.    Plaintiff John Doe 330169 is a male, born on February 01, 1991, who was sexually abused at just 17 years old, in or around 2008-2009, while confined within the Nevada Juvenile Justice System at the Nevada Youth Training Center ("NYTC") in Elko, Nevada. At the time of the abuse, Plaintiff was a minor child entrusted to the custody, care, and supervision of the State of Nevada and its agents, employees, and contractors.

ii.    Plaintiff was committed to mandatory physical confinement at the Nevada Youth Training Center ("NYTC") in Elko, Nevada, where he was placed under the complete custody, dominion, and control of Defendants and DOES 1-500. These Defendants held positions of extraordinary power, trust, and authority over Plaintiff—a vulnerable, confined child with no ability to leave, resist, or seek outside help. Defendants exploited this absolute power imbalance to sexually abuse and harass Plaintiff under color of authority on behalf of DEFENDANTS, and each of them.

iii.    While Plaintiff was confined, he was subjected to egregious and predatory sexual abuse on at least 36 separate occasions, over a period of approximately 3 months.

The Plaintiff encountered the abuser in his assigned housing unit and was a guard assigned to his dorm. The abuser would escort the Plaintiff to areas of the facility that were empty or unmonitored. Once they were alone she would make sexual comments "I love big ones, you have a big one." She would then force her hands inside of his pants and fondle his bare penis with an ungloved hand.  He was threatened with being failed for the week which would have given him more time

iv.    Out of fear of retaliation, punishment, extended confinement, and further abuse, Plaintiff did not report—or was unable to meaningfully report—the sexual misconduct, knowing and believing that any complaints would be unanswered, dismissed, ignored, and buried without investigation or redress, thereby allowing the sexual misconduct to continue unabated. Plaintiff was systematically and repeatedly sexually abused in what was supposed to be a "safe haven" environment—an environment exclusively created, funded, staffed, maintained, and controlled by DEFENDANTS, and

each of them. DEFENDANTS had a mandatory, non-delegable duty to protect this child from the very harm they facilitated, enabled, and concealed.

v.      As a direct and proximate result of the sexual abuse perpetrated against him, Plaintiff has suffered and continues to suffer severe, ongoing, and persistent mental, emotional, psychological, and physical injuries, including, but not limited to: anxiety; depression; feelings of helplessness and hopelessness; insomnia and sleep disturbances including nightmares; questioning of sexual identity; profoundly lowered self-esteem; moodiness and emotional dysregulation; difficulty forming and maintaining meaningful interpersonal and intimate relationships; pervasive loss of trust and control issues with persons in positions of authority; flashbacks, intrusive thoughts, and hypervigilance; chronic stress; nervousness; fear; deep embarrassment and shame; and a devastating loss of enjoyment of life, among other injuries.

BY.    **John Doe 330186:**

i.      Plaintiff John Doe 330186 is a male, born on May 26, 2004, who was sexually abused at just 14 years old, in or around 2017, while confined within the Nevada Juvenile Justice System at the Nevada Youth Training Center ("NYTC") in Elko, Nevada. At the time of the abuse, Plaintiff was a minor child entrusted to the custody, care, and supervision of the State of Nevada and its agents, employees, and contractors.

ii.     Plaintiff was committed to mandatory physical confinement at the Nevada Youth Training Center ("NYTC") in Elko, Nevada, where he was placed under the complete custody, dominion, and control of Defendants and DOES 1-500. These Defendants held positions of extraordinary power, trust, and authority over Plaintiff—a vulnerable, confined child with no ability to leave, resist, or seek outside help. Defendants exploited this absolute power imbalance to sexually abuse and harass Plaintiff under color of authority on behalf of DEFENDANTS, and each of them.

iii.    While Plaintiff was confined, he was subjected to egregious and predatory sexual abuse on at least 3 times where the Abuser would come into the cell and take off her pants, and tell Plaintiff to perform oral sex on her. Then, the Abuser would masturbate

the plaintiff until he ejaculated on the floor. Abuser said she would make it so Plaintiff would stay there longer if he said anything.

iv.    Out of fear of retaliation, punishment, extended confinement, and further abuse, Plaintiff did not report—or was unable to meaningfully report—the sexual misconduct, knowing and believing that any complaints would be unanswered, dismissed, ignored, and buried without investigation or redress, thereby allowing the sexual misconduct to continue unabated. Plaintiff was systematically and repeatedly sexually abused in what was supposed to be a "safe haven" environment—an environment exclusively created, funded, staffed, maintained, and controlled by DEFENDANTS, and each of them. DEFENDANTS had a mandatory, non-delegable duty to protect this child from the very harm they facilitated, enabled, and concealed.

v.    As a direct and proximate result of the sexual abuse perpetrated against him, Plaintiff has suffered and continues to suffer severe, ongoing, and persistent mental, emotional, psychological, and physical injuries, including, but not limited to: anxiety; depression; feelings of helplessness and hopelessness; insomnia and sleep disturbances including nightmares; questioning of sexual identity; profoundly lowered self-esteem; moodiness and emotional dysregulation; difficulty forming and maintaining meaningful interpersonal and intimate relationships; pervasive loss of trust and control issues with persons in positions of authority; flashbacks, intrusive thoughts, and hypervigilance; chronic stress; nervousness; fear; deep embarrassment and shame; and a devastating loss of enjoyment of life, among other injuries.

BZ.    **John Doe 330278:**

i.    Plaintiff John Doe 330278 is a male, born on July 19, 1993, who was sexually abused at just 14 years old, in or around 2007, while confined within the Nevada Juvenile Justice System at the China Spring Youth Camp in Gardnerville, Nevada. At the time of the abuse, Plaintiff was a minor child entrusted to the custody, care, and supervision of the State of Nevada and its agents, employees, and contractors.

COMPLAINT

ii.    Plaintiff was committed to mandatory physical confinement at the China Spring Youth Camp in Gardnerville, Nevada, where he was placed under the complete custody, dominion, and control of Defendants and DOES 1-500. These Defendants held positions of extraordinary power, trust, and authority over Plaintiff—a vulnerable, confined child with no ability to leave, resist, or seek outside help. Defendants exploited this absolute power imbalance to sexually abuse and harass Plaintiff under color of authority on behalf of DEFENDANTS, and each of them.

iii.    While Plaintiff was confined he was subjected to egregious and predatory sexual abuse on at least 5 separate occasions, over a period of approximately 6 months. The Plaintiff would encounter the abuser in the intake area during strip searches. During incarceration the Plaintiff would be subjected to strip searches after returning to the facility from home passes. He would be instructed to remove his clothes for a search. Once he was naked and they were alone the abuser would grab and fondle the Plaintiffs genitals with his ungloved hands. He would then rub his covered genital area on the Plaintiff's body. There were other instances in which the Plaintiff was made to feel uncomfortable while showering as the abuser would watch them shower with what he described as an "ice piercing gaze." While there were no outward threats the plaintiff felt the abuser was intimidating.

iv.    Out of fear of retaliation, punishment, extended confinement, and further abuse, Plaintiff did not report—or was unable to meaningfully report—the sexual misconduct, knowing and believing that any complaints would be unanswered, dismissed, ignored, and buried without investigation or redress, thereby allowing the sexual misconduct to continue unabated. Plaintiff was systematically and repeatedly sexually abused in what was supposed to be a "safe haven" environment—an environment exclusively created, funded, staffed, maintained, and controlled by DEFENDANTS, and each of them. DEFENDANTS had a mandatory, non-delegable duty to protect this child from the very harm they facilitated, enabled, and concealed.

COMPLAINT

v.       As a direct and proximate result of the sexual abuse perpetrated against him, Plaintiff has suffered and continues to suffer severe, ongoing, and persistent mental, emotional, psychological, and physical injuries, including, but not limited to: anxiety; depression; feelings of helplessness and hopelessness; insomnia and sleep disturbances including nightmares; questioning of sexual identity; profoundly lowered self-esteem; moodiness and emotional dysregulation; difficulty forming and maintaining meaningful interpersonal and intimate relationships; pervasive loss of trust and control issues with persons in positions of authority; flashbacks, intrusive thoughts, and hypervigilance; chronic stress; nervousness; fear; deep embarrassment and shame; and a devastating loss of enjoyment of life, among other injuries.

CA.    **Jane Doe 330288:**

i.       Plaintiff Jane Doe 330288 is a female, born on November 16, 1998, who was sexually abused at just 17 years old, in or around 2016, while confined within the Nevada Juvenile Justice System at the Caliente Youth Center ("CYC") in Caliente, Nevada. At the time of the abuse, Plaintiff was a minor child entrusted to the custody, care, and supervision of the State of Nevada and its agents, employees, and contractors.

ii.      Plaintiff was committed to mandatory physical confinement at the Caliente Youth Center ("CYC") in Caliente, Nevada, where she was placed under the complete custody, dominion, and control of Defendants and DOES 1-500. These Defendants held positions of extraordinary power, trust, and authority over Plaintiff, a vulnerable, confined child with no ability to leave, resist, or seek outside help. Defendants exploited this absolute power imbalance to sexually abuse and harass Plaintiff under color of authority on behalf of DEFENDANTS, and each of them.

iii.     While Plaintiff was confined, she was subjected to egregious and predatory sexual abuse on at least 25 separate occasions, over a period of approximately 6 months. Plaintiff stated that the abuse happened during the day in the intake area. While in the room, Plaintiff was forced to remove all her clothing. Abuser 1 directed her to squat and cough. Abuser 1 fondled Plaintiff's breasts and made Plaintiff jump when she digitally

144

COMPLAINT

penetrated her vagina. Abuser 1 insisted it was part of their search; however, Plaintiff did not believe that. Abuser 1 then directed Plaintiff to redress. Once she was dressed, Abuser 1 did another search, this time with her bare hands over the clothing. Plaintiff insisted it was not standard protocol, and the excessive touching was unnecessary. Plaintiff also stated she was uncomfortable when OFFICER HERRING watched her during her shower. While Plaintiff bathed, she witnessed OFFICER HERRING shove her bare hand inside her own pants to fondle her own genitals to masturbation. After the self-masturbation, Plaintiff stated she witnessed OFFICER HERRING removed her hand from her pants and place her fingers in her mouth. As they were escorted out of the shower, OFFICER HERRING used the same hand to stroke Plaintiff's hair and tell her how pretty it was. Plaintiff reported that this event happened each time OFFICER HERRING escorted and supervised. No threats or bribes were made. There were 20 instances.  Further, Plaintiff was instructed to stand naked with her hands against the wall. Abuser 3 began the search and fondled Plaintiff's bare breasts. Abuser 3 instructed Plaintiff to bend over, as she ran her hand over Plaintiff's buttocks. Abuser 3 placed her hand on Plaintiff's vagina, moving it in a manner that was like masturbation. Abuser 3 penetrated Plaintiff's vagina and anus digitally. Finally, Plaintiff was in the classroom when the teacher, Abuser 4, smacked her buttocks on the outside of her clothing. Plaintiff was upset as Abuser 4 stared her in the eye, smacking her again on her buttocks. Plaintiff firmly told Abuser 4 to stop, which he did. Plaintiff told another staff member about what she endured; however, they shrugged it off, telling her he's married.

iv.     Out of fear of retaliation, punishment, extended confinement, and further abuse, Plaintiff did not report—or was unable to meaningfully report—the sexual misconduct, knowing and believing that any complaints would be unanswered, dismissed, ignored, and buried without investigation or redress, thereby allowing the sexual misconduct to continue unabated. Plaintiff was systematically and repeatedly sexually abused in what was supposed to be a "safe haven" environment—an environment exclusively created, funded, staffed, maintained, and controlled by DEFENDANTS, and

each of them. DEFENDANTS had a mandatory, non-delegable duty to protect this child from the very harm they facilitated, enabled, and concealed.

v.     As a direct and proximate result of the sexual abuse perpetrated against her, Plaintiff has suffered and continues to suffer severe, ongoing, and persistent mental, emotional, psychological, and physical injuries, including, but not limited to: anxiety; depression; feelings of helplessness and hopelessness; insomnia and sleep disturbances including nightmares; questioning of sexual identity; profoundly lowered self-esteem; moodiness and emotional dysregulation; difficulty forming and maintaining meaningful interpersonal and intimate relationships; pervasive loss of trust and control issues with persons in positions of authority; flashbacks, intrusive thoughts, and hypervigilance; chronic stress; nervousness; fear; deep embarrassment and shame; and a devastating loss of enjoyment of life, among other injuries.

CB.   **John Doe 330291:**

i.     Plaintiff John Doe 330291 is a male, born on January 26, 1990, who was sexually abused between the ages of 15 and 17, in or around 2005-2007, while confined within the Nevada Juvenile Justice System at the Summit View Youth Center ("SVYC") in North Las Vegas, Nevada. At the time of the abuse, Plaintiff was a minor child entrusted to the custody, care, and supervision of the State of Nevada and its agents, employees, and contractors.

ii.    Plaintiff was committed to mandatory physical confinement at the Summit View Youth Center ("SVYC") in North Las Vegas, Nevada, where he was placed under the complete custody, dominion, and control of Defendants and DOES 1-500. These Defendants held positions of extraordinary power, trust, and authority over Plaintiff, a vulnerable, confined child with no ability to leave, resist, or seek outside help. Defendants exploited this absolute power imbalance to sexually abuse and harass Plaintiff under color of authority on behalf of DEFENDANTS, and each of them.

iii.   While Plaintiff was confined, he was subjected to egregious and predatory sexual abuse on at least 7 separate occasions, over a period of approximately 2 years. The

146

COMPLAINT

Plaintiff would encounter the Abuser in his assigned unit. The Plaintiff was alone in his room when the Abuser entered. He approached the Plaintiff and forced his hands inside of his boxers and fondled his bare penis with an ungloved hand. He was threatened with more time and physical violence if he were to say anything with regards to the abuse.

iv.     Out of fear of retaliation, punishment, extended confinement, and further abuse, Plaintiff did not report—or was unable to meaningfully report—the sexual misconduct, knowing and believing that any complaints would be unanswered, dismissed, ignored, and buried without investigation or redress, thereby allowing the sexual misconduct to continue unabated. Plaintiff was systematically and repeatedly sexually abused in what was supposed to be a "safe haven" environment—an environment exclusively created, funded, staffed, maintained, and controlled by DEFENDANTS, and each of them. DEFENDANTS had a mandatory, non-delegable duty to protect this child from the very harm they facilitated, enabled, and concealed.

v.      As a direct and proximate result of the sexual abuse perpetrated against him, Plaintiff has suffered and continues to suffer severe, ongoing, and persistent mental, emotional, psychological, and physical injuries, including, but not limited to: anxiety; depression; feelings of helplessness and hopelessness; insomnia and sleep disturbances including nightmares; questioning of sexual identity; profoundly lowered self-esteem; moodiness and emotional dysregulation; difficulty forming and maintaining meaningful interpersonal and intimate relationships; pervasive loss of trust and control issues with persons in positions of authority; flashbacks, intrusive thoughts, and hypervigilance; chronic stress; nervousness; fear; deep embarrassment and shame; and a devastating loss of enjoyment of life, among other injuries.

CC.    **John Doe 330315:**

i.      Plaintiff John Doe 330315 is a male, born on October 19, 1991, who was sexually abused at just 15 years old, in or around 2007, while confined within the Nevada Juvenile Justice System at the Caliente Youth Center ("CYC") in Caliente, Nevada. At the

time of the abuse, Plaintiff was a minor child entrusted to the custody, care, and supervision of the State of Nevada and its agents, employees, and contractors.

ii.     Plaintiff was committed to mandatory physical confinement at the Caliente Youth Center ("CYC") in Caliente, Nevada, where he was placed under the complete custody, dominion, and control of Defendants and DOES 1-500. These Defendants held positions of extraordinary power, trust, and authority over Plaintiff, a vulnerable, confined child with no ability to leave, resist, or seek outside help. Defendants exploited this absolute power imbalance to sexually abuse and harass Plaintiff under color of authority on behalf of DEFENDANTS, and each of them.

iii.    While Plaintiff was confined, he was subjected to egregious and predatory sexual abuse on at least 2 separate occasions.  Plaintiff got into trouble at the facility and went to his room, slamming the door. The staff at the facility called a code and ran into his room and pinned him down on the floor by holding his legs and arms down. Abuser then penetrated Plaintiff's anus with his fingers. Plaintiff told the staff to stop, but the staff thought it was a "game." Anytime Plaintiff would mention the abuse to the Abuser he would slam the Plaintiff's head into the cement wall.

iv.    Out of fear of retaliation, punishment, extended confinement, and further abuse, Plaintiff did not report—or was unable to meaningfully report—the sexual misconduct, knowing and believing that any complaints would be unanswered, dismissed, ignored, and buried without investigation or redress, thereby allowing the sexual misconduct to continue unabated. Plaintiff was systematically and repeatedly sexually abused in what was supposed to be a "safe haven" environment—an environment exclusively created, funded, staffed, maintained, and controlled by DEFENDANTS, and each of them. DEFENDANTS had a mandatory, non-delegable duty to protect this child from the very harm they facilitated, enabled, and concealed.

v.     As a direct and proximate result of the sexual abuse perpetrated against him, Plaintiff has suffered and continues to suffer severe, ongoing, and persistent mental, emotional, psychological, and physical injuries, including, but not limited to: anxiety;

depression; feelings of helplessness and hopelessness; insomnia and sleep disturbances including nightmares; questioning of sexual identity; profoundly lowered self-esteem; moodiness and emotional dysregulation; difficulty forming and maintaining meaningful interpersonal and intimate relationships; pervasive loss of trust and control issues with persons in positions of authority; flashbacks, intrusive thoughts, and hypervigilance; chronic stress; nervousness; fear; deep embarrassment and shame; and a devastating loss of enjoyment of life, among other injuries.

CD.   **John Doe 330319:**

i.      Plaintiff John Doe 330319 is a male, born on March 07, 1992, who was sexually abused at just 14 years old, in or around 2007, while confined within the Nevada Juvenile Justice System at the Caliente Youth Center ("CYC") in Caliente, Nevada. At the time of the abuse, Plaintiff was a minor child entrusted to the custody, care, and supervision of the State of Nevada and its agents, employees, and contractors.

ii.      Plaintiff was committed to mandatory physical confinement at the Caliente Youth Center ("CYC") in Caliente, Nevada, where he was placed under the complete custody, dominion, and control of Defendants and DOES 1-500. These Defendants held positions of extraordinary power, trust, and authority over Plaintiff, a vulnerable, confined child with no ability to leave, resist, or seek outside help. Defendants exploited this absolute power imbalance to sexually abuse and harass Plaintiff under color of authority on behalf of DEFENDANTS, and each of them.

iii.      While Plaintiff was confined, he was subjected to egregious and predatory sexual abuse on at least one occasion by Abuser MS. FRANCIS.  The Plaintiff encountered the Abuser in his assigned unit. The Plaintiff was called out of his room one evening and escorted to a storage room by the Abuser. Once they were alone, the Abuser forced her hands inside the plaintiff's pants and masturbated him before then performing oral copulation on him until he ejaculated. She would grab his hands and guide them to fondle her genitals and breasts over her clothes.

iv.     Out of fear of retaliation, punishment, extended confinement, and further abuse, Plaintiff did not report—or was unable to meaningfully report—the sexual misconduct, knowing and believing that any complaints would be unanswered, dismissed, ignored, and buried without investigation or redress, thereby allowing the sexual misconduct to continue unabated. Plaintiff was systematically and repeatedly sexually abused in what was supposed to be a "safe haven" environment—an environment exclusively created, funded, staffed, maintained, and controlled by DEFENDANTS, and each of them. DEFENDANTS had a mandatory, non-delegable duty to protect this child from the very harm they facilitated, enabled, and concealed.

v.      As a direct and proximate result of the sexual abuse perpetrated against him, Plaintiff has suffered and continues to suffer severe, ongoing, and persistent mental, emotional, psychological, and physical injuries, including, but not limited to: anxiety; depression; feelings of helplessness and hopelessness; insomnia and sleep disturbances including nightmares; questioning of sexual identity; profoundly lowered self-esteem; moodiness and emotional dysregulation; difficulty forming and maintaining meaningful interpersonal and intimate relationships; pervasive loss of trust and control issues with persons in positions of authority; flashbacks, intrusive thoughts, and hypervigilance; chronic stress; nervousness; fear; deep embarrassment and shame; and a devastating loss of enjoyment of life, among other injuries.

CE.   **John Doe 330325:**

i.      Plaintiff John Doe 330325 is a male, born on April 14, 2000, who was sexually abused at just 16 years old, in or around 10/12/2016 to 03/01/2017, while confined within the Nevada Juvenile Justice System at the Nevada Youth Training Center ("NYTC") in Elko, Nevada. At the time of the abuse, Plaintiff was a minor child entrusted to the custody, care, and supervision of the State of Nevada and its agents, employees, and contractors.

ii.     Plaintiff was committed to mandatory physical confinement at the Nevada Youth Training Center ("NYTC") in Elko, Nevada, where he was placed under the

complete custody, dominion, and control of DEFENDANTS and DOES 1-500. These DEFENDANTS held positions of extraordinary power, trust, and authority over Plaintiff, a vulnerable, confined child with no ability to leave, resist, or seek outside help. DEFENDANTS exploited this absolute power imbalance to sexually abuse and harass Plaintiff under color of authority on behalf of DEFENDANTS, and each of them.

iii.    While Plaintiff was confined, he was subjected to egregious and predatory sexual abuse on at least 5 - 10 occasions, over a period of approximately 6 months. Plaintiff worked in the kitchen during his detainment, where the abuse would occur. On multiple occasions, Abuser, OFFICER SARA, would approach Plaintiff while in the kitchen. Plaintiff is unable to recall any words she spoke. OFFICER SARA would insert her gloved hand inside Plaintiff's jumpsuit and proceed to masturbate him to the point of ejaculation. OFFICER SARA threatened Plaintiff that he would never see his parents again if he reported the abuse.

iv.    Out of fear of retaliation, punishment, extended confinement, and further abuse, Plaintiff did not report—or was unable to meaningfully report—the sexual misconduct, knowing and believing that any complaints would be unanswered, dismissed, ignored, and buried without investigation or redress, thereby allowing the sexual misconduct to continue unabated. Plaintiff was systematically and repeatedly sexually abused in what was supposed to be a "safe haven" environment—an environment exclusively created, funded, staffed, maintained, and controlled by DEFENDANTS, and each of them. DEFENDANTS had a mandatory, non-delegable duty to protect this child from the very harm they facilitated, enabled, and concealed.

v.    As a direct and proximate result of the sexual abuse perpetrated against him, Plaintiff has suffered and continues to suffer severe, ongoing, and persistent mental, emotional, psychological, and physical injuries, including, but not limited to: anxiety; depression; feelings of helplessness and hopelessness; insomnia and sleep disturbances including nightmares; questioning of sexual identity; profoundly lowered self-esteem; moodiness and emotional dysregulation; difficulty forming and maintaining meaningful

interpersonal and intimate relationships; pervasive loss of trust and control issues with persons in positions of authority; flashbacks, intrusive thoughts, and hypervigilance; chronic stress; nervousness; fear; deep embarrassment and shame; and a devastating loss of enjoyment of life, among other injuries.

CF.    **John Doe 330330:**

i.        Plaintiff John Doe 330330 is a male, born on April 24, 2000, who was sexually abused at just 16 years old, in or around 2016, while confined within the Nevada Juvenile Justice System at the Nevada Youth Training Center ("NYTC") in Elko, Nevada. At the time of the abuse, Plaintiff was a minor child entrusted to the custody, care, and supervision of the State of Nevada and its agents, employees, and contractors.

ii.       Plaintiff was committed to mandatory physical confinement at the Nevada Youth Training Center ("NYTC") in Elko, Nevada, where he was placed under the complete custody, dominion, and control of Defendants and DOES 1-500. These Defendants held positions of extraordinary power, trust, and authority over Plaintiff, a vulnerable, confined child with no ability to leave, resist, or seek outside help. Defendants exploited this absolute power imbalance to sexually abuse and harass Plaintiff under color of authority on behalf of DEFENDANTS, and each of them.

iii.      While Plaintiff was confined, he was subjected to egregious and predatory sexual abuse on at least 2 separate occasions, over a period of approximately 2 days. The Plaintiff encountered the Abuser in his assigned housing unit during his incarceration. There were 2 incidents that happened during 2 separate strip searches, one occurred in the shower area and one occurred in his room. During the 1st incident the Plaintiff was in the shower when he was approached by the abuser MR. ROBINSON saying "what is that?" followed by the abuser grabbing the Plaintiff's bare penis with an ungloved hand. During the 2nd incident the Plaintiff was in his room when the abuser conducted a search. Once the Plaintiff removed his clothes he was told to bend over, squat and cough. The Abuser proceeded to fondle his bare penis and grab his bare butt with an ungloved hand.  He was

threatened with more time should he say anything about the abuse. He was rewarded with fast food from McDonalds and Burger King.

iv.    Out of fear of retaliation, punishment, extended confinement, and further abuse, Plaintiff did not report—or was unable to meaningfully report—the sexual misconduct, knowing and believing that any complaints would be unanswered, dismissed, ignored, and buried without investigation or redress, thereby allowing the sexual misconduct to continue unabated. Plaintiff was systematically and repeatedly sexually abused in what was supposed to be a "safe haven" environment—an environment exclusively created, funded, staffed, maintained, and controlled by DEFENDANTS, and each of them. DEFENDANTS had a mandatory, non-delegable duty to protect this child from the very harm they facilitated, enabled, and concealed.

v.    As a direct and proximate result of the sexual abuse perpetrated against him, Plaintiff has suffered and continues to suffer severe, ongoing, and persistent mental, emotional, psychological, and physical injuries, including, but not limited to: anxiety; depression; feelings of helplessness and hopelessness; insomnia and sleep disturbances including nightmares; questioning of sexual identity; profoundly lowered self-esteem; moodiness and emotional dysregulation; difficulty forming and maintaining meaningful interpersonal and intimate relationships; pervasive loss of trust and control issues with persons in positions of authority; flashbacks, intrusive thoughts, and hypervigilance; chronic stress; nervousness; fear; deep embarrassment and shame; and a devastating loss of enjoyment of life, among other injuries.

CG.    **Jane Doe 330362:**

i.    Plaintiff Jane Doe 330362 is a female, born on April 28, 1998, who was sexually abused between the ages of 16 and 17, in or around 2014, while confined within the Nevada Juvenile Justice System at the Nevada Youth Training Center ("NYTC") in Elko, Nevada. At the time of the abuse, Plaintiff was a minor child entrusted to the custody, care, and supervision of the State of Nevada and its agents, employees, and contractors.

COMPLAINT

ii.    Plaintiff was committed to mandatory physical confinement at the Nevada Youth Training Center ("NYTC") in Elko, Nevada, where she was placed under the complete custody, dominion, and control of Defendants and DOES 1-500. These Defendants held positions of extraordinary power, trust, and authority over Plaintiff, a vulnerable, confined child with no ability to leave, resist, or seek outside help. Defendants exploited this absolute power imbalance to sexually abuse and harass Plaintiff under color of authority on behalf of DEFENDANTS, and each of them.

iii.    While Plaintiff was confined, she was subjected to egregious and predatory sexual abuse on at least 12 separate occasions, over a period of approximately 1year by Abuser MR. BRADLEY.  The Plaintiff would encounter the Abuser in her assigned housing unit. She would be in her room when the Abuser would enter and escort her to the kitchen area where the cameras were not working. Once they were alone, the Abuser would expose his genitals and force her to perform oral copulation before he would then proceed to rape her.  She was threatened with more and harder time if she were to say anything about the abuse or if she was noncompliant.

iv.    Out of fear of retaliation, punishment, extended confinement, and further abuse, Plaintiff did not report—or was unable to meaningfully report—the sexual misconduct, knowing and believing that any complaints would be unanswered, dismissed, ignored, and buried without investigation or redress, thereby allowing the sexual misconduct to continue unabated. Plaintiff was systematically and repeatedly sexually abused in what was supposed to be a "safe haven" environment—an environment exclusively created, funded, staffed, maintained, and controlled by DEFENDANTS, and each of them. DEFENDANTS had a mandatory, non-delegable duty to protect this child from the very harm they facilitated, enabled, and concealed.

v.    As a direct and proximate result of the sexual abuse perpetrated against her, Plaintiff has suffered and continues to suffer severe, ongoing, and persistent mental, emotional, psychological, and physical injuries, including, but not limited to: anxiety; depression; feelings of helplessness and hopelessness; insomnia and sleep disturbances

including nightmares; questioning of sexual identity; profoundly lowered self-esteem; moodiness and emotional dysregulation; difficulty forming and maintaining meaningful interpersonal and intimate relationships; pervasive loss of trust and control issues with persons in positions of authority; flashbacks, intrusive thoughts, and hypervigilance; chronic stress; nervousness; fear; deep embarrassment and shame; and a devastating loss of enjoyment of life, among other injuries.

CH.   **John Doe 330369:**

i.      Plaintiff John Doe 330369 is a male, born on September 22, 1988, who was sexually abused at just 17 years old, in or around 2006, while confined within the Nevada Juvenile Justice System at the Nevada Youth Training Center ("NYTC") in Elko, Nevada. At the time of the abuse, Plaintiff was a minor child entrusted to the custody, care, and supervision of the State of Nevada and its agents, employees, and contractors.

ii.      Plaintiff was committed to mandatory physical confinement at the Nevada Youth Training Center ("NYTC") in Elko, Nevada, where he was placed under the complete custody, dominion, and control of Defendants and DOES 1-500. These Defendants held positions of extraordinary power, trust, and authority over Plaintiff, a vulnerable, confined child with no ability to leave, resist, or seek outside help. Defendants exploited this absolute power imbalance to sexually abuse and harass Plaintiff under color of authority on behalf of DEFENDANTS, and each of them.

iii.      While Plaintiff was confined, he was subjected to egregious and predatory sexual abuse on at least 1 instance.  Plaintiff reported that he had just gotten himself into trouble, and the abuser, Mr. YOUNG, was transporting him to the Mountaineer Cottage. MR. YOUNG began to flirt with Plaintiff and complimented Plaintiff's eyes. Once they arrived in the Mountaineer Cottage, MR. YOUNG reached into Plaintiff's pants and began to masturbate his penis without gloves. MR. YOUNG told Plaintiff that no one would believe him if he reported the abuse.

iv.      Out of fear of retaliation, punishment, extended confinement, and further abuse, Plaintiff did not report—or was unable to meaningfully report—the sexual

misconduct, knowing and believing that any complaints would be unanswered, dismissed, ignored, and buried without investigation or redress, thereby allowing the sexual misconduct to continue unabated. Plaintiff was systematically and repeatedly sexually abused in what was supposed to be a "safe haven" environment—an environment exclusively created, funded, staffed, maintained, and controlled by DEFENDANTS, and each of them. DEFENDANTS had a mandatory, non-delegable duty to protect this child from the very harm they facilitated, enabled, and concealed.

v.      As a direct and proximate result of the sexual abuse perpetrated against him, Plaintiff has suffered and continues to suffer severe, ongoing, and persistent mental, emotional, psychological, and physical injuries, including, but not limited to: anxiety; depression; feelings of helplessness and hopelessness; insomnia and sleep disturbances including nightmares; questioning of sexual identity; profoundly lowered self-esteem; moodiness and emotional dysregulation; difficulty forming and maintaining meaningful interpersonal and intimate relationships; pervasive loss of trust and control issues with persons in positions of authority; flashbacks, intrusive thoughts, and hypervigilance; chronic stress; nervousness; fear; deep embarrassment and shame; and a devastating loss of enjoyment of life, among other injuries.

CI.     **John Doe 330380:**

i.      Plaintiff John Doe 330380 is a male, born on October 02, 1990, who was sexually abused between the ages of 16 and 17, in or around 2007-2008, while confined within the Nevada Juvenile Justice System at the Summit View Youth Center ("SVYC") in North Las Vegas, Nevada. At the time of the abuse, Plaintiff was a minor child entrusted to the custody, care, and supervision of the State of Nevada and its agents, employees, and contractors.

ii.     Plaintiff was committed to mandatory physical confinement at the Summit View Youth Center ("SVYC") in North Las Vegas, Nevada, where he was placed under the complete custody, dominion, and control of Defendants and DOES 1-500. These Defendants held positions of extraordinary power, trust, and authority over Plaintiff, a

COMPLAINT

vulnerable, confined child with no ability to leave, resist, or seek outside help. Defendants exploited this absolute power imbalance to sexually abuse and harass Plaintiff under color of authority on behalf of DEFENDANTS, and each of them.

iii.    While Plaintiff was confined, he was subjected to egregious and predatory sexual abuse on at least 33 separate occasions, over a period of approximately 20 months. On multiple occasions, Abuser One would enter Plaintiff's cell or escort Plaintiff from his cell to a staff office. On all of these occasions, Plaintiff would be forced to perform oral copulation on Abuser One until the point of ejaculation. Abuser One would also force oral copulation on Plaintiff. On one occasion in the office, Plaintiff attempted to resist Abuser. Abuser choked Plaintiff until Plaintiff lost consciousness. When Plaintiff regained consciousness, he was still in the office with the abuser and was forced to perform oral copulation. Abuser threatened to extend Plaintiff's sentence and make his time harder if he disclosed the abuser to anyone. In addition, on multiple occasions, Abuser 2, MS. BURTON, would escort Plaintiff from his room to the laundry room. Plaintiff would be forced to perform oral copulation on MS. BURTON before MS. BURTON forced Plaintiff to penetrate her with his bare penis until the point of ejaculation inside Ms. Burton. On several occasions, Plaintiff was forced to penetrate Ms. Burton vaginally, and on other occasions, he was forced to penetrate her anally. On one occasion, Plaintiff attempted to resist, and MS. BURTON punched Plaintiff in the face, causing Plaintiff to sustain two black eyes. MS. BURTON refused to allow Plaintiff to seek medical attention and threatened to have other staff make his time more difficult if he disclosed the abuse. Further, on multiple occasions, Abuser 3 three would enter Plaintiff's cell or escort Plaintiff to an entertainment room. Abuser 3 would sodomize Plaintiff until the point of ejaculation inside Plaintiff's anus. Plaintiff attempted to resist on multiple occasions. Abuser 3 would punch Plaintiff in his stomach, back, and side, causing bruising. On four occasions, Abuser 3 choked Plaintiff until he lost consciousness. Plaintiff was refused medical attention, and Abuser three threatened to kill Plaintiff if he disclosed the abuse.

COMPLAINT

iv.     Out of fear of retaliation, punishment, extended confinement, and further abuse, Plaintiff did not report—or was unable to meaningfully report—the sexual misconduct, knowing and believing that any complaints would be unanswered, dismissed, ignored, and buried without investigation or redress, thereby allowing the sexual misconduct to continue unabated. Plaintiff was systematically and repeatedly sexually abused in what was supposed to be a "safe haven" environment—an environment exclusively created, funded, staffed, maintained, and controlled by DEFENDANTS, and each of them. DEFENDANTS had a mandatory, non-delegable duty to protect this child from the very harm they facilitated, enabled, and concealed.

v.     As a direct and proximate result of the sexual abuse perpetrated against him, Plaintiff has suffered and continues to suffer severe, ongoing, and persistent mental, emotional, psychological, and physical injuries, including, but not limited to: anxiety; depression; feelings of helplessness and hopelessness; insomnia and sleep disturbances including nightmares; questioning of sexual identity; profoundly lowered self-esteem; moodiness and emotional dysregulation; difficulty forming and maintaining meaningful interpersonal and intimate relationships; pervasive loss of trust and control issues with persons in positions of authority; flashbacks, intrusive thoughts, and hypervigilance; chronic stress; nervousness; fear; deep embarrassment and shame; and a devastating loss of enjoyment of life, among other injuries.

CJ.     **Jane Doe 330442:**

i.     Plaintiff Jane Doe 330442 is a female, born on August 08, 2006, who was sexually abused at just 15 years old, in or around the end of 2021 to Mid-2022, while confined within the Nevada Juvenile Justice System at the Caliente Youth Center ("CYC") in Caliente, Nevada. At the time of the abuse, Plaintiff was a minor child entrusted to the custody, care, and supervision of the State of Nevada and its agents, employees, and contractors.

ii.     Plaintiff was committed to mandatory physical confinement at the Caliente Youth Center ("CYC") in Caliente, Nevada, where she was placed under the complete

158

COMPLAINT

custody, dominion, and control of Defendants and DOES 1-500. These Defendants held positions of extraordinary power, trust, and authority over Plaintiff, a vulnerable, confined child with no ability to leave, resist, or seek outside help. Defendants exploited this absolute power imbalance to sexually abuse and harass Plaintiff under color of authority on behalf of DEFENDANTS, and each of them.

iii.    While Plaintiff was confined, she was subjected to egregious and predatory sexual abuse on at least 15-20 occasions.  Both her abusers would make sexual comments towards her.  Plaintiff claims she was restrained in a green restraint suit in her room, or by the gym, where Abuser 1 would touch the Plaintiff's breasts, buttocks, and/or genitals, all without gloves, skin to skin contact under her clothing.  In addition, Abuser 2 came into the Plaintiff's room on one occasion when the Plaintiff was being restrained. Abuser 2 groped the Plaintiff's breast, with no gloves on, and with skin-to-skin contact, and fondled her vagina.   Plaintiff indicated that staff would make comments such as, "Stop playing with me, you act like I'm not in control of your levels." The Abusers would bring the Plaintiff in items from outside, like food, stuffed animals, and hygiene products as a reward.

iv.    Out of fear of retaliation, punishment, extended confinement, and further abuse, Plaintiff did not report—or was unable to meaningfully report—the sexual misconduct, knowing and believing that any complaints would be unanswered, dismissed, ignored, and buried without investigation or redress, thereby allowing the sexual misconduct to continue unabated. Plaintiff was systematically and repeatedly sexually abused in what was supposed to be a "safe haven" environment—an environment exclusively created, funded, staffed, maintained, and controlled by DEFENDANTS, and each of them. DEFENDANTS had a mandatory, non-delegable duty to protect this child from the very harm they facilitated, enabled, and concealed.

v.    As a direct and proximate result of the sexual abuse perpetrated against her, Plaintiff has suffered and continues to suffer severe, ongoing, and persistent mental, emotional, psychological, and physical injuries, including, but not limited to: anxiety;

COMPLAINT

depression; feelings of helplessness and hopelessness; insomnia and sleep disturbances including nightmares; questioning of sexual identity; profoundly lowered self-esteem; moodiness and emotional dysregulation; difficulty forming and maintaining meaningful interpersonal and intimate relationships; pervasive loss of trust and control issues with persons in positions of authority; flashbacks, intrusive thoughts, and hypervigilance; chronic stress; nervousness; fear; deep embarrassment and shame; and a devastating loss of enjoyment of life, among other injuries.

CK.    **Jane Doe 330500:**

i.    Plaintiff Jane Doe 330500 is a female, born on March 31, 2002, who was sexually abused between the ages of 16 and 17, in or around 2018-2019, while confined within the Nevada Juvenile Justice System at the Caliente Youth Center ("CYC") in Caliente, Nevada. At the time of the abuse, Plaintiff was a minor child entrusted to the custody, care, and supervision of the State of Nevada and its agents, employees, and contractors.

ii.    Plaintiff was committed to mandatory physical confinement at the Caliente Youth Center ("CYC") in Caliente, Nevada, where she was placed under the complete custody, dominion, and control of Defendants and DOES 1-500. These Defendants held positions of extraordinary power, trust, and authority over Plaintiff, a vulnerable, confined child with no ability to leave, resist, or seek outside help. Defendants exploited this absolute power imbalance to sexually abuse and harass Plaintiff under color of authority on behalf of DEFENDANTS, and each of them.

iii.    While Plaintiff was confined, she was subjected to egregious and predatory sexual abuse on at least 27 separate occasions, over a period of approximately 10 months, by Abuser OFFICER CLARK in his assigned housing unit. The Plaintiff was preparing to head back to the unit after class and was instructed to stay behind by the abuser. Once they were alone, the Abuser exposed his genitals and forced the Plaintiff to perform oral copulation. The Abuser did ejaculate. The Abuser would then perform oral copulation on the Plaintiff. This would occur 3x a month for 9 months of his incarceration.

COMPLAINT

iv.    Out of fear of retaliation, punishment, extended confinement, and further abuse, Plaintiff did not report—or was unable to meaningfully report—the sexual misconduct, knowing and believing that any complaints would be unanswered, dismissed, ignored, and buried without investigation or redress, thereby allowing the sexual misconduct to continue unabated. Plaintiff was systematically and repeatedly sexually abused in what was supposed to be a "safe haven" environment—an environment exclusively created, funded, staffed, maintained, and controlled by DEFENDANTS, and each of them. DEFENDANTS had a mandatory, non-delegable duty to protect this child from the very harm they facilitated, enabled, and concealed.

v.    As a direct and proximate result of the sexual abuse perpetrated against her, Plaintiff has suffered and continues to suffer severe, ongoing, and persistent mental, emotional, psychological, and physical injuries, including, but not limited to: anxiety; depression; feelings of helplessness and hopelessness; insomnia and sleep disturbances including nightmares; questioning of sexual identity; profoundly lowered self-esteem; moodiness and emotional dysregulation; difficulty forming and maintaining meaningful interpersonal and intimate relationships; pervasive loss of trust and control issues with persons in positions of authority; flashbacks, intrusive thoughts, and hypervigilance; chronic stress; nervousness; fear; deep embarrassment and shame; and a devastating loss of enjoyment of life, among other injuries.

CL.    **John Doe 330504:**

i.    Plaintiff John Doe 330504 is a male, born on October 01, 1994, who was sexually abused between the ages of 16 and 17, in or around 2010-2011, while confined within the Nevada Juvenile Justice System at the Caliente Youth Center ("CYC") in Caliente, Nevada, and the Nevada Youth Training Center ("NYTC") in Elko, Nevada. At the time of the abuse, Plaintiff was a minor child entrusted to the custody, care, and supervision of the State of Nevada and its agents, employees, and contractors.

ii.    Plaintiff was committed to mandatory physical confinement at the Caliente Youth Center ("CYC") in Caliente, Nevada, and the Nevada Youth Training Center

161

COMPLAINT

("NYTC") in Elko, Nevada, where he was placed under the complete custody, dominion, and control of Defendants and DOES 1-500. These Defendants held positions of extraordinary power, trust, and authority over Plaintiff, a vulnerable, confined child with no ability to leave, resist, or seek outside help. Defendants exploited this absolute power imbalance to sexually abuse and harass Plaintiff under color of authority on behalf of DEFENDANTS, and each of them.

iii.    While Plaintiff was confined, he was subjected to egregious and predatory sexual abuse on at least 408 separate occasions, over a period of approximately 2 years, by Abuser OFFICER JAMES in his assigned housing unit. The Plaintiff would be alone in his room when the abuser would enter. Once they were alone, the Abuser would expose his genitals and force the Plaintiff to perform oral copulation. He would then force his hands inside of the Plaintiff's pants and digitally sodomize him. This would occur 12x in the same manner.  He was threatened with more time if he were to say anything or if he was noncompliant with the abuse.  He was also abused by Abuser OFFICER CHAVEZ on multiple occasions in his assigned housing unit. The Plaintiff would be alone in his room when the Abuser 2 would enter. Once alone, the Abuser 2 would expose his genitals and force the Plaintiff to perform oral copulation before he would then sodomize the Plaintiff until he ejaculated. The Abuser 2 would pull out before ejaculation.  Further, he was subject to conduct by Abusers 3, 4 & 5 - OFFICER GOODSON, OFFICER OLSON, OFFICER SMITH in his assigned housing unit. The Plaintiff would be in the last batch of inmates brought to the shower by the 3 Abusers. Once it was just the guards and the last inmates, the abusers would force the inmates to perform the following sexual acts on one another while they watched and masturbated themselves to ejaculation: The Plaintiff was forced to perform oral copulation on other inmates; The Plaintiff was forced to receive oral copulation from other inmates; The Plaintiff was forced to sodomize other inmates; The Plaintiff was forced to be sodomized by other inmates; The Plaintiff was forced to masturbate and fondle other inmates; The Plaintiff was forced to be masturbated and fondled by other inmates.

COMPLAINT

iv.     Out of fear of retaliation, punishment, extended confinement, and further abuse, Plaintiff did not report—or was unable to meaningfully report—the sexual misconduct, knowing and believing that any complaints would be unanswered, dismissed, ignored, and buried without investigation or redress, thereby allowing the sexual misconduct to continue unabated. Plaintiff was systematically and repeatedly sexually abused in what was supposed to be a "safe haven" environment—an environment exclusively created, funded, staffed, maintained, and controlled by DEFENDANTS, and each of them. DEFENDANTS had a mandatory, non-delegable duty to protect this child from the very harm they facilitated, enabled, and concealed.

v.     As a direct and proximate result of the sexual abuse perpetrated against him, Plaintiff has suffered and continues to suffer severe, ongoing, and persistent mental, emotional, psychological, and physical injuries, including, but not limited to: anxiety; depression; feelings of helplessness and hopelessness; insomnia and sleep disturbances including nightmares; questioning of sexual identity; profoundly lowered self-esteem; moodiness and emotional dysregulation; difficulty forming and maintaining meaningful interpersonal and intimate relationships; pervasive loss of trust and control issues with persons in positions of authority; flashbacks, intrusive thoughts, and hypervigilance; chronic stress; nervousness; fear; deep embarrassment and shame; and a devastating loss of enjoyment of life, among other injuries.

CM.     **John Doe 330547:**

i.     Plaintiff John Doe 330547 is a male, born on December 08, 1991, who was sexually abused between the ages of 14 and 15, in or around 2008, while confined within the Nevada Juvenile Justice System at the Caliente Youth Center ("CYC") in Caliente, Nevada. At the time of the abuse, Plaintiff was a minor child entrusted to the custody, care, and supervision of the State of Nevada and its agents, employees, and contractors.

ii.     Plaintiff was committed to mandatory physical confinement at the Caliente Youth Center ("CYC") in Caliente, Nevada, where he was placed under the complete custody, dominion, and control of Defendants and DOES 1-500. These Defendants held

positions of extraordinary power, trust, and authority over Plaintiff, a vulnerable, confined child with no ability to leave, resist, or seek outside help. Defendants exploited this absolute power imbalance to sexually abuse and harass Plaintiff under color of authority on behalf of DEFENDANTS, and each of them.

iii.     While Plaintiff was confined, he was subjected to egregious and predatory sexual abuse on at least 268 separate occasions, over a period of approximately 10 months, by ABUSER LUCASSI in his assigned housing unit. The Abuser would be behind the Plaintiff and grope his genitals over his clothes. The Abuser would make inappropriate comments, "You can't sit like that, someone will stick a dick in your butt." The Abuser would force his hands inside the Plaintiff's pants and fondle his bare penis while masturbating himself. The Plaintiff was forced to masturbate the Abuser until he ejaculated.  He was threatened with more time if he were to say anything and given extra snacks to keep quiet and remain compliant. There were also physical assaults in which the Plaintiff was injured and sustained a broken wrist and dislocated shoulder.  In addition, Abuser MS. LAFLAIR would come to his room and watch him change while she masturbated her vagina. She would force her hands inside the Plaintiff's pants and masturbate his bare penis until he ejaculated. She would escort the Plaintiff into another room where a female inmate was. He was forced to receive oral copulation from the female inmate. He would also be forced to perform oral sex on the inmate. This would occur on 6 separate occasions.  He was threatened with more time and making his incarceration harder than it already was, and rewarded with outside food and snacks.

iv.     Out of fear of retaliation, punishment, extended confinement, and further abuse, Plaintiff did not report—or was unable to meaningfully report—the sexual misconduct, knowing and believing that any complaints would be unanswered, dismissed, ignored, and buried without investigation or redress, thereby allowing the sexual misconduct to continue unabated. Plaintiff was systematically and repeatedly sexually abused in what was supposed to be a "safe haven" environment—an environment exclusively created, funded, staffed, maintained, and controlled by DEFENDANTS, and

COMPLAINT

each of them. DEFENDANTS had a mandatory, non-delegable duty to protect this child from the very harm they facilitated, enabled, and concealed.

v.      As a direct and proximate result of the sexual abuse perpetrated against him, Plaintiff has suffered and continues to suffer severe, ongoing, and persistent mental, emotional, psychological, and physical injuries, including, but not limited to: anxiety; depression; feelings of helplessness and hopelessness; insomnia and sleep disturbances including nightmares; questioning of sexual identity; profoundly lowered self-esteem; moodiness and emotional dysregulation; difficulty forming and maintaining meaningful interpersonal and intimate relationships; pervasive loss of trust and control issues with persons in positions of authority; flashbacks, intrusive thoughts, and hypervigilance; chronic stress; nervousness; fear; deep embarrassment and shame; and a devastating loss of enjoyment of life, among other injuries.

CN.    **Jane Doe 330625:**

i.      Plaintiff Jane Doe 330625 is a female, born on July 15, 1988, who was sexually abused at just 14 years old, in or around 2005, while confined within the Nevada Juvenile Justice System at the Caliente Youth Center ("CYC") in Caliente, Nevada. At the time of the abuse, Plaintiff was a minor child entrusted to the custody, care, and supervision of the State of Nevada and its agents, employees, and contractors.

ii.      Plaintiff was committed to mandatory physical confinement at the Caliente Youth Center ("CYC") in Caliente, Nevada, where she was placed under the complete custody, dominion, and control of Defendants and DOES 1-500. These Defendants held positions of extraordinary power, trust, and authority over Plaintiff, a vulnerable, confined child with no ability to leave, resist, or seek outside help. Defendants exploited this absolute power imbalance to sexually abuse and harass Plaintiff under color of authority on behalf of DEFENDANTS, and each of them.

iii.      While Plaintiff was confined, she was subjected to egregious and predatory sexual abuse by Abuser MR. ESCAMBINO.  Plaintiff was at the back of the line when the abuser came up to her and then put his hand under Plaintiff's pants and grabbed and

165

COMPLAINT

fondled her buttocks and vagina, skin-to-skin with no gloves on. The abuser further exploited Plaintiff by offering extra TV time.

iv.      Out of fear of retaliation, punishment, extended confinement, and further abuse, Plaintiff did not report—or was unable to meaningfully report—the sexual misconduct, knowing and believing that any complaints would be unanswered, dismissed, ignored, and buried without investigation or redress, thereby allowing the sexual misconduct to continue unabated. Plaintiff was systematically and repeatedly sexually abused in what was supposed to be a "safe haven" environment—an environment exclusively created, funded, staffed, maintained, and controlled by DEFENDANTS, and each of them. DEFENDANTS had a mandatory, non-delegable duty to protect this child from the very harm they facilitated, enabled, and concealed.

v.      As a direct and proximate result of the sexual abuse perpetrated against her, Plaintiff has suffered and continues to suffer severe, ongoing, and persistent mental, emotional, psychological, and physical injuries, including, but not limited to: anxiety; depression; feelings of helplessness and hopelessness; insomnia and sleep disturbances including nightmares; questioning of sexual identity; profoundly lowered self-esteem; moodiness and emotional dysregulation; difficulty forming and maintaining meaningful interpersonal and intimate relationships; pervasive loss of trust and control issues with persons in positions of authority; flashbacks, intrusive thoughts, and hypervigilance; chronic stress; nervousness; fear; deep embarrassment and shame; and a devastating loss of enjoyment of life, among other injuries.

CO.   **Jane Doe 330621:**

i.      Plaintiff Jane Doe 330621 is a female, born on July 08, 2002, who was sexually abused at just 16 years old, in or around 2018, while confined within the Nevada Juvenile Justice System at the Caliente Youth Center ("CYC") in Caliente, Nevada. At the time of the abuse, Plaintiff was a minor child entrusted to the custody, care, and supervision of the State of Nevada and its agents, employees, and contractors.

COMPLAINT

ii.     Plaintiff was committed to mandatory physical confinement at the Caliente Youth Center ("CYC") in Caliente, Nevada, where she was placed under the complete custody, dominion, and control of Defendants and DOES 1-500. These Defendants held positions of extraordinary power, trust, and authority over Plaintiff, a vulnerable, confined child with no ability to leave, resist, or seek outside help. Defendants exploited this absolute power imbalance to sexually abuse and harass Plaintiff under color of authority on behalf of DEFENDANTS, and each of them.

iii.    While Plaintiff was confined, she was subjected to egregious and predatory sexual abuse on at least 2 separate occasions.  On the first occasion, Abuser MR. BURTON escorted Plaintiff and other girls to the bathroom during an event at the facility. Plaintiff recalls being the first one out. While waiting in the dayroom, MR. BURTON reached under Plaintiff's shirt and groped her breasts with his bare hands. On the second occasion, MR. BURTON came and got Plaintiff from her room to go for a walk around the outside of the facility. While outside, MR. BURTON again forced his hands under Plaintiff's shirt and groped her breasts with his bare hands.

iv.    Out of fear of retaliation, punishment, extended confinement, and further abuse, Plaintiff did not report—or was unable to meaningfully report—the sexual misconduct, knowing and believing that any complaints would be unanswered, dismissed, ignored, and buried without investigation or redress, thereby allowing the sexual misconduct to continue unabated. Plaintiff was systematically and repeatedly sexually abused in what was supposed to be a "safe haven" environment—an environment exclusively created, funded, staffed, maintained, and controlled by DEFENDANTS, and each of them. DEFENDANTS had a mandatory, non-delegable duty to protect this child from the very harm they facilitated, enabled, and concealed.

v.     As a direct and proximate result of the sexual abuse perpetrated against her, Plaintiff has suffered and continues to suffer severe, ongoing, and persistent mental, emotional, psychological, and physical injuries, including, but not limited to: anxiety; depression; feelings of helplessness and hopelessness; insomnia and sleep disturbances

including nightmares; questioning of sexual identity; profoundly lowered self-esteem; moodiness and emotional dysregulation; difficulty forming and maintaining meaningful interpersonal and intimate relationships; pervasive loss of trust and control issues with persons in positions of authority; flashbacks, intrusive thoughts, and hypervigilance; chronic stress; nervousness; fear; deep embarrassment and shame; and a devastating loss of enjoyment of life, among other injuries.

CP.   **John Doe 330669:**

i.       Plaintiff John Doe 330669 is a male, born on October 13, 2006, who was sexually abused between the ages of 16 and 17, in or around 2024, while confined within the Nevada Juvenile Justice System at the Nevada Youth Training Center ("NYTC") in Elko, Nevada. At the time of the abuse, Plaintiff was a minor child entrusted to the custody, care, and supervision of the State of Nevada and its agents, employees, and contractors.

ii.      Plaintiff was committed to mandatory physical confinement at the Nevada Youth Training Center ("NYTC") in Elko, Nevada, where he was placed under the complete custody, dominion, and control of Defendants and DOES 1-500. These Defendants held positions of extraordinary power, trust, and authority over Plaintiff, a vulnerable, confined child with no ability to leave, resist, or seek outside help. Defendants exploited this absolute power imbalance to sexually abuse and harass Plaintiff under color of authority on behalf of DEFENDANTS, and each of them.

iii.     While Plaintiff was confined, he was subjected to egregious and predatory sexual abuse on at least 3 occasions. Abuser would instruct the Plaintiff to take off his pants and then instruct the Plaintiff to watch him take off his pants. He then would force the Plaintiff to masturbate him, and he would masturbate the Plaintiff, without any gloves or condoms. The Plaintiff did not ejaculate and is not sure if the abuser ejaculated. The Abuser would then tell him that if he told anyone, he would "see what happens," implying more sexual abuse.

COMPLAINT

iv.     Out of fear of retaliation, punishment, extended confinement, and further abuse, Plaintiff did not report—or was unable to meaningfully report—the sexual misconduct, knowing and believing that any complaints would be unanswered, dismissed, ignored, and buried without investigation or redress, thereby allowing the sexual misconduct to continue unabated. Plaintiff was systematically and repeatedly sexually abused in what was supposed to be a "safe haven" environment—an environment exclusively created, funded, staffed, maintained, and controlled by DEFENDANTS, and each of them. DEFENDANTS had a mandatory, non-delegable duty to protect this child from the very harm they facilitated, enabled, and concealed.

v.     As a direct and proximate result of the sexual abuse perpetrated against him, Plaintiff has suffered and continues to suffer severe, ongoing, and persistent mental, emotional, psychological, and physical injuries, including, but not limited to: anxiety; depression; feelings of helplessness and hopelessness; insomnia and sleep disturbances including nightmares; questioning of sexual identity; profoundly lowered self-esteem; moodiness and emotional dysregulation; difficulty forming and maintaining meaningful interpersonal and intimate relationships; pervasive loss of trust and control issues with persons in positions of authority; flashbacks, intrusive thoughts, and hypervigilance; chronic stress; nervousness; fear; deep embarrassment and shame; and a devastating loss of enjoyment of life, among other injuries.

CQ.    **John Doe 330676:**

i.     Plaintiff John Doe 330676 is a male, born on July 23, 1997, who was sexually abused at just 16 years old, in or around 2014, while confined within the Nevada Juvenile Justice System at the Nevada Youth Training Center ("NYTC") in Elko, Nevada. At the time of the abuse, Plaintiff was a minor child entrusted to the custody, care, and supervision of the State of Nevada and its agents, employees, and contractors.

ii.     Plaintiff was committed to mandatory physical confinement at the Nevada Youth Training Center ("NYTC") in Elko, Nevada, where he was placed under the complete custody, dominion, and control of Defendants and DOES 1-500. These

COMPLAINT

Defendants held positions of extraordinary power, trust, and authority over Plaintiff, a vulnerable, confined child with no ability to leave, resist, or seek outside help. Defendants exploited this absolute power imbalance to sexually abuse and harass Plaintiff under color of authority on behalf of DEFENDANTS, and each of them.

iii.    While Plaintiff was confined, he was subjected to egregious and predatory sexual abuse on at least 12 separate occasions, over a period of approximately 4 weeks in his assigned housing unit. During incarceration, the Plaintiff earned Freedom of Movement within the facility due to good behavior. While this was considered a reward, he felt it became more of a punishment due to the sexual abuse. The Plaintiff stated that whenever he would walk anywhere within the facility, he was subjected to a strip search by the Abuser. He felt singled out as he was getting searched more than the other inmates who also had Freedom of Movement privileges. The Abuser would escort the Plaintiff to an empty room for the search, where he would be directed to remove his clothes. He would then be instructed to bend over. The Abuser would digitally penetrate the Plaintiff's rectum with an ungloved hand.

iv.    Out of fear of retaliation, punishment, extended confinement, and further abuse, Plaintiff did not report—or was unable to meaningfully report—the sexual misconduct, knowing and believing that any complaints would be unanswered, dismissed, ignored, and buried without investigation or redress, thereby allowing the sexual misconduct to continue unabated. Plaintiff was systematically and repeatedly sexually abused in what was supposed to be a "safe haven" environment—an environment exclusively created, funded, staffed, maintained, and controlled by DEFENDANTS, and each of them. DEFENDANTS had a mandatory, non-delegable duty to protect this child from the very harm they facilitated, enabled, and concealed.

v.    As a direct and proximate result of the sexual abuse perpetrated against him, Plaintiff has suffered and continues to suffer severe, ongoing, and persistent mental, emotional, psychological, and physical injuries, including, but not limited to: anxiety; depression; feelings of helplessness and hopelessness; insomnia and sleep disturbances

COMPLAINT

including nightmares; questioning of sexual identity; profoundly lowered self-esteem; moodiness and emotional dysregulation; difficulty forming and maintaining meaningful interpersonal and intimate relationships; pervasive loss of trust and control issues with persons in positions of authority; flashbacks, intrusive thoughts, and hypervigilance; chronic stress; nervousness; fear; deep embarrassment and shame; and a devastating loss of enjoyment of life, among other injuries.

CR.   **Jane Doe 330685:**

i.      Plaintiff Jane Doe 330685 is a female, born on August 19, 1988, who was sexually abused at just 16 years old, in or around 2004, while confined within the Nevada Juvenile Justice System at the Caliente Youth Center ("CYC") in Caliente, Nevada. At the time of the abuse, Plaintiff was a minor child entrusted to the custody, care, and supervision of the State of Nevada and its agents, employees, and contractors.

ii.     Plaintiff was committed to mandatory physical confinement at the Caliente Youth Center ("CYC") in Caliente, Nevada, where she was placed under the complete custody, dominion, and control of Defendants and DOES 1-500. These Defendants held positions of extraordinary power, trust, and authority over Plaintiff, a vulnerable, confined child with no ability to leave, resist, or seek outside help. Defendants exploited this absolute power imbalance to sexually abuse and harass Plaintiff under color of authority on behalf of DEFENDANTS, and each of them.

iii.    While Plaintiff was confined, she was subjected to egregious and predatory sexual abuse on at least 6 separate occasions, over a period of approximately 6 months. The Plaintiff encountered the Abuser in her assigned housing unit. The Plaintiff would be held back by the Abuser and escorted to empty classrooms or closets. Once they were alone, the Abuser would expose his genitals. The Plaintiff would be forced to perform oral copulation until he ejaculated in her mouth. He would then force his hands inside of her pants and digitally penetrate her vagina with his ungloved hand.

iv.     Out of fear of retaliation, punishment, extended confinement, and further abuse, Plaintiff did not report—or was unable to meaningfully report—the sexual

misconduct, knowing and believing that any complaints would be unanswered, dismissed, ignored, and buried without investigation or redress, thereby allowing the sexual misconduct to continue unabated. Plaintiff was systematically and repeatedly sexually abused in what was supposed to be a "safe haven" environment—an environment exclusively created, funded, staffed, maintained, and controlled by DEFENDANTS, and each of them. DEFENDANTS had a mandatory, non-delegable duty to protect this child from the very harm they facilitated, enabled, and concealed.

v.      As a direct and proximate result of the sexual abuse perpetrated against her, Plaintiff has suffered and continues to suffer severe, ongoing, and persistent mental, emotional, psychological, and physical injuries, including, but not limited to: anxiety; depression; feelings of helplessness and hopelessness; insomnia and sleep disturbances including nightmares; questioning of sexual identity; profoundly lowered self-esteem; moodiness and emotional dysregulation; difficulty forming and maintaining meaningful interpersonal and intimate relationships; pervasive loss of trust and control issues with persons in positions of authority; flashbacks, intrusive thoughts, and hypervigilance; chronic stress; nervousness; fear; deep embarrassment and shame; and a devastating loss of enjoyment of life, among other injuries.

70.      DEFENDANTS, DEFENDANT OFFICERS, agents, and/or employees failed to take reasonable steps and implement reasonable safeguards to avoid acts of unlawful sexual conduct, including preventing abuse of PLAINTIFFS by THE ABUSERS, avoiding placement of THE ABUSERS in a function or environment in which direct contact with, and complete control of, its inmates is an inherent part of that function or environment. Instead, DEFENDANTS, and each of them, ignored and concealed the sexual abuse and sexual harassment of PLAINTIFFS and others. DEFENDANTS, agents, and/or employees failed to properly supervise THE

ABUSERS at Nevada Juvenile Detention Facilities, which led to many inmates, including PLAINTIFFS, being repeatedly sexually abused, molested, and harassed.

71.    DEFENDANTS and agents and/or employees failed to take reasonable steps and implement reasonable safeguards to prevent acts of sexual conduct by THE ABUSERS and DOES 1-500, including, but not limited to, permitting a "safe haven environment" in which THE ABUSERS and DOES 1-500 were given opportunities and locales to isolate, control, and directly contact inmates for their own sexual gratification without supervision or monitoring.

72.    Had DEFENDANTS and agents and/or employees properly supervised and controlled the environment, instead of ignoring and concealing the sexual abuse and harassment, PLAINTIFFS contend the abuse would have been avoided and/or detected, thereby preventing THE ABUSERS and DOES 1-500 from sexually assaulting inmates for their own sexual gratification.

73.    In subjecting PLAINTIFFS to the sexual abuse and harassment, DEFENDANTS and agents and/or employees acted willfully and maliciously with the intent to harm PLAINTIFFS, and in conscious disregard of PLAINTIFFS' rights, so as to constitute malice and/or oppression. PLAINTIFFS are informed, and on that basis allege, that DEFENDANTS and agents and/or employees acted in concert, and under their authority as custodial facilities within the State of Nevada's juvenile justice system, with reckless disregard for the concerns of the inmates in their charge. DEFENDANTS and agents and/or employees acted intentionally in creating an environment that harbored molesters, placed PLAINTIFFS at inherent and devastating risk of harm, and ignored clear warning signs and their duties to report sexual abusers in their ranks, in order to maintain a façade of normalcy and to maintain the funding of Nevada's youth treatment programs.

COMPLAINT

74. The safety of inmates entrusted and confined at Nevada Juvenile Detention Facilities was devastatingly compromised due to DEFENDANTS and agents and/or employees' desire to maintain the status quo and circumvent any public scrutiny for their misconduct. These willful, malicious, and/or oppressive acts, as alleged herein above, were ratified by the officers, directors, and/or managing agents of DEFENDANTS, thereby entitling them to punitive damages according to proof.

75. DEFENDANTS and agents and/or employees' acts and/or omissions in the commission of the sexual abuse were done by agents and/or employees who prevented and/or deterred the victims from coming forward through threats of intimidation and violence, and therefore DEFENDANTS should be estopped from asserting the limitations of any claims statute.

## FIRST CAUSE OF ACTION
### Right to Be Secure in Persons / Unreasonable Seizure – Violation of Fourth Amendment
### (42 U.S.C. § 1983)
### *(Against All DEFENDANTS and DOES 1-500)*

76. PLAINTIFFS re-allege and incorporate by reference the allegations set forth above as though fully set forth herein.

77. At all relevant times, PLAINTIFFS were involuntarily confined and wholly dependent upon DEFENDANTS for their care, custody, supervision, and protection at Nevada Juvenile Detention Facilities, state-operated facilities managed by the Defendants named in their official capacities with the Nevada Division of Child and Family Services under the Nevada Department of Health and Human Services, Clark County, Nevada, and Douglas County, Nevada.

78. DEFENDANTS and DOES 1–500, acting under color of state law, engaged in a pattern of conduct involving intimidation, threats, coercion, and actual violence—including sexual assault, sexual battery, harassment, and the suppression of complaints—expressly intended to deprive PLAINTIFFS of rights secured by the Constitutions and laws of the United States and Nevada. These rights include, but are not limited to: the right to be free from sexual violence and

COMPLAINT

bodily harm; the right to be secure in their persons and free from unreasonable seizure under the Fourth Amendment; the right to freedom from cruel and unusual punishment under the Eighth and Fourteenth Amendments; the right to bodily autonomy; and the right to report abuse and seek redress without retaliation.

79.     The sexual abuse, assaults, batteries, and harassment were committed by DEFENDANTS and their agents, state actors who exercised custodial authority and power over PLAINTIFFS' persons, going far beyond any legitimate government interest and violating the core protections of the Fourth Amendment against unreasonable bodily intrusion, through acts such as inappropriate touching, groping, digital and oral penetration, and other forms of sexual assault. These acts were non-consensual, predatory, and perpetrated by DEFENDANTS abusing positions of authority, influence, and control over PLAINTIFFS, who were incapable of giving meaningful consent due to their confinement.

80.     DEFENDANTS' failures were systemic and pervasive, including grossly inadequate hiring protocols, negligent training and supervision, and deliberate concealment of abuse. DEFENDANTS ratified and tolerated patterns of abuse through willful ignorance, failed supervision, and a deliberate refusal to act—even when misconduct was known or observed by other employees.

81.     By their acts and omissions, DEFENDANTS deprived PLAITNIFFS of their Fourth and Fourteenth Amendment rights, rights to substantive due process, and other rights guaranteed to them under the United States and Nevada Constitutions.

82.     While in the custody and control of DEFENDANTS, with their safety and well-being subject to DEFENDANTS' power and dominance over their persons, PLAINTIFFS were unable to reasonably resist and oppose sexual assault and sexual battery of their persons, which said unlawful acts and conduct were achieved through intimidation, threats, and coercion, under

color of law, which violated PLAINTIFFS' civil rights as guaranteed by the United States and Nevada Constitutions.

83.    DEFENDANTS' policies, practices, and deliberate indifference created an environment where sexual abuse was perpetrated and covered up with impunity.

84.    As a direct and proximate result of the foregoing violations, PLAINTIFFS suffered physical and emotional harm, mental anguish, pain and suffering, trauma, and other damages according to proof at the time of trial.

85.    PLAINTIFFS are entitled to compensatory and punitive damages, attorneys' fees and such other relief as the Court deems proper.

## SECOND CAUSE OF ACTION
### 42 U.S.C § 1983 Claim for Supervisory Liability/ Failure to Protect
*(Against Supervisory Individual Defendants in their Individual Capacities)*

86.    PLAINTIFFS re-allege and incorporate by reference the allegations set forth above as though fully set forth herein.

87.    A supervisory official is liable under 42 U.S.C § 1983 where there exists either his or her personal involvement in the constitutional deprivation, or a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation.[2]

88.    DEFENDANTS, and each of them, in his/her/their respective official and supervisory and oversight capacities were, upon information and belief, personally involved in the deprivation of PLAINTIFFS' constitutional rights and/or a sufficient causal connection exists between the supervisors wrongful conduct, including but not limited to, ratification, failure to train, failure to adopt and implement adequate policies and/or maintaining policies and customs causing injuries to PLAINTIFFS herein, failure to supervise and/or control and discipline DEFENDANT OFFICERS, and/or those yet to be ascertained individuals/employees who directly

---

[2] *Rodriguez v. County of Los Angeles*, 891 F.3d 776, 798 (9th Cir. 2018).

COMPLAINT

or indirectly caused harm to PLAINTIFFS while they were in the custody of the DEFENDANT-operated juvenile facilities, thereby failing to protect PLAINTIFFS' constitutional rights.

89.    DOE DEFENDANTS, and each of them, in his/her/their respective official, individual,  supervisory, and oversight capacities, and other supervisory Defendants, held positions of authority over the employees and operations of the DEFENDANTS' Facilities and had a constitutional duty to protect detained minors from known risks of harm, including sexual abuse by subordinate staff, including the DEFENDANT OFFICERS.

90.    DOE DEFENDANTS, and each of them, in his/her/their respective official, individual,  supervisory, and oversight capacities, and other supervisory Defendants, owed a duty of reasonable care to PLAINTIFFS and all those who entered the custody of DEFENDANTS' juvenile detention facilities herein to properly and reasonably train and supervise their officers. As part of this duty, DEFENDANTS in their respective official, individual, and supervisory capacities had a duty to implement policies and procedures to prevent sexual abuse, sexual assault, and sexual battery of PLAINTIFFS during their detention at said facilities, and a duty to investigate any and all officers, including DOES 1-500, and DEFENDANT OFFICERS, who are accused of misconduct.

91.    The supervisory Defendants had actual and/or constructive knowledge of a pervasive risk of sexual abuse at the DEFENDANTS' Facilities and demonstrated deliberate indifference by: (a) failing to adequately screen, hire, train, and supervise employees with access to detained minors; (b) failing to implement or enforce adequate policies to prevent sexual abuse; (c) failing to investigate prior complaints and reports of sexual misconduct; (d) failing to report allegations to appropriate authorities; (e) retaliating against or discouraging individuals who reported or attempted to report sexual abuse; and (f) creating and maintaining conditions that enabled the abuse to occur and continue.

COMPLAINT

92.    The supervisory Defendants' deliberate indifference had an affirmative causal link to the deprivation of PLAINTIFFS' constitutional rights. But for their deliberate indifference, the sexual abuse of the PLAINTIFFS would not have occurred or would have been timely detected, reported, and stopped.

93.    The supervisory Defendants, and each of them, in his/her/their respective official, individual, and supervisory and oversight capacities, failed duty by failing to properly train, supervise, and investigate DEFENDANT OFFICERS, DOES 1-500, and/or other yet to be ascertained individual defendants, including failure to adopt and implement reasonable procedures to prevent abuse of juvenile detention officer authority, including failure to adopt and implement reasonable internal procedures for the prevention, investigation and disciplining of wayward juvenile detention officers.

94.    The supervisory Defendants, and each of them, in his/her/their respective official, individual, supervisory, and oversight capacities, intentionally and/or negligently failed to promptly provide medical care for the PLAINTIFFS while they were in its custody, care, and control – as a direct and proximate result of DEFENDANTS acts and omissions, the PLAINTIFFS suffered physical harm and mental distress.

95.    As a direct and proximate result of the foregoing violations, PLAINTIFFS suffered physical and emotional harm, mental anguish, pain and suffering, trauma, and other damages according to proof at the time of trial.

## THIRD CAUSE OF ACTION
### 42 U.S.C. §1983 (Municipal Liability-Ratification – *Monell v. Department of Social Services of the City of New York*, 436 U.S. 658 (1978))

*(Against Defendants Sued in their Official Capacities and Municipal Defendants CLARK COUNTY and DOUGLAS COUNTY)*

96.    PLAINTIFFS re-allege and incorporate by reference the allegations set forth above as though fully set forth herein.

97.    Pursuant to *Monell v. Department of Social Services*, 436 U.S. 658 (1978), and its progeny, a municipality may be held liable under 42 U.S.C. § 1983 when the execution of an official policy, custom, or practice inflicts a constitutional injury. Municipal liability does not require respondeat superior; rather, the municipality's own policies, customs, or deliberate choices must be the "moving force" behind the constitutional violation.

**A.    *Official Policy or Custom***

98.    The Defendants sued in their official capacities and the Municipal Defendants, CLARK COUNTY and DOUGLAS COUNTY, through their appointed directors, administrators, policymakers, maintained and enforced official policies, widespread customs, and longstanding practices that directly caused and were the moving force behind the constitutional violations suffered by PLAINTIFFS. These policies, customs, and practices include, but are not limited to:

(a)    Failing to adopt and implement adequate policies prohibiting and addressing sexual abuse and sexual harassment of detained juveniles by staff;

(b)    Failing to adopt and implement adequate policies for the screening and background investigation of prospective employees to identify individuals with histories of sexual misconduct, violence, or other disqualifying conduct;

(c)    Failing to adopt and implement adequate training programs to educate employees on the prohibition of sexual contact with detained minors, recognition of grooming behaviors, mandatory reporting obligations, and the constitutional rights of detained juveniles;

(d)    Failing to adopt and implement adequate supervision protocols, including video monitoring, staffing ratios, and limitations on unsupervised access to detained juveniles;

(e)    Maintaining a policy, custom, or practice of discouraging, suppressing, or

COMPLAINT

retaliating against complaints of sexual abuse by detained juveniles and/or their families;

(f)    Failing to adopt and implement adequate grievance and complaint mechanisms that would allow detained minors to safely and confidentially report sexual abuse;

(g)    Failing to adopt and implement adequate investigation protocols for allegations of sexual misconduct;

(h)    Maintaining a policy, custom, or practice of failing to discipline, terminate, or refer for prosecution employees accused or found to have committed sexual abuse against detained minors;

(i)    Failing to comply with the requirements of the Prison Rape Elimination Act ("PREA") and its implementing standards for juvenile facilities, 28 C.F.R. Part 115, Subpart D.

**B.    Failure to Train**

99.    The Municipal Defendants, CLARK COUNTY and DOUGLAS COUNTY, and the Defendants sued in their official capacities, failure to train their employees constitutes deliberate indifference to the constitutional rights of detained minors. See City of Canton v. Harris, 489 U.S. 378, 388–90 (1989). The need for training in the prevention and detection of sexual abuse in juvenile detention facilities is so obvious, and the inadequacy of existing training so likely to result in constitutional violations, that the failure to train amounts to deliberate indifference.

100.    The Municipal Defendants, CLARK COUNTY and DOUGLAS COUNTY, and the Defendants sued in their official capacities, failed to provide adequate training regarding: (a) the prohibition against sexual contact with detained minors under any circumstances; (b) recognizing the signs and indicators of grooming and sexual abuse; (c) mandatory reporting

obligations under state and federal law; (d) proper procedures for maintaining professional boundaries with detained juveniles; and (e) the constitutional rights of detained juveniles to be free from sexual abuse.

101.    The Municipal Defendants, CLARK COUNTY and DOUGLAS COUNTY, and the Defendants sued in their official capacities, failure to train was not an isolated oversight but reflects a systemic and deliberate choice that is closely related to the constitutional injuries suffered by Plaintiff(s).

**C.    Failure to Supervise and Discipline**

102.    The Municipal Defendants, CLARK COUNTY and DOUGLAS COUNTY, and the Defendants sued in their official capacities, through their appointed directors, administrators, policymakers, maintained a pattern and practice of failing to supervise and discipline employees who committed sexual misconduct against detained minors. This failure to supervise and discipline was so pervasive and well-settled as to constitute a custom carrying the force of law.

103.    The Municipal Defendants, CLARK COUNTY and DOUGLAS COUNTY, and the Defendants sued in their official capacities, tolerance of sexual misconduct by its employees, its failure to investigate complaints, and its failure to impose meaningful discipline effectively communicated to employees that sexual abuse of detained minors would be tolerated and would go unpunished. This deliberate indifference was the moving force behind the violations of PLAINTIFFS' constitutional rights.

**D.    Ratification by Final Policymaker**

104.    Upon information and belief, final policymakers for the Municipal Defendant, CLARK COUNTY and DOUGLAS COUNTY —including but not limited to Defendants sued in their respective official capacities—were aware of the pattern of sexual abuse at the DEFENDANTS' Facilities and ratified the unconstitutional conduct by failing to take corrective

action.

105.   The Municipal Defendants, CLARK COUNTY and DOUGLAS COUNTY, and Defendants sued in their respective official capacities were final policymakers with the authority and responsibility to address the conditions at the DEFENDANTS' Facilities and to implement policies to protect detained juveniles from sexual abuse, but made a deliberate choice not to act.

**E.   Causation**

106.   The Municipal Defendants, CLARK COUNTY and DOUGLAS COUNTY, and Defendants sued in their respective official capacities, unconstitutional policies, customs, practices, failure to train, failure to supervise, failure to discipline, and ratification were the moving force behind and a direct and proximate cause of the deprivation of PLAINTIFFS' constitutional rights and the injuries described herein.

107.   As a direct and proximate result of the conduct of the Municipal Defendants, CLARK COUNTY and DOUGLAS COUNTY, and the Defendants sued in their official capacities, PLAINTIFFS have suffered and continue to suffer severe and lasting physical, psychological, and emotional injuries as described herein.  DEFENDANTS, and each of them, including DEFENDANT OFFICERS, Defendant DOES 1 – 500, and yet to be ascertained individual Defendants, at all times relevant hereto, acted under color of law.

108.   DEFENDANTS CLARK COUNTY and DOUGLAS COUNTY are municipalities and/or local government units included among those "persons" to whom the Civil Rights Act of 1871, as codified at 42 U.S.C. § 1983, applies.

109.   All DEFENDANTS sued in their respective official capacities herein are "persons" for the purposes of the Civil Rights Act of 1871, as codified at 42 U.S.C. § 1983.

110.   DEFENDANTS deprived Plaintiffs of their particular rights under the United States and Nevada Constitutions through the actions and/or inactions which caused PLAINTIFFS

COMPLAINT

to suffer sexual abuse, sexual assault, and sexual battery on their persons while in the custody and care of DEFENDANTS in each of the respective juvenile detention facilities as set forth herein.

111.   Upon information and belief, a final policymaker, acting under color of law, who had final policymaking authority concerning the acts of the individual state-actor Defendants, including DEFENDANT OFFICERS, ratified the individual state-actor Defendants' acts and the basis for them.  Upon information and belief, the final policymaker knew of and specifically approved of the individual state-actor Defendants' acts.

112.   Upon information and belief, a final policymaker has determined (or will determine) that the acts of the individual state-actor Defendants, including DEFENDANT OFFICERS, were "within policy."

113.   Accordingly, DEFENDANTS, and each of them, are liable to PLAINTIFFS for compensatory, exemplary, and all other allowable damages under 42 U.S.C § 1983 and applicable laws, including attorneys' fees and costs.

## FOURTH CAUSE OF ACTION
### 42 U.S.C. §1983 (Municipal Liability- Inadequate Training - *Monell v. Department of Social Services of the City of New York*, 436 U.S. 658 (1978))

*(Against Defendants Sued in their Official Capacities and Municipal Defendants CLARK COUNTY and DOUGLAS COUNTY)*

114.   PLAINTIFFS re-allege and incorporate by reference the allegations set forth above as though fully set forth herein.

115.   Defendants CLARK COUNTY and DOUGLAS COUNTY, as local government entities, are municipal bodies, and are liable for constitutional violations under 42 U.S.C. § 1983 when execution of their duties is based upon a policy or custom that deprives individuals of their Constitutional rights.

116.   Defendants sued in their respective official capacities herein are liable to PLAINTIFFS under 42 U.S.C 1983 under theory of municipal policy/custom under *Monell.*

Moreover, qualified immunity is not available for Nevada constitutional claims. *Mack v. Williams*, 138 Nev. 854, 522 P.3d 434, 138 Nev. Adv. Op. 86 (Nev. 2022).

117. The individual state-actors Defendants, including DEFENDANT OFFICERS, deprived PLAINTIFFS of their particular rights under the United States Constitution.

118. The training policies of Defendants CLARK COUNTY and DOUGLAS COUNTY and Defendants named in their official capacities were not adequate to train officers of juvenile detention facilities as described herein, and these facilities' employees and officers were therefore ill-equipped and poorly trained to handle the usual and recurring situations with which they must commonly deal, including, but not limited, to training to prevent, discover, and/or stop incidents of sexual abuse, sexual assault, sexual battery, and failed to train employees to recognition of signs of potential sexual abuse, sexual assault, sexual battery, and to take prompt and effective remedial action in response to said incidents.

119. As such, Defendants CLARK COUNTY, DOUGLAS COUNTY, and Defendants named in their official capacities, were deliberately indifferent to the obvious consequences of their failure to train their employees and staff adequately.

120. At all times relevant herein, the Defendants CLARK COUNTY, DOUGLAS COUNTY, and Defendants named in their official capacities had a duty to properly train, supervise, and discipline their employees and agents.

121. Upon information and belief, the Defendants CLARK COUNTY, DOUGLAS COUNTY, Defendants named in their official capacities, breached these duties, in part by (a) improperly training, authorizing, encouraging or directing officers and/or supervisors to prevent, detect, respond to incidents of sexual abuse, sexual assault and sexual battery of PLAITNIFFS; (b) failing to investigate allegations of sexual abuse, sexual assault, and sexual battery of PLAINTIFFS; (c) failing to implement training to encourage PLAINTIFFS or others in custody

COMPLAINT

of juvenile detention facilities to report incidents of sexual abuse, sexual assault, and sexual battery without fear of reprisal or retaliation, and (d) failing to discipline officers for violations of policy related to sexual abuse, sexual assault, sexual harassment, and/or sexual battery.

122.    The failure of Defendants CLARK COUNTY, DOUGLAS COUNTY, and Defendants named in their official capacities to provide adequate training caused the deprivation of Plaintiffs' rights by the individual state-actors Defendants; that is, the failure to train is so closely related to the deprivation of Plaintiffs' rights as to be the moving force that caused the ultimate injury.

123.    By reason of the aforementioned acts and omissions, PLAINTIFFS have suffered severe mental, physical, and emotional damages, likely to continue for the rest of their lives.

124.    Accordingly, the Defendants CLARK COUNTY, DOUGLAS COUNTY, and Defendants sued in their respective official capacities are liable to Plaintiffs for compensatory, exemplary, and all allowable damages under 42 U.S.C. § 1983 and applicable laws, including attorneys' fees and costs.

### FIFTH CAUSE OF ACTION
### 42 U.S.C. § 1983 (Unconstitutional Custom, Practice, or Policy - *Monell v. Department of Social Services of the City of New York*, 436 U.S. 658 (1978)))

*(Against Defendants CLARK COUNTY, DOUGLAS COUNTY, and Defendants named in Official Capacities)*

125.    PLAINTIFFS re-allege and incorporate by reference the allegations set forth above as though fully set forth herein.

126.    Defendants, and each of them, acted under color of law and are "state actors" under 42 U.S.C § 1983.

127.    Defendants, and each of them, acted pursuant to a policy or a longstanding practice or custom of that allowed sexual abuse, sexual assault, and/or sexual battery of PLAINTIFFS to continue throughout the years.

128. Upon information and belief, a majority of Defendants, including DEFENDANT OFFICERS, were not disciplined, reprimanded, retrained, suspended, or otherwise penalized in connection the acts and omissions as alleged herein by the PLAITNIFFS.

129. Defendants, and each of them, including their policymakers and supervisors, maintained, inter alia, the following unconstitutional customs, practices, and policies:

a. allowing sexual abuse, sexual assault, and sexual battery to continue throughout the years at the juvenile detention facilities named herein; and

b. providing inadequate training to officers and staff of said juvenile detention facilities;

c. employing and retaining individuals such as the DEFENDANT OFFICERS, and/or DOE S 1-100, whom the Defendants, at all times material herein, knew or reasonably should have known had dangerous propensities for abusing their authority and committing acts of sexual abuse, sexual assault, and sexual battery upon the PLAINTIFFS;

d. inadequately supervising, training, controlling, assigning, and disciplining their personnel, including the Defendants OFFICERS, whom the Defendants knew or in the exercise of reasonable care should have known had the aforementioned propensities and character traits;

e. maintaining grossly inadequate procedures for reporting, supervising, investigating, reviewing, disciplining, and controlling instances of sexual misconduct, sexual assault, sexual abuse, and sexual battery by their personnel, \including DEFENDANT OFFICERS;

f. failing to adequately discipline their personnel, including DEFENDANT OFFICERS, for the above-referenced acts committed against PLAINTIFFS, including,

upon information and belief, "slaps on the wrist," discipline that is so slight as to be out of proportion to the magnitude of the misconduct, and other inadequate discipline that is tantamount to ignoring and/or encouraging misconduct;

g.        encouraging, accommodating, or facilitating a "code of silence", pursuant to which juvenile detention officers and/or other employees at said juvenile detention facilities do not report other officers' errors, misconduct, or crimes, \particularly instances of sexual abuse, sexual battery, and sexual assault of PLAINTIFFS. Pursuant to this code of silence, if questioned about an incident of misconduct involving another officer, while following the code, the officer being questioned will claim ignorance of the other juvenile detention officer's wrongdoing.

h.        maintaining a policy of inaction and an attitude of indifference towards the sheer number of instances of sexual abuse, sexual assault, and sexual battery occurring at juvenile detention facilities, including failing to discipline, retrain, investigate, terminate, and recommend certain juvenile detention officers, including DEFENDANT OFFICERS, for criminal prosecution who participated in the sexual abuse, sexual assault, and sexual battery of PLAINTIFFS;

130.    By perpetrating, sanctioning, tolerating, and ratifying the outrageous conduct and other wrongful acts of DOE 1- 500 Defendants and DEFENDANT OFFICERS, Defendants, acted with intentional, reckless, and callous disregard for constitutional rights and the safety of the PLAINTIFFS.

131.    The condoning of misconduct and the failure to end these aforementioned policies, patterns of practices, or customs were a direct and proximate cause of PLAINTIFFS' injuries.

132.    Defendants and/or individuals, in their respective official capacities, together with various other officials, whether named or unnamed, had either actual or constructive knowledge

187

COMPLAINT

of the deficient policies, practices, and customs alleged herein.  Despite having knowledge as stated above, these Defendants condoned, tolerated, and, through actions and inactions, ratified such policies.  Said Defendants also acted with deliberate indifference to the foreseeable effects and consequences of these policies with respect to the constitutional rights of PLAINTIFFS and other individuals similarly situated.

133.    By perpetrating, sanctioning, tolerating, and ratifying the outrageous conduct and other wrongful acts of one another, acting in concert with one another and of the individual Defendants, DEFENDANT OFFICERS, DEFENDANTS acted with intentional, reckless, and callous disregard for PLAINTIFFS' constitutional rights.  Furthermore, the policies, practices, and customs implemented, maintained, and still tolerated by the Defendants and the individual Defendants, DEFENDANT OFFICERS, were affirmatively linked to and were a significantly influential force behind the injuries of PLAINTIFFS.

134.    These policies, pattern or practice or customs of condoned misconduct are tacitly or overtly sanctioned, as evidenced by the conduct of the individual Defendants and the Defendants failure to train, supervise, investigate, and discipline the individual Defendants, DEFENDANT OFFICERS, and/or or any other of its officers or employees involved in the incidents described by PLAINTIFFS' in this Complaint, constituting a deliberate indifference to PLAINTIFFS' constitutional rights.

135.    This unconstitutional behavior was carried out pursuant to certain policies, practices, or customs, whether formal or informal, that violate the constitutional rights of PLAINTIFFS, constituting reckless or callous indifference to the federally protected rights of others.

136.    Defendants, and each of them, failed to take sufficient remedial actions to end these policies, patterns or practices, or customs by Defendants, as set forth herein.

COMPLAINT

137.    By reason of the aforementioned acts and omissions, Plaintiffs experience physical, mental, and emotional pain and suffering, which is on-going, including loss of enjoyment of life. Accordingly, the Defendants, and each of them, are jointly and severally liable to Plaintiffs for compensatory, exemplary, and all other allowable damages under 42 U.S.C. § 1983 and applicable laws, including attorneys' fees and costs.

### SIXTH CAUSE OF ACTION
**42 U.S.C. § 1983 - Substantive Due Process (Fourteenth Amendment)**
*(Against All Defendants)*

138.    PLAINTIFFS re-allege and incorporate by reference the allegations set forth above as though fully set forth herein.

139.    PLAINTIFFS, and each of them, possessed a clearly established constitutional right under the Fourteenth Amendment's Due Process Clause and the Nevada Constitution to be free from sexual abuse while in state custody.  The right of a detained minor to bodily integrity and to be free from sexual assault by custodial officials is well established.

140.    Each Individual Defendant, including the DEFENDANT OFFICERS, DOE Defendants, acted under color of state law at all relevant times, as they were employed by and acted pursuant to the authority vested in them by the CLARK COUNTY, DOUGLAS COUNTY, and the State of Nevada.

141.    DEFENDANT OFFICERS and DOE Defendants personally participated in the sexual abuse of PLAINTIFFS, thereby violating PLAINTIFFS' substantive due process right to bodily integrity and personal security. The sexual abuse of a child in state custody is conduct that shocks the conscience and is objectively unreasonable under any standard.

142.    DOE DEFENDANTS, as a supervisory officials, violated PLAINTIFFS' substantive due process rights by: (a) having actual knowledge of the substantial risk that staff members were sexually abusing detained minors; (b) failing to take any action to prevent,

COMPLAINT

investigate, or address the sexual abuse; (c) demonstrating deliberate indifference to the known and obvious danger; (d) fostering a culture of silence and retaliation that enabled the abuse to continue; and (e) directly or tacitly authorizing, approving, or knowingly acquiescing in the unconstitutional conduct.

143. The DEFENDANT OFFICERS and DOE DEFENDANTS' conduct was intentional, willful, wanton, reckless, and in deliberate and callous disregard for Plaintiff(s)' federally protected rights.

144. As a direct and proximate result of the DEFENDANT OFFICERS and DOE DEFENDANTS' actions and omissions, PLAINTIFFS have suffered and continue to suffer severe and lasting physical, psychological, and emotional injuries, including but not limited to: post-traumatic stress disorder, depression, anxiety, sleep disturbances, difficulties with trust and interpersonal relationships, behavioral problems, self-harm, diminished educational and developmental outcomes, and other damages to be proven at trial.

145. The aforementioned actions of the DEFENDANT OFFICERS and DOE DEFENDANTS' DOES 1 -500, along with other undiscovered conduct, shock the conscience, in that they acted with deliberate indifference to the constitutional rights of PLAINTIFFS and with the purpose to harm unrelated to any legitimate law enforcement objective.

146. As a direct and proximate result of these acts and omissions of Defendants, PLAINTIFFS experienced mental, emotional, and physical pain and suffering. DEFENDANT OFFICERS and DOE DEFENDANTS, DOES 1 -500, acting jointly and cooperatively, thus violated the substantive due process rights of PLAINTIFFS.

147. The conduct of DEFENDANT OFFICERS and DOE DEFENDANTS was willful, wanton, malicious, and done with reckless or callous indifference to the federally protected rights of others, reckless disregard for the rights and safety of PLAINTIFFS, and therefore warrants

assessment of compensatory, exemplary, and all other allowable damages under all applicable laws, including attorneys' fees and costs.

**SEVENTH CAUSE OF ACTION**
**42 U.S.C. § 1983 — Equal Protection (Fourteenth Amendment)**

*(Against DEFENDANT OFFICERS and DOE DEFENDANTS, DOES 1-500 Their Individual Capacities)*

148.    Plaintiffs reallege and incorporate by reference each and every allegation set forth in the preceding paragraphs as if fully restated herein.

149.    PLAITNIFFS had a clearly established right under the Equal Protection Clause of the Fourteenth Amendment to be free from intentional discrimination and to be free from state-imposed sexual violence.

150.    DEFENDANT OFFICERS and DOE DEFENDANTS, DOES 1-500, sexual abuse of PLAINTIFFS was motivated, in whole or in part, by PLAINTIFFS sex, gender, age, and/or vulnerability as detained minors, constituting intentional discrimination in violation of the Equal Protection Clause. The sexual targeting and exploitation of vulnerable detained children constitutes a denial of equal protection of the laws.

151.    As a direct and proximate result of Defendants' conduct, PLAINTIFFS suffered and continue to suffer the injuries described herein.

**EIGHTH CAUSE OF ACTION**
**42 U.S.C. § 1983 — Eighth Amendment (Cruel and Unusual Punishment)**

*(Against DEFENDANT OFFICERS and DOE DEFENDANTS, DOES 1-500 in Their Individual Capacities)*

152.    Plaintiffs reallege and incorporate by reference each and every allegation set forth in the preceding paragraphs as if fully restated herein.

153.    To the extent PLAINTIFFS were adjudicated delinquent and committed to the custody of the Defendants CLARK COUNTY, DOUGLAS COUNTY, and facilities over which Defendants sued in the respective official capacities had control and/or oversight, as post-

adjudication detainees, the Eighth Amendment's prohibition against cruel and unusual punishment applies directly. The sexual abuse of juvenile detainees by their custodians constitutes cruel and unusual punishment under any objective measure of contemporary standards of decency.

154. DEFENDANT OFFICERS and DOE DEFENDANTS, DOES 1-500 conduct satisfies both prongs of the Eighth Amendment analysis: (a) the sexual abuse of detained children is objectively sufficiently serious, as no legitimate penological interest is served by sexual assault; and (b) each DEFENDANT OFFICERS and DOE DEFENDANTS, DOES 1-500 acted with deliberate indifference to the substantial risk of serious harm to PLAITNTIFFS—either by personally perpetrating the abuse or by knowingly disregarding the risk.

155. As a direct and proximate result of Defendants' conduct, Plaintiff(s) suffered and continue to suffer the injuries described herein.

## NINTH CAUSE OF ACTION
### FAILURE TO PROVIDE MEDICAL CARE / DENIAL OF MEDICAL CARE – Violation of Fourth Amendment (42 U.S.C. § 1983)
*(Against All DEFENDANTS and DOES 1-500)*

156. PLAINTIFFS reallege and incorporate by reference each and every allegation contained above as though fully set forth herein.

157. Pursuant to the Fourth Amendment of the United States Constitution and Nevada Constitution counterpart, DEFENDANTS, acting under color of state law and in positions of custodial authority owed a constitutional duty to provide adequate medical care to PLAINTIFFS during their court-ordered confinement, including physical and mental health care in response to sexual assault, sexual abuse, and related trauma.

158. DEFENDANTS knew or should have known that PLAINTIFFS had sustained serious physical and psychological injuries as a result of ongoing sexual abuse and harassment,

COMPLAINT

yet willfully disregarded their obvious medical and psychological needs in violation of the Fourteenth Amendments to the United States and Nevada Constitutions.

159.   PLAINTIFFS were denied meaningful access to competent medical professionals, mental health counseling, trauma-informed support services, or examinations following their abuse. Reports of pain, injury, and distress were dismissed, disbelieved, or ignored by DEFENDANTS personnel, who acted with deliberate indifference to serious medical needs.

160.   DEFENDANTS' systemic neglect and obstruction of necessary medical care constituted deliberate indifference to serious medical needs under Estelle v. Gamble, 429 U.S. 97 (1976), and violated clearly established constitutional standards.

161.   As a direct and proximate result of this constitutional deprivation, PLAINTIFFS suffered permanent harm, including worsened physical injuries, untreated psychological trauma, and on-going emotional distress.

162.   PLAINTIFFS are entitled to compensatory and punitive damages, as well as attorneys' fees and costs, for DEFENDANTS' violations of their constitutionally protected rights.

**TENTH CAUSE OF ACTION**
**SEXUAL ASSAULT / NRS § 11.215**
*(Against All DEFENDANTS and DOES 1-500)*

163.   PLAINTIFFS hereby reallege and incorporate by reference each and every preceding paragraph of this Complaint as though fully set forth herein.

164.   At all times relevant to this action, DEFENDANTS, including their agents, employees, and DOE Defendants, acting within the course and scope of their employment and under color of law, intentionally engaged in acts of sexual assault, abuse, and molestation against PLAINTIFFS while they were involuntarily confined at DEFENDANTS' facilities, thereby subjecting DEFENDANTS to liability to PLAINTIFFS under NRS § 11.215.

165.   DEFENDANTS, through their intentional, malicious, and oppressive conduct,

sought to and did make harmful and offensive contact with PLAINTIFFS' persons.

166.   In the alternative, DEFENDANTS engaged in conduct intended to place PLAINTIFFS in imminent apprehension of such harmful or offensive contact, which PLAINTIFFS actually and reasonably feared.

167.   At no time did PLAINTIFFS consent to such physical contact or to the threat thereof. The sexual acts committed by DEFENDANTS were coercive, non-consensual, and perpetrated by abusing positions of authority, influence, and control over PLAINTIFFS.

168.   DEFENDANTS' conduct violated PLAINTIFFS' right under Nevada common law to be free from bodily harm, restraint, and personal insult. DEFENDANTS breached their legal duty to abstain from injuring PLAINTIFFS and infringing upon their bodily integrity and personal rights.

169.   As a direct and proximate result of DEFENDANTS' egregious conduct, PLAINTIFFS have suffered, and will continue to suffer, severe emotional distress, psychological trauma, physical pain, humiliation, anxiety, fear, embarrassment, and permanent injury, resulting in both economic and non-economic damages. These injuries are substantial, ongoing, and likely to be permanent.

170.   The conduct of DEFENDANTS and DOES 1–500 was intentional, malicious, and oppressive, and carried out with a willful and conscious disregard for the rights, safety, and dignity of PLAINTIFFS. Such conduct constitutes despicable behavior warranting the imposition of punitive and exemplary damages under NRS § 42.005.

171.   Accordingly, PLAINTIFFS seek general and special damages, punitive damages, and such other relief as the Court may deem just and proper, in an amount to be determined according to proof at the time of trial.

/ / /

194

COMPLAINT

**ELEVENTH CAUSE OF ACTION**
**SEXUAL BATTERY / NRS § 11.215**
*(Against All DEFENDANTS and DOES 1-500)*

172.    PLAINTIFFS reallege and incorporate by reference each and every allegation set forth above as though fully stated herein.

173.    At all times relevant hereto, DEFENDANTS, including its employees, agents, representatives, and DOES 1–500, were acting within the course and scope of their employment and agency with the State of Nevada, which exercised custodial authority over PLAINTIFFS pursuant to mandatory, court-ordered confinement.

174.    During PLAINTIFFS' detention at Nevada Juvenile Detention Facilities, DEFENDANTS and DOES 1–500, acting under color of law and by virtue of their state-conferred authority, intentionally, recklessly, and wantonly committed acts of sexual battery, including the non-consensual touching of intimate parts of PLAINTIFFS' persons. These acts were committed in violation of NRS §§ 200.366 and 200.400, which prohibit sexual assault and battery, and NRS § 201.230, which prohibits lewdness with a minor.

175.    PLAINTIFFS did not consent—and, given their confinement, dependence, mental and emotional state, and the inherently coercive environment—could not have given lawful or voluntary consent to such acts. The custodial power imbalance and abuse of authority nullified any purported ability of PLAINTIFFS to resist, escape, or meaningfully object.

176.    DEFENDANTS' complete control over PLAINTIFFS by means of state power and physical confinement rendered the sexual abuse particularly egregious and predatory. As defined by Nevada law, these acts amount to both intentional torts and statutory violations, actionable independently and collectively against both individual perpetrators and their governmental employer.

177.    The conduct of DEFENDANTS was the direct and proximate cause of serious and

195

COMPLAINT

lasting injuries to PLAINTIFFS, including but not limited to: physical pain, emotional and psychological trauma, loss of dignity, and mental suffering. PLAINTIFFS are entitled to general and special damages in amounts to be determined according to proof at trial.

178.    The conduct of DEFENDANTS and their employees further constitutes malicious, oppressive, and despicable conduct undertaken with willful and conscious disregard for the safety, rights, and bodily integrity of PLAINTIFFS. Such conduct warrants the imposition of punitive damages under NRS § 42.005.

179.    Accordingly, PLAINTIFFS seek all available remedies, including compensatory and punitive damages, attorneys' fees as permitted by law, and any further relief the Court deems just and proper.

## TWELFTH CAUSE OF ACTION
### INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
### ARISING FROM CLAIMS FILED PURSUANT TO NRS § 11.215
*(Against All DEFENDANTS and DOES 1-500)*

180.    PLAINTIFFS re-allege and incorporate by reference herein each and every allegation contained above as though fully set forth and brought in this cause of action.

181.    During PLAINTIFFS' commitment, DEFENDANTS maintained a special relationship over PLAINTIFFS' well-being and safety, such that DEFENDANTS, and each of them, provided rehabilitation services, education, and supervision over these persons in loco parentis.

181.    DEFENDANTS' conduct as alleged herein was beyond the bounds of decency accepted within society and was intentional, outrageous, malicious, and committed for the purpose of causing PLAINTIFFS to suffer humiliation, embarrassment, mental anguish, and/or severe physical and/or emotional distress, or done in reckless disregard of the probability of causing such suffering.

182.    DEFENDANTS, and each of them, were in a position of authority, trust, influence,

and persuasion over PLAINTIFFS and is responsible for maintaining a special relationship.

183.    DEFENDANTS' sexual abuse, sexual assault, and sexual battery of PLAINTIFFS, who were minors, under the age of 18, was an abuse of their authority, and was performed while in the course and scope of their employment under color of law.

184.    The intentional infliction of emotional distress on the PLAINTIFFS arise from and occurred as a result of the sexual abuse, sexual assault, and sexual battery by DEFENDANTS on PLAINTIFFS, while they were minors and under the age of 18, and therefore, upon information and belief, the limitations period for these claims is pursuant to NRS § 11.215.  Moreover, the claims and damages PLAINTIFFS suffered as a direct and proximate result of DEFENDANTS' conduct herein arises from and is the result of the sexual abuse, sexual assault, and sexual battery by DEFENDANTS on PLAINTIFFS while they were minors and under the age of 18.

185.    PLAINTIFFS' trust in DEFENDANTS' and agents and/or employees for their safety and well-being turned to fear and intimidation by virtue of DEFENDANTS' wrongful conduct. PLAINTIFFS contend that said misconduct was authorized, ratified, adopted, and/or approved by DEFENDANTS and their agents and/or employees.

186.    As a direct and proximate result of the conduct as herein alleged, PLAINTIFFS have suffered great mental pain, embarrassment, humiliation, distress, anguish, and suffering in an amount according to proof at trial.

187.    DEFENDANTS and their agents and/or employees acted willfully and maliciously with the intent to harm PLAINTIFFS, and in conscious disregard of PLAINTIFFS' rights, entitling PLAINTIFFS to punitive damages under NRS § 42.005 according to proof.

## THIRTEENTH CAUSE OF ACTION
### NEGLIGENCE ARISING FROM CLAIMS FILED PURSUANT TO NRS § 11.215
*(Against All DEFENDANTS and DOES 1-500)*

188.    PLAINTIFFS re-allege and incorporate by reference herein each and every

COMPLAINT

allegation contained above as though fully set forth and brought in this cause of action.

189.    DEFENDANTS and agents and/or employees, and each of them, had a duty through their special relationship with PLAINTIFFS to protect them from sexual abuse under color of authority by DEFENDANTS' employees and/or agents in the course and scope of their agency. DEFENDANTS owed PLAINTIFFS a special fiduciary relationship that persons in positions of authority dealing with vulnerable minors committed to their custody owes to protect them from harm.

190.    At all times prior to, during, and subsequently, DEFENDANTS and agents and/or employees knew and/or should have known that THE ABUSERS and DOES 1-500 were planning, conspiring, and/or committing sexual abuse on PLAINTIFFS that had been entrusted to them and instructed to provide for their safety, care, and welfare.

191.    DEFENDANTS' agents and/or employees breached their duties of care to PLAINTIFFS by their acts and/or omissions to act in their failing to adequately hire, supervise, monitor, control, and train its employees and/or agents, including, but not limited to, THE ABUSERS and DOES 1 through 500, which provided a controlled environment in which they would sexually abuse inmates with ongoing and unrestricted secluded access to PLAINTIFFS.

192.    DEFENDANTS' agents and/or employees breached their duty of care to PLAINTIFFS which was the direct and proximate cause of their sexual abuse, resulting in significant permanent damages and harm according to proof.

193.    As a direct and proximate result of DEFENDANTS' negligence, PLAINTIFFS suffered permanent harm, including worsened physical injuries, untreated psychological trauma, and on-going emotional distress.

194.    The negligence claims and damages PLAINTIFFS suffered as a direct and proximate result of DEFENDANTS' conduct herein arises from and is the result of the sexual

COMPLAINT

abuse, sexual assault, and sexual battery by DEFENDANTS on PLAINTIFFS while they were minors and under the age of 18, and, therefore, upon information and belief, the limitations period for these claims is pursuant to NRS § 11.215.

## FOURTEENTH CAUSE OF ACTION
### NEGLIGENT HIRING AND SUPERVISION ARISING FROM CLAIMS FILED PURSUANT TO NRS § 11.215
(Against All DEFENDANTS and DOES 1-500)

195.    PLAINTIFFS re-allege and incorporate by reference herein each and every allegation contained above as though fully set forth and brought in this cause of action.

196.    PLAINTIFFS allege that at all times mentioned herein, THE ABUSERS, including DEFENDANT OFFICERS, and DOES 1-500 were agents and employees of DEFENDANTS, and performed the acts herein while in the course and scope of their agency and employment at the time of the subject sexual abuse. Moreover, PLAINTIFFS contend said misconduct was authorized, ratified, adopted, and/or approved of by DEFENDANTS.

197.    The employees and/or agents of DEFENDANTS have a special relationship with PLAINTIFFS which imposes upon them an affirmative duty to take reasonable steps to protect them from reasonably foreseeable risks of harm.

198.    DEFENDANT OFFICERS, THE ABUSERS and DOES 1-500 were in a position of authority, trust, influence, and persuasion over PLAINTIFFS as employees and/or agents of DEFENDANTS, responsible for maintaining the special relationship with the youth in their custody, including PLAINTIFFS.

199.    The employees and/or agents of DEFENDANTS failed to use reasonable care in hiring and supervising their employees and/or agents who had actual and constructive knowledge and/or notice that the manner and means of hiring created a dangerous environment for the youth in custody, including PLAINTIFFS, DEFENDANT OFFICER, and THE ABUSERS and DOES 1-500's acts and propensity to commit such acts. Nonetheless, DEFENDANTS' employees and/or

COMPLAINT

agents took no remedial steps to protect the youth, including PLAINTIFFS.

200. Despite the knowledge of DEFENDANTS' employees and/or agents, they nevertheless negligently hired, retained, and supervised their personnel, including THE ABUSERS and DOES 1-500.

201. As a direct and proximate result of negligent hiring and/or supervision of DEFENDANTS' employees and/or agents, PLAINTIFFS suffered and continue to suffer injury and damages in an amount according to proof.

202. The negligent hiring and supervision claims and damages PLAINTIFFS suffered as a direct and proximate result of DEFENDANTS' conduct herein arises from and is the result of the sexual abuse, sexual assault, and sexual battery by DEFENDANTS on PLAINTIFFS while they were minors and under the age of 18, and, therefore, upon information and belief, the limitations period for these claims is pursuant to NRS § 11.215.

**FIFTEENTH CAUSE OF ACTION**
**NEGLIGENT TRAINING ARISING FROM CLAIMS FILED**
**PURSUANT TO NRS § 11.215**
**(Against All DEFENDANTS and DOES 1-500)**

203. PLAINTIFFS re-allege and incorporate by reference into this cause of action each and every allegation set forth in each and every paragraph of this Complaint.

204. DEFENDANTS owed a duty of care in training its personnel, which includes, but is not limited to, DEFENDANT OFFICERS, THE ABUSERS, and DOES 1-500, in order to protect youth in their custody, such as PLAINTIFFS, from sexual abuse.

205. The employees and/or agents of DEFENDANTS neither had in place nor implemented an adequate system or procedure for investigating, training, and supervising employees and/or agents to prevent or remedy sexual abuse of youth in their custody, especially given the special position of authority, trust, influence, and persuasion that staff such as DEFENDANT OPFFICERS, THE ABUSERS and DOES 1-500 had over the youth such as PLAINTIFFS. DEFENDANTS thereby failed to use reasonable care to prevent DEFENDANT OFFICERS, THE ABUSERS and DOES 1-500's sexual abuse of PLAINTIFFS.

200

COMPLAINT

206.    The employees and/or agents of DEFENDANTS breached their duty of care in training their employees and agents, thereby subjecting PLAINTIFFS to an unreasonable risk of harm of sexual abuse by DEFENDANTS' employees.

207.    As a direct and proximate result of the negligence of DEFENDANTS' employees, PLAINTIFFS suffered and continue to suffer damages according to proof at trial.

208.    The negligent training claims and damages PLAINTIFFS suffered as a direct and proximate result of DEFENDANTS' conduct herein arises from and is the result of the sexual abuse, sexual assault, and sexual battery by DEFENDANTS on PLAINTIFFS while they were minors and under the age of 18, and, therefore, upon information and belief, the limitations period for these claims is pursuant to NRS § 11.215.

### SIXTEENTH CAUSE OF ACTION
### NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS
### ARISING FROM CLAIMS FILED PURSUANT TO NRS § 11.215
### (Against All DEFENDANTS and DOES 1-500)

209.    PLAINTIFFS re-allege and incorporate by reference into this cause of action each and every allegation set forth in each and every paragraph of this Complaint.

210.    The employees and/or agents of DEFENDANTS have with their youth in custody a special relationship, which imposes upon them an affirmative duty to take reasonable steps to protect such youth from reasonably foreseeable risks of harm.

211.    PLAINTIFFS allege that at all times mentioned herein, THE ABUSERS, DEFENDANT OFFICERS, and DOES 1-500 were agents and employees of DEFENDANTS, and that THE ABUSERS, DEFENDANT OFFICERS, and DOES 1-500 performed the acts herein while in the course and scope of their agency and employment at the time of the subject incident.

212.    DEFENDANT OFFICERS, THE ABUSERS, and DOES 1-500's sexual abuse of PLAINTIFFS was an abuse of their authority as agents of DEFENDANTS, responsible for maintaining the special relationship with the youth in their custody, including PLAINTIFFS.

213.    The employees and/or agents of DEFENDANTS breached their duty to protect youth in their custody, including PLAINTIFFS, from reasonably foreseeable risks of sexual abuse

201

COMPLAINT

when they failed to use reasonable care in hiring, supervising, and training its employees and/or agents and failed to detect and report reasonable suspicion of sexual abuse.

214.    DEFENDANTS' employees and/or agents knew and/or should have known that their conduct as described in this complaint was likely to cause youth in their custody, including PLAINTIFFS, to suffer severe emotional distress. As a direct and proximate result of this negligent conduct, PLAINTIFFS suffered serious emotional distress, anxiety, discomfort, and fear for the health and safety of themselves and will continue to suffer said damages for an unknown period in amounts to be proved at trial.

215.    The negligent infliction of emotional distress claims and damages PLAINTIFFS suffered as a direct and proximate result of DEFENDANTS' conduct herein arises from and is the result of the sexual abuse, sexual assault, and sexual battery by DEFENDANTS on PLAINTIFFS while they were minors and under the age of 18, and, therefore, upon information and belief, the limitations period for these claims is pursuant to NRS § 11.215.

### SEVENTEENTH CAUSE OF ACTION
### CONSTRUCTIVE FRAUD ARISING FROM CLAIMS FILED PURSUANT TO NRS § 11.215

*(Against All DEFENDANTS and DOES 1-500)*

216.    PLAINTIFFS hereby re-allege and incorporate by reference each and every preceding allegation as though fully set forth herein.

217.    PLAINTIFFS were harmed as a result of DEFENDANTS, including their agents and/or employees, knowingly and negligently failing to provide complete and accurate information, thereby misleading PLAINTIFFS regarding critical matters affecting their safety and well-being.

218.    During the time of PLAINTIFFS' commitment to facilities operated by the State of Nevada and the Division of Child and Family Services, DEFENDANTS and their agents and/or employees assumed a special, fiduciary, and confidential relationship with PLAINTIFFS. This relationship imposed affirmative duties on DEFENDANTS, akin to those of an educational

COMPLAINT

institution or therapeutic facility acting in loco parentis, whereby they undertook responsibility for PLAINTIFFS' care, rehabilitation, supervision, and protection.

219.    DEFENDANTS breached their duties by failing to report and meaningfully investigate credible claims of sexual misconduct; hiring, retaining, and failing to adequately train and supervise unqualified or dangerous staff; neglecting to warn inmates about known predators; allowing conditions that enabled staff to isolate inmates and commit abuse without oversight; and denying PLAINTIFFS a secure, confidential, and responsive mechanism to report abuse without fear of retaliation.

220.    DEFENDANTS and their agents intentionally misrepresented, concealed, and suppressed facts regarding the unlawful sexual conduct of THE ABUSERS and DOES 1-500. These acts were calculated to prevent PLAINTIFFS from discovering the truth and asserting their rights.

221.    As a direct and proximate result of DEFENDANTS' misconduct, PLAINTIFFS suffered significant damages, the nature and extent of which will be proven at trial.

222.    DEFENDANTS' conduct was willful, malicious, and carried out with conscious disregard for PLAINTIFFS' rights. These actions were ratified by DEFENDANTS' officers, directors, or managing agents, thereby justifying an award of punitive damages under NRS § 42.005.

223.    The constructive fraud claim and damages PLAINTIFFS suffered as a direct and proximate result of DEFENDANTS' conduct herein arises from and is the result of the sexual abuse, sexual assault, and sexual battery by DEFENDANTS on PLAINTIFFS while they were minors and under the age of 18, and, therefore, upon information and belief, the limitations period for these claims are pursuant to NRS § 11.215.

/ / /

COMPLAINT

## EIGHTEENTH CAUSE OF ACTION
## DECLARATORY RELIEF
### (Against All Defendants)

224.     This lawsuit involves an actual controversy within the Court's jurisdiction, and the Court may declare the rights of Plaintiffs under the United States Constitution, the Nevada Constitution, and laws of the United States and the laws of Nevada and grant such relief as necessary and proper.

225.     Plaintiffs seek a declaratory judgment that Defendants' policies, patterns or practices, customs, lack of supervision, failure to train, acts and/or omissions described herein violated the United States and Nevada Constitutions and constituted, among other things, violations of federal and state law.

## PRAYER

WHEREFORE, PLAINTIFFS pray for a jury trial and for judgment against DEFENDANTS as follows:

(A)   Past and future medical and/or mental health treatment and/or medication, in an amount to be proven at trial but in no event less than the minimum jurisdictional amount of this Court on all causes of action;

(B)   Loss of Earnings and Earning Capacity in an amount to be proven at trial, but in no event less than the minimum jurisdictional amount of this Court on all causes of action;

(C)   General damages in an amount to be proven at trial, but in no event less than the minimum jurisdictional amount of this Court on all causes of action;

(D)   Punitive damages in an amount to be proven at trial, but in no event less than the minimum jurisdictional amount of this Court in the causes of action set forth above;

204

COMPLAINT

(E)   Declaratory and/or Injunctive relief as is necessary to prevent on-going constitutional violations as set forth herein;

(F)   Reasonable attorneys' fees in an amount to be proven at trial, but in no event less than the minimum jurisdictional amount of this Court in the causes of action set forth above;

(G)   Reasonable Cost of suit in an amount to be proven at trial, but in no event less than the minimum jurisdictional amount of this Court on all causes of action;

(H)   For prejudgment and post-judgment interest according to any applicable provision of law in an amount to be proven at trial but in no event less than the minimum jurisdictional amount of this Court on all causes of action; and

(I)   For such further other relief as the Court may deem just, proper, and appropriate.

## **DEMAND FOR JURY TRIAL**

PLAINTIFFS hereby demand a jury trial in the instant action on all stated claims for relief.

Dated: April 1, 2026.                    **DICELLO LEVITT, LLP**


By: *Timothy R. O'Reilly*
Timothy R. O'Reilly, Esq.
Nevada Bar No. 8866
325 South Maryland Pkwy
Las Vegas, Nevada 89101

*Attorneys for Plaintiffs*

COMPLAINT

# EXHIBIT A

## LIST OF ALL PLAINTIFFS

1. John Doe 319304, an individual;

2. Jane Doe 330406, an individual;

3. John Doe 330404, an individual;

4. John Doe 330790, an individual;

5. John Doe 323080, an individual;

6. John Doe 319627, an individual;

7. John Doe 329951, an individual;

8. John Doe 324913, an individual;

9. Jane Doe 330093, an individual;

10. John Doe 330099, an individual;

11. John Doe 330706, an individual;

12. Jane Doe 330902, an individual;

13. John Doe 323978, an individual;

14. John Doe 330768, an individual;

15. John Doe 330025, an individual;

16. Jane Doe 330772, an individual;

17. John Doe 330545, an individual;

18. John Doe 327576, an individual;

19. John Doe 325951, an individual;

20. John Doe 330539, an individual;

21. Jane Doe 330903, an individual;

22. Jane Doe 330053, an individual;

23. John Doe 329644, an individual;

24. John Doe 330004, an individual;

25. Jane Doe 330783, an individual;

26. Jane Doe 330901, an individual;

27. John Doe 330336, an individual;

28. John Doe 329172, an individual;

COMPLAINT

29. John Doe 330896, an individual;

30. Jane Doe 330856, an individual;

31. John Doe 330149, an individual;

32. Jane Doe 330871, an individual;

33. John Doe 323846, an individual;

34. Jane Doe 330082, an individual;

35. John Doe 330409, an individual;

36. John Doe 325618, an individual;

37. Jane Doe 330731, an individual;

38. John Doe 319309, an individual;

39. Jane Doe 319314, an individual;

40. Jane Doe 319313, an individual;

41. John Doe 319311, an individual;

42. Jane Doe 319350, an individual;

43. Jane Doe 319609, an individual;

44. Jane Doe 321557, an individual;

45. John Doe 321973, an individual;

46. John Doe 323012, an individual;

47. Jane Doe 323096, an individual;

48. John Doe 324051, an individual;

49. John Doe 324578, an individual;

50. John Doe 324829, an individual;

51. John Doe 324953, an individual;

52. John Doe 325673, an individual;

53. John Doe 326482, an individual;

54. John Doe 326531, an individual;

55. John Doe 327053, an individual;

56. John Doe 327328, an individual;

57. John Doe 327700, an individual;

58. John Doe 328315, an individual;

59. John Doe 328319, an individual;

60. John Doe 328380, an individual;

COMPLAINT

61. John Doe 328383, an individual;

62. John Doe 328527, an individual;

63. John Doe 328950, an individual;

64. John Doe 328960, an individual;

65. John Doe 329209, an individual;

66. John Doe 329522, an individual;

67. John Doe 329904, an individual;

68. John Doe 329942, an individual;

69. John Doe 329953, an individual;

70. Jane Doe 329959, an individual;

71. Jane Doe 330009, an individual;

72. Jane Doe 330039, an individual;

73. Jane Doe 330091, an individual;

74. Jane Doe 330162, an individual;

75. John Doe 330165, an individual;

76. John Doe 330169, an individual;

77. John Doe 330186, an individual;

78. John Doe 330278, an individual;

79. Jane Doe 330288, an individual;

80. John Doe 330291, an individual;

81. John Doe 330315, an individual;

82. John Doe 330319, an individual;

83. John Doe 330325, an individual;

84. John Doe 330330, an individual;

85. Jane Doe 330362, an individual;

86. John Doe 330369, an individual;

87. John Doe 330380, an individual;

88. Jane Doe 330442, an individual;

89. Jane Doe 330500, an individual;

90. John Doe 330504, an individual;

91. John Doe 330547, an individual;

92. Jane Doe 330625, an individual;

COMPLAINT

93. Jane Doe 330621, an individual;

94. John Doe 330669, an individual;

95. John Doe 330676, an individual;

96. Jane Doe 330685, an individual

COMPLAINT